# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

**LARISSA BOYCE, ADAM BOYCE, ARIANNA GUERRERO by Next Friend TONY GUERRERO, KASSIE CASTLE, KRISTIN THELEN, JANE B8 DOE, JOHN B8 DOE, JANE B12 DOE, JESSICA TARRANT, KAYLEE MCDOWELL, SAMANTHA DANIELS, MORGAN VALLEY, JESSICA ANN SMITH, CHELSEA ZERFAS by Next Friend RON ZERFAS, JANE B25 DOE, LYNDSY GAMET, ANDREW GAMET, ALEXIS ALVARADO, JANE B34 DOE, JANE B35 DOE, TAYLOR LIVINGSTON, KATELYNNE HALL, JANE B42 DOE, JANE B43 DOE, JOHN B43 DOE, JANE B44 DOE, JANE B45 DOE, JANE B46 DOE, JANE B47 DOE, by Next Friend JANE B47NF DOE, JANE B48 DOE, CHRISTINA BARBA, JANE B51 DOE, by Next Friend JOHN B51NF DOE, EMILY MEINKE, JACOB PARKER, MORGAN MARGRAVES, JANE B55 DOE,  JANE B57 DOE, By Next Friend JANE B57NF DOE, JANE B60 DOE, ARIANNA CASTILLO, CHRISTINA HOLMES, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B65 DOE,  JANE B67 DOE, JOHN B67 DOE, JANE B68 DOE, JOHN B68 DOE, JANE B69 DOE, By Next Friend JANE B69NF DOE, JANE B71 DOE, KENZIE GASSAWAY, JOHN GASSAWAY, KATHERINE EBERT, JANE B77 DOE, JANE B79 DOE, JOHN B79 DOE, JANE B82 DOE, JANE B83 DOE, REED ANDERSON, AMANDA GREEN, JONATHAN COLLINS, JANE B89 DOE,  OLIVIA VENUTO, ALYSSA AVERY, JANE B92 DOE, JOHN B92 DOE, JANE B93 DOE, JOHN B93 DOE, JANE B94 DOE, JANE B96 DOE, JOHN B96 DOE, JANE B97 DOE, JOHN B97 DOE, JANE B98 DOE, ALEXANDRA**

**Case No.: 1:18-cv-1029**

**Hon.**

**Complaint and Jury Demand**

BOURQUE, HOLLY WILES, JANE B101
DOE, JOHN B101 DOE, JANE B102
DOE, JANE B103 DOE, JANE B104
DOE, JANE B105 DOE, JOHN B105
DOE, JANE B106 DOE, SKYLER
COOMER, JANE B108 DOE,  JANE
B109 DOE, JOHN B109 DOE, JANE B110
DOE,

    **Plaintiffs,**

**v.**

**MICHIGAN STATE UNIVERSITY; THE
BOARD  OF TRUSTEES OF
MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR
(individual capacity only); KATHIE
KLAGES (individual capacity only);
WILLIAM D. STRAMPEL, D.O.
(individual capacity only); JEFFREY R.
KOVAN D.O. (individual capacity only);
DOUGLAS DIETZEL, D.O. (individual
capacity only); BROOKE LEMMEN,
D.O. (individual capacity only); GARY E.
STOLLAK (individual capacity only);
DESTINY TEACHNOR-HAUK
(individual capacity only); USA
GYMNASTICS, INC.; TWISTARS USA,
INC. d/b/a GEDDERTS' TWISTARS
USA GYMNASTICS CLUB, JOHN
GEDDERT, and UNITED STATES
OLYMPIC COMMITTEE,**

    **Defendants.**

**Manvir S. Grewal (P48082)**
**David S. Mittleman (P37490)**
**Nolan L. Erickson (P72661)**
**John W. Fraser (P79908)**
**Jonathan D. Brown (P81891)**
Grewal Law PLLC
Attorneys for Plaintiffs
2290 Science Parkway
Okemos, Michigan 48864
Ph.: (517) 393-3000
Fax: (517) 393-3003
E: mgrewal@4grewal.com
E: dmittleman@churchwyble.com
E: nerickson@churchwyble.com
E: jfraser@4grewal.com
E: jbrown@churchwyble.com

## **TABLE OF CONTENTS**

COMPLAINT AND JURY DEMAND ...................................................................1

I. PRELIMINARY STATEMENT AND INTRODUCTION .........................................1

II. JURISDICTION AND VENUE..........................................................................8

III. PARTIES AND KEY INDIVIDUALS ...............................................................9

IV. COMMON FACTUAL ALLEGATIONS............................................................24

V. SPECIFIC FACTUAL ALLEGATIONS .............................................................49

     A. Larissa Boyce ..........................................................................................49

     B. Arianna Guerrero......................................................................................52

     C. Kassie Castle ...........................................................................................55

     D. Kristin Thelen ..........................................................................................57

     E.  Jane B8 Doe ...........................................................................................58

     F. Jane B12 Doe ...........................................................................................60

     G. Jessica Tarrant.........................................................................................62

     H. Kaylee McDowell ....................................................................................63

     I. Samantha Daniels ......................................................................................65

     J. Morgan Valley..........................................................................................66

     K. Jessica Ann Smith ...................................................................................67

     L. Chelsea Zerfas ........................................................................................68

     M. Jane B25 Doe ........................................................................................70

     N. Lyndsy Gamet ........................................................................................72

O. Alexis Alvarado ....................................................................................................73

P. Jane B34 Doe .......................................................................................................76

Q. Jane B35 Doe .......................................................................................................77

R. Taylor Livingston ................................................................................................79

S. Katelynne Hall .....................................................................................................81

T. Jane B42 Doe ........................................................................................................82

U. Jane B43 Doe .......................................................................................................85

V. Jane B44 Doe .......................................................................................................86

W. Jane B45 Doe .......................................................................................................88

X. Jane B46 Doe .......................................................................................................90

Y. Jane B47 Doe .......................................................................................................91

Z. Jane B48 Doe .......................................................................................................93

AA. Christina Barba ..................................................................................................95

BB. Jane B51 Doe .....................................................................................................96

CC. Emily Meinke .....................................................................................................98

DD. Morgan Margraves ...........................................................................................100

EE. Jane B55 Doe ...................................................................................................101

FF. Jane B57 Doe....................................................................................................103

GG. Jane B60 Doe ...................................................................................................105

HH. Arianna Castillo ..............................................................................................106

II. Christina Holmes................................................................................................108

JJ. Lauren Margraves ............................................................................................109

KK. Madison Margraves ...........................................................................................110

LL. Jane B65 Doe ....................................................................................................112

MM. Jane B67 Doe ..................................................................................................114

NN. Jane B68 Doe ....................................................................................................115

OO.  Jane B69 Doe ..................................................................................................116

PP. Jane B71 Doe .....................................................................................................119

QQ. Kenzie Gassaway ..............................................................................................120

RR. Katherine Ebert .................................................................................................122

SS. Jane B77 Doe .....................................................................................................123

TT.  Jane B79 Doe ....................................................................................................125

UU. Jane B82 Doe ....................................................................................................126

VV.  Jane B83 Doe ...................................................................................................128

WW.  Reed Anderson ...............................................................................................130

XX. Amanda Green ...................................................................................................132

YY. Jane B89 Doe ....................................................................................................133

ZZ. Olivia Venuto .....................................................................................................135

AAA.  Alyssa Avery ..................................................................................................136

BBB. Jane B92 Doe ..................................................................................................137

CCC.  Jane B93 Doe .................................................................................................139

DDD. Jane B94 Doe .................................................................................................140

FFF. Jane B96 Doe ...................................................................................................141

GGG. Jane B97 Doe .................................................................................................143

HHH. Jane B98 Doe ...................................................................................145

III.  Alexandra Bourque ...........................................................................146

JJJ.  Holly Wiles  ...................................................................................147

KKK.  Jane B101 Doe ..............................................................................149

LLL. Jane B102 Doe ...............................................................................151

MMM. Jane B103 Doe ............................................................................152

NNN.  Jane B104 Doe .............................................................................153

OOO.  Jane B105 Doe .............................................................................155

PPP.  Jane B106 Doe ..............................................................................156

QQQ.  Skyler Coomer .............................................................................158

RRR.  Jane B108 Doe .............................................................................159

SSS.  Jane B109 Doe ..............................................................................160

TTT.  Jane B110 Doe ..............................................................................162

VI. FRAUDULENT CONCEALMENT ......................................................163

A. THE MSU DEFENDANTS ..................................................................163

B. DEFENDANT USA GYMNASTICS ....................................................171

C. DEFENDANTS TWISTARS AND GEDDERT ......................................175

D.  DEFENDANT NASSAR  .....................................................................180

VII. CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS ...................185

A. COUNT ONE – Violations of Title IX ................................................185

B.  COUNT TWO – Sex Discrimination, 42 U.S.C. § 18116 ........................193

C. COUNT THREE – Violations of Civil Rights, 42 U.S.C. § 1983 ..............197

D. COUNT FOUR -- Failure to Train and Supervise, 42 U.S.C. § 1983 .......................203

E. COUNT FIVE – Gross Negligence ..........................................................................206

F. COUNT SIX – Negligence ........................................................................................208

G. COUNT SEVEN – Vicarious Liability ....................................................................210

H. COUNT EIGHT – Express/Implied Agency ...........................................................212

I. COUNT NINE– Negligent Supervision ....................................................................214

J. COUNT TEN – Negligent Failure to Warn or Protect .............................................216

K. COUNT ELEVEN – Negligent Failure to Train or Educate ....................................218

L. COUNT TWELVE – Negligent Retention ................................................................219

M. COUNT THIRTEEN – Fraud and Misrepresentation ..............................................221

N. COUNT FOURTEEN - Violations of Elliot-Larsen Civil Rights Act .....................224

VIII. CLAIMS AGAINST USA GYMNASTICS & U.S. OLYMPIC COMMITTEE ..............226

A. COUNT FIFTEEN – Masha's Law; 18 U.S.C. § 2255 ............................................226

B. COUNT SIXTEEN– Gross Negligence ...................................................................229

C. COUNT SEVENTEEN – Negligence .......................................................................235

D. COUNT EIGHTEEN – Vicarious Liability ..............................................................240

E. COUNT NINETEEN – Express/Implied Agency .....................................................242

F. COUNT TWENTY – Negligent Supervision ...........................................................245

G. COUNT TWENTY-ONE – Negligent Failure to Warn or Protect ...........................249

H. COUNT TWENTY-TWO – Negligent Failure to Train or Educate .........................254

I. COUNT TWENTY-THREE – Negligent Retention ...................................................257

J. COUNT TWENTY-FOUR - Fraud and Misrepresentation ........................................260

IX. CLAIMS AGAINST TWISTARS .........................................................................................265

A. COUNT TWENTY-FIVE – Gross Negligence ........................................................265

B. COUNT TWENTY-SIX – Negligence ...............................................................270

C. COUNT TWENTY-SEVEN – Express/Implied Agency ..........................................274

D. COUNT TWENTY-EIGHT – Negligent Supervision..............................................276

E. COUNT TWENTY-NINE– Negligent Failure to Warn or Protect............................280

F. COUNT THIRTY – Fraud and Misrepresentation ...............................................284

X. CLAIMS AGAINST NASSAR ............................................................................288

A. COUNT THIRTY-ONE – Assault and Battery ...................................................288

B. COUNT THIRTY-TWO – Invasion of Privacy...................................................289

XI. CLAIMS AGAINST KLAGES, STRAMPEL, KOVAN, AND STOLLAK......................291

A. COUNT THIRTY-THREE – Failure to Report Child Abuse ...................................291

XII. LOSS OF CONSORTIUM CLAIMS...................................................................294

A. COUNT THIRTY-FOUR – Loss of Consortium ..................................................294

XIII. DAMAGES ...............................................................................................295

REQUEST FOR RELIEF .....................................................................................296

JURY DEMAND ...............................................................................................298

---

## COMPLAINT AND JURY DEMAND

---

**NOW COME** Plaintiffs, by and through their attorneys GREWAL LAW PLLC, and for their Complaint and Jury Demand allege and state as follows:

## I.       PRELIMINARY STATEMENT AND INTRODUCTION

1.       This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiffs as a result of the acts, conduct, and omissions of Lawrence Nassar, D.O., Michigan State University ("MSU"), USA Gymnastics, Inc. ("USAG"), and Twistars USA, Inc. ("Twistars") and their respective employees, representatives, and agents, relating to sexual assault, abuse, molestation, and nonconsensual sexual touching and harassment by Defendant Nassar against Plaintiffs[1] many of whom were minors when the sexual assaults took place.

2.       Most of the Plaintiffs are or were young athletes participating in a variety of sports including gymnastics, track and field, and soccer.

3.       Defendant Nassar came highly recommended to Plaintiffs as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics team.

4.       Plaintiffs and their parents had no reason to suspect Defendant Nassar was anything other than a competent and ethical physician.

5.       From approximately 1996 to 2016, Defendant Nassar worked for Michigan State

---

[1] For those Plaintiffs who are married, their spouses have also brought loss of consortium claims against the respective defendants in this action.

University in various positions and capacities.

6.   From 1986 to approximately 2015, Defendant Nassar also worked for USA Gymnastics in various positions and capacities.

7.   For over 20 years, Defendant Nassar had unfettered access to young female athletes through the Sports Medicine Clinic at MSU, and through his involvement with USAG and Twistars, who referred athletes to his care.

8.   To gain Plaintiffs' trust at appointments, Defendant Nassar would give some Plaintiffs gifts.

9.   Between 1992 and 2016, under the guise of medical study and medical treatment, Defendant Nassar sexually assaulted, abused, and molested Plaintiffs, many of whom were minors during at least some portion of this time, by nonconsensual vaginal and anal digital penetration or by rubbing their breasts, and without the use of gloves or lubricant.

10.   Plaintiffs were seeking treatment for various pain and functional complaints, such as back pain, neck pain, shoulder pain, knee pain, hip pain, and other similar injuries and conditions.

11.   In 1997 or 1998,  Plaintiff Larissa Boyce (" Plaintiff Boyce") reported to MSU gymnastics coach Defendant Kathie Klages ("Defendant Klages") concerns regarding Defendant Nassar's conduct and "treatment," but Defendant Klages dissuaded Plaintiff Boyce from completing a formal report by warning Plaintiff Boyce that the report would have serious consequences for her and Nassar.

12.   As a result of Defendant Klages being informed about Nassar's conduct, at least one other athlete was asked by Klages if Nassar had performed the "procedure" involving digital vaginal and anal penetration on said athlete, who responded in the affirmative.

Defendant Klages told this athlete that there is no reason to bring up or otherwise report Nassar's conduct.

13.     In 1999, an MSU student athlete, reported to trainers and her coach who were employees of MSU concerns about Defendant Nassar's conduct and "treatment," yet MSU failed to take any action in response to her complaints.

14.     In 2000, another MSU student athlete reported to trainers concerns about Defendant Nassar's conduct and "treatment," yet again MSU failed to take any action in response to her complaints.

15.     Many Plaintiffs were seen alone with only the individual Plaintiff and Defendant Nassar in the room, without chaperones or parents.

16.     At other times, Defendant Nassar would position himself in a manner in which parents or chaperones in the room could not see his conduct.

17.     Because MSU took no action to investigate the 1997 or 1998, 1999, or 2000 complaints and took no corrective action, from 1998 to 2016, Plaintiffs, many of whom were minors, were also sexually assaulted, abused, and molested by Defendant Nassar by nonconsensual vaginal and anal digital penetration, nonconsensual sexual touching of the vaginal area without the use of gloves or lubricant and by nonconsensual touching and groping of their breasts under the guise of treatment.

18.     While most victims were assaulted at MSU, other victims were assaulted at USAG sanctioned events, Twistars, and Defendant Nassar's home in Holt, Michigan.

19.     The ages of the Plaintiffs when assaulted ranged from approximately 10 to 34 years old.

20.     Additional complaints regarding Defendant Nassar's conduct surfaced in 2014. Amanda Thomashow reported she had an appointment with Defendant Nassar to address hip pain

and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and became sexually aroused.[2]

21. Upon information and belief, Defendant MSU investigated the 2014 complaints through its Title IX Office, which was then known as the Office for Inclusion and Intercultural Initiatives,[3] and although the victim reported to Defendant MSU certain facts, some were omitted from the investigative report including but not limited to the following:

    a. Defendant Nassar was sexually aroused while touching her;

    b. The appointment with Defendant Nassar did not end until Amanda Thomashow physically removed his hands from her body.

22. Three months after initiating the investigation, in July 2014, Amanda Thomashow's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "[n]ot of a sexual nature."[4]

23. Following the 2014 investigation, Defendant Nassar became subject to new institutional guidelines, one of which – it is believed – was that Defendant Nassar was not to examine or treat patients alone.[5]

24. Defendant Nassar continued to treat patients alone, and the new institutional guidelines were illusory because they were never implemented or enforced.

25. Through his position with MSU, his notoriety, and support by USAG and Twistars,

---

[2] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at, http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. (Last accessed January 5, 2017).
[3] MSU's Title IX office is presently known as the Office of Institutional Equity.
[4] *Id*.
[5] *Id*.

Defendant Nassar used his position of authority as a medical professional to abuse Plaintiff without any reasonable supervision by MSU or USAG.

26. Defendant Nassar carried out these acts without fully explaining the "treatment" or obtaining consent of Plaintiff or her parents.

27. All of Defendant Nassar's acts were conducted under the guise of providing medical care at his office at Michigan State University, at Twistars, at USAG sanctioned events, or at his home in Holt, Michigan.

28. The failure to give proper notice or to obtain consent for the purported "treatment" from Plaintiffs or their parents robbed them of the opportunity to reject the "treatment."

29. Defendant Nassar used his position of trust and confidence in an abusive manner causing Plaintiffs to suffer a variety of injuries including shock, humiliation, emotional distress and related physical manifestations thereof, embarrassment, loss of self-esteem, disgrace, and loss of enjoyment of life.

30. In September 2016, a story was published in the Indianapolis Star regarding a complaint filed with Defendant MSU's Police Department titled "Former USA Gymnastics doctor accused of Abuse," which included Rachael Denhollander's allegations against Defendant Nassar.

31. Following the September 2016 publication, other victims began coming forward after recognizing that they were victims of sexual abuse at a time when most of them were minors.

32. Plaintiffs have been forced to relive the trauma of the sexual assaults.

33. In summer 2015, USAG and USOC relieved Defendant Nassar of his duties after becoming aware of concerns about his actions, yet USAG and USOC failed to inform

Michigan State University of the circumstances regarding his dismissal.

34. As early as 1997, representatives of Michigan State University were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, abuse, and molestation of Plaintiffs through approximately 2016.

35. Michigan State University's deliberate indifference before, during, and after the sexual assault, abuse, and molestation of Plaintiffs was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*., 42 U.S. C. § 1983, as well as other Federal and State of Michigan laws.

36. MSU and USAG's failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar was in violation of Michigan common law.

37. In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, which is a felony punishable with a maximum penalty of imprisonment for life without the possibility of parole.[6]

38. In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

39. On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County,

---

[6] *People v. Nassar*, State of Michigan, Ingham County Circuit Court Case No. 17-143-FC.

Michigan[7] and Eaton County, Michigan.[8]

40. The acts, conduct, and omissions of Defendants Michigan State University, USA Gymnastics, and Twistars, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiffs and an unknown number of individuals, and have resulted in repeated instances of sexual assault, abuse, and molestation of Plaintiffs by Defendant Nassar, which has been devastating for Plaintiffs and their families.

41. On or about July 11, 2017, Defendant Nassar pleaded guilty in his federal criminal case to: (1) Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); (2) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and (3) Destruction and Concealment of Records and Tangible Objects, in violation of 18 U.S.C. § 1519.

42. On November 11, 2017 Defendant Nassar pleaded guilty to seven counts of first-degree criminal sexual conduct in Ingham County Circuit Court.

43. On November 29, 2017 Defendant Nassar pleaded guilty to three counts of first-degree criminal sexual conduct in Eaton County Circuit Court.

44. On December 7, 2017 Defendant Nassar was sentenced to three twenty-year sentences to be served consecutively on three charges of obtaining and possessing child pornography in the United States District Court for the Western District of Michigan.

45. On January 24, 2018, Defendant Nassar was sentenced in Ingham County Circuit Court

---

[7]*People v. Nassar*, Ingham County District Court Case No. 17-00425-FY, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._2017_552531_7.pdf
[8]*People v. Nassar*, Eaton County District Court Case No. 17-0318-FY, *see also,* http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017_552536_7.pdf

to serve 40 to 175 years in the Michigan Department of Corrections.

46. On February 5, 2018, Defendant Nassar was sentenced in Eaton County Circuit Court to serve 40 to 125 years in the Michigan Department of Corrections.

47. This action arises from Defendants' blatant disregard for Plaintiffs' federal and state rights, and Defendants' deliberately indifferent and unreasonable response to physician-on-patient/physician-on-student sexual assault, abuse, and molestation.

## II.    JURISDICTION AND VENUE

48. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

49. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*., as more fully set forth herein.

50. This is also an action to redress the deprivation of Plaintiffs' constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

51. Subject matter jurisdiction is founded upon 28 U.S.C. § 1331 which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

52. Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which gives district courts original jurisdiction over any civil actions authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and any civil action

to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

53.    Plaintiffs further invoke the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

54.    The claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, 20 U.S.C. § 1681 *et seq*., 42 U.S.C. § 18116, and under Michigan Law.

55.    The events giving rise to this lawsuit occurred in Ingham County, Michigan and Eaton County, Michigan both of which sit in the Southern Division of the Western District of Michigan.

56.    Venue is proper in the United States District Court for the Western District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that this is the judicial district in which the events giving rise to the claim occurred.

57.    Plaintiffs have filed Notices of Intent to File Claim with the Michigan Court of Claims in compliance with MCL 600.6431.

### III.        PARTIES AND KEY INDIVIDUALS

58.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

59.    With the exception of Plaintiffs Larissa Boyce, Arianna Guerrero, Kassie Castle, Kristin Thelen, Jessica Tarrant, Kaylee McDowell, Samantha Daniels, Morgan Valley,  Jessica Ann Smith, Chelsea Zerfas, Lyndsy Gamet, Alexis Alvarado, Taylor Livingston, Katelynne Hall, Christina Barba, Emily Meinke, Morgan Margraves, Arianna Castillo,

Christina Holmes, Laruen Margraves, Christina Holmes, Madison Margraves, Kenzie Gassaway, Katherine Ebert, Reed Anderson Olivia Venuto, Alyssa Avery, Alexandra Bourque, Holly Wiles, and Skyler Coomer, the names of the Plaintiffs have been withheld from this Complaint to protect their identities as some are currently minor children or were minor children at the time the sexual abuse occurred.

60.    Plaintiff Larissa Boyce ("Plaintiff Boyce") is a married female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar. She is married to Plaintiff Adam Boyce.

61.    Plaintiff Arianna Guerrero ("Plaintiff Guerrero") is a minor female and is a resident of Michigan. She brings this action by Plaintiff Tony Guerrero, also a resident of Michigan. A corresponding petition will be filed seeking formal appointment of next friend.

62.    Plaintiff Kassie Castle ("Plaintiff Castle") is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

63.    Plaintiff Kristin Thelen ("Plaintiff Thelen") is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

64.    Jane B8 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar. She is married to John B8 Doe.

65.    Plaintiff Jane B12 Doe is an adult female and is a resident of Ohio. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

66.     Plaintiff Jessica Tarrant ("Plaintiff Tarrant") is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

67.     Plaintiff Kaylee McDowell ("Plaintiff McDowell") is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

68.     Plaintiff Samantha Daniels ("Plaintiff Daniels") is an adult female and is a resident of Kentucky. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

69.     Plaintiff Morgan Valley ("Plaintiff Valley") is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

70.     Plaintiff Jessica Ann Smith ("Plaintiff Smith") is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

71.     Plaintiff Chelsea Zerfas ("Plaintiff Zerfas") is a minor female and is a resident of Michigan. She brings this action by Plaintiff Ron Zerfas, also a resident of Michigan. A corresponding petition will be filed seeking formal appointment of next friend.

72.     Plaintiff Jane B25 Doe is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

73.     Plaintiff Lyndsy Gamet ("Plaintiff Gamet") is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted,

abused, and molested by Defendant Nassar.

74. Plaintiff Alexis Alvarado ("Plaintiff Alvarado") is an adult female and is a resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

75. Plaintiff Jane B34 Doe is an adult female and is a resident of Texas. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

76. Plaintiff Jane B35 Doe is a minor female and is a resident of Michigan. She brings this action by Jane B35NF Doe, also a resident of Michigan. A corresponding petition will be filed seeking formal appointment of next friend.

77. Plaintiff Taylor Livingston ("Plaintiff Livingston") is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

78. Plaintiff Katelynne Hall ("Plaintiff Hall") is an adult female and resident of Ohio. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

79. Plaintiff Jane B42 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

80. Plaintiff Jane B43 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar. Plaintiff Jane B43 Doe is married to Plaintiff John B43 Doe.

81. Plaintiff Jane B44 Doe is an adult female and resident of Michigan. She was a minor for

at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

82.   Plaintiff Jane B45 Doe is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

83.   Plaintiff Jane B46 Doe is an adult female and resident of Florida.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

84.   Plaintiff Jane B47 Doe is a minor female and resident of Michigan.  She brings this action by Jane B47NF Doe, also a resident of Michigan. A corresponding petition will be filed seeking formal appointment of next friend.

85.   Plaintiff Jane B48 Doe is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.  Plaintiff Jane B48 Doe is married to Plaintiff John B48 Doe.

86.   Plaintiff Christina Barba ("Plaintiff Barba") is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

87.   Plaintiff Jane B51 Doe is a minor female and resident of Michigan.  She brings this action by John B51NF Doe, also a resident of Michigan. A corresponding petition will be filed seeking formal appointment of next friend

88.   Plaintiff Emily Meinke ("Plaintiff Meinke") is an adult female and resident of Florida. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.  Plaintiff Meinke is married to Plaintiff Jacob Parker.

13

89.  Plaintiff Morgan Margraves is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

90.  Plaintiff Jane B55 Doe is an adult female and Resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

91.  Plaintiff Jane B57 Doe is a minor female and resident of Michigan.   She brings this action by Jane B57NF Doe, also a resident of Michigan. A corresponding petition will be filed seeking formal appointment of next friend.

92.  Plaintiff Jane B60 Doe is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

93.  Plaintiff Arianna Castillo ("Plaintiff Castillo") is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

94.  Plaintiff Christy Holmes ("Plaintiff Holmes") is an adult female and resident of Michigan.  Plaintiff Holmes was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

95.  Plaintiff Lauren Margraves is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

96.  Plaintiff Madison Margraves is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested

by Defendant Nassar.

97.     Plaintiff Jane B65 Doe is an adult female and resident of Indiana. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

98.     Plaintiff Jane B67 Doe is an adult female and resident of Colorado. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar. Plaintiff Jane B67 Doe is married to Plaintiff John B67 Doe.

99.     Plaintiff Jane B68 Doe is an adult female and resident of Arkansas. Plaintiff Jane B68 Doe is married to Plaintiff John B68 Doe.

100.    Plaintiff Jane B69 Doe is a minor female and resident of Michigan. She brings this action by Jane B69NF Doe, also a resident of Michigan. A corresponding petition will be filed seeking formal appointment of next friend.

101.    Plaintiff Jane B71 Doe is an adult female and resident of Illinois. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

102.    Plaintiff Kenzie Gassaway ("Plaintiff Gassaway") is an adult female and resident of Arizona. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

103.    Plaintiff Katherine Ebert ("Plaintiff Ebert") is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

104.    Plaintiff Jane B77 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by

Defendant Nassar.

105.    Plaintiff Jane B79 Doe is an adult female and resident of Utah.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.  Plaintiff Jane B79 Doe is married to John B79 Doe.

106.    Plaintiff Jane B82 Doe is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

107.    Plaintiff Jane B83 Doe is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

108.    Plaintiff Reed Anderson ("Plaintiff Anderson") is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

109.    Plaintiff Amanda Green ("Plaintiff Green") is an adult female and resident of the District of Columbia.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

110.    Plaintiff Jane B89 Doe is an adult female and resident of Arizona.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

111.    Plaintiff Olivia Venuto ("Plaintiff Venuto") is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

112.    Plaintiff Alyssa Avery ("Plaintiff Avery") is an adult female and resident of Michigan.

She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

113. Plaintiff Jane B92 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar. Plaintiff Jane B92 Doe is married to Plaintiff John B92 Doe.

114. Plaintiff Jane B93 Doe is an adult female and resident of Indiana. Plaintiff Jane B93 Doe is married to Plaintiff John B93 Doe.

115. Plaintiff Jane B94 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

116. Plaintiff Jane B96 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar. Plaintiff Jane B96 Doe is married to Plaintiff John B96 Doe.

117. Plaintiff Jane B97 Doe is an adult female and resident of Illinois. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar. Plaintiff Jane B97 Doe is married to Plaintiff John B97 Doe.

118. Plaintiff Jane B98 Doe is an adult female and resident of Michigan.

119. Plaintiff Alexandra Bourque ("Plaintiff Bourque") is an adult female and resident Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

120. Plaintiff Holly Wiles ("Plaintiff Wiles") is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

121. Plaintiff Jane B101 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar. Plaintiff Jane B101 Doe is married to Plaintiff John B101 Doe.

122. Plaintiff Jane B102 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

123. Plaintiff Jane B103 Doe is an adult female and resident of Colorado. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

124. Plaintiff Jane B104 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

125. Plaintiff Jane B105 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar. Plaintiff Jane B105 Doe is married to Plaintiff John B105 Doe.

126. Plaintiff Jane B106 Doe is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

127. Plaintiff Skyler Coomer ("Plaintiff Coomer") is an adult female and resident of Michigan. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

128. Plaintiff Jane B108 Doe is an adult female and resident of Ohio. She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant

Nassar.

129.   Plaintiff Jane B109 Doe is an adult female and resident of Michigan.  Plaintiff Jane B109 Doe is married to Plaintiff John B109 Doe.

130.   Plaintiff Jane B110 Doe is an adult female and resident of Michigan.  She was a minor for at least a portion of the time she was sexually assaulted, abused, and molested by Defendant Nassar.

131.   Defendant Lawrence "Larry" Nassar ("Defendant Nassar"), was formerly a Doctor of Osteopathic Medicine, and is a resident of Michigan.

132.   Defendant Michigan State University ("Defendant MSU") was at all relevant times and continues to be a public university organized and existing under the laws of the state of Michigan.

133.   Defendant MSU receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a).

134.   Defendant The Board of Trustees of Michigan State University ("Defendant MSU Trustees") is the governing body for Michigan State University.

135.   Lou Anna K. Simon is the immediate past President of Defendant MSU, appointed in approximately January 2005. Prior to her appointment as President, Ms. Simon held several administrative roles including assistant provost for general academic administration, associate provost, and provost and vice president for academic affairs during her career with MSU.

136.   Lou Anna K. Simon resigned her position as President of Defendant MSU on January 24, 2018.

137.   John Mathias Engler is the former Governor of the State of Michigan and is currently

serving as interim President of Defendant MSU.

138.   M. Peter McPherson served as President of Defendant MSU from approximately 1993 – 2004.

139.   Mark Hollis is the immediate past Athletic Director of Defendant MSU.

140.   Bill Beekman is currently serving as interim Athletic Director of Defendant MSU.

141.   Defendant William D. Strampel, D.O. ("Defendant Strampel") was the Dean of the College of Osteopathic Medicine at Michigan State University serving as Dean since approximately April 2002 and as Acting Dean between December 2001 and April 2002. Upon information and belief, in December 2017, Defendant Strampel stepped down from his role as Dean of the College of Osteopathic Medicine for "medical reasons," but Defendant Strampel will remain on the faculty of MSU's College of Osteopathic Medicine.[9]

142.   Defendant Jeffrey R. Kovan, D.O. ("Defendant Kovan") is or was the Director of Division of Sports Medicine at Michigan State University and was the supervisor of the Department of Radiology, under which Defendant Nassar practiced medicine.

143.   Defendant Douglas Dietzel, D.O. ("Defendant Dietzel") is the Clinical Director of MSU Sports Medicine and Team Orthopedic Surgeon for MSU Department of Intercollegiate Athletics serving as Clinical Director of MSU Sports Medicine since approximately 2004.

144.   Defendant Brooke Lemmen, D.O. ("Defendant Lemmen") is or was a practicing physician with MSU Sports Medicine from approximately 2010 to 2017.

145.   Defendant Kathie Klages ("Defendant Klages") was the head coach of the Michigan State

---

[9] Defendant MSU has taken steps to terminate Defendant Strampel's employment with Defendant MSU.

University Gymnastics Program until her suspension and resignation in early 2017; she also conducted gymnastics classes and programs for children and young adults not on the varsity gymnastics team.

146. Defendant Klages regularly referred MSU student athletes as well as young athletes who were not MSU students to Defendant Nassar for medical treatment.

147. Defendant Gary E. Stollak ("Defendant Stollak") was a professor in the clinical program within the Michigan State University Department of Psychology.

148. Defendant Destiny Teachnor-Hauk ("Defendant Teachnor-Hauk") is or was an athletic trainer for Defendant MSU for various sports including, but not limited to, softball, track and field, gymnastics, rowing, and volleyball.

149. Defendant Teachnor-Hauk regularly referred MSU student athletes to Defendant Nassar for medical treatment.

150. Defendant MSU, Defendant MSU Trustees, Defendant Nassar, Defendant Stollak, Defendant Strampel, Defendant Kovan, Defendant Klages, Defendant Dietzel, Defendant Lemmen, and Defendant Teachnor-Hauk are hereinafter collectively referred to as the MSU Defendants unless otherwise specified.

151. At all relevant times the MSU Defendants maintained employment and offices at Defendant MSU in East Lansing, Michigan.

152. Defendant USA Gymnastics, Inc. (hereinafter "Defendant USAG") was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States, including but not limited to the State of Michigan.

153. Defendant United States Olympic Committee ("Defendant USOC") and the International Gymnastics Federation has designated Defendant USAG as the national governing body

for the sport of gymnastics in the United States.

154. USAG advertises on its website: "Since 1990—prior to almost all other National Governing Bodies—USA Gymnastics has provided awareness, prevention and reporting information regarding sexual misconduct to professional members, athlete members and their families."[10]

155. Steve Penny was the president of Defendant USAG, named in approximately April 2005, who is currently responsible for the overall management and strategic planning of Defendant USAG. He resigned in March 2017.

156. Robert Colarossi is the past president of Defendant USAG and held the position from approximately 1998 to 2005, and during that time was responsible for the overall management and strategic planning of Defendant USAG.

157. Defendant Twistars USA, Inc. d/b/a Gedderts' Twistars USA Gymnastics Club (hereinafter, "Defendant Twistars") was and continues to be an organization incorporated in Michigan.

158. Defendant John Geddert ("Defendant Geddert") is or was the owner and operator of Twistars USA, Inc. d/b/a Gedderts' Twistars USA Gymnastics Club.

159. Defendant USOC was and continues to be a corporation incorporated pursuant to the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. § 220501 *et seq*. with its principal office located in Colorado Springs, Colorado and is authorized to conduct business and is conducting business throughout the United States, including but not limited to the State of Michigan.

160. As a result of Defendant USAG's designation as the national governing body ("NGB")

---

[10] https://usagym.org/pages/education/safesport/.

for the sport of gymnastics from Defendant USOC, Defendant USOC exercises considerable authority and control over Defendant USAG, as it does with all other NGBs.

161. Defendant USAG therefore is ostensibly an agent or instrumentality of Defendant USOC.

162. Defendant Twistars is a member club and agent or instrumentality of Defendant USAG.

163. Defendant USAG requires member clubs to pay it a fee in order to hold USAG-sanctioned events.

164. Defendant USAG also issues rules and requirements for its member clubs and exercises a considerable degree of control over its member clubs because Defendant USAG has the authority to revoke a club's membership.

165. Defendant USAG also requires all coaches, judges, and athletes to pay it a membership fee to participate in USAG-sanctioned events.

166. As such, Defendant Twistars required all gymnasts interested in competing to become members of Defendant USAG and to pay a membership fee to Defendant USAG.

167. Membership in Defendant USAG is a substantial benefit for Defendant Twistars and Defendant Geddert, as membership with Defendant USAG and participation in USAG-sanctioned events is a considerable factor that interested gymnasts consider in joining a gymnastics club—particularly gymnasts who have collegiate, national, or Olympic aspirations in competitive gymnastics.

168. At all relevant times, Defendant Geddert served as an agent of Defendants USAG and USOC and served as the 2011 USA World Championship Team Head Coach and the 2012 USA Olympic Team Head Coach through his affiliations with Defendant USAG and Defendant Twistars.

169. Defendant Twistars's website states, regarding Defendant Geddert, "Being named Head

coach for the USA Olympic and World Championships Gold Medal Winning team, paint the picture of national respect."

170. Defendant USAG received a financial benefit through its relationship with Defendants Nassar, Twistars, and Geddert in the form of membership fees, prestige, and fame.

171. Defendants Nassar, Twistars, and Geddert received a benefit through its relationship with Defendant USAG in the form of national and global exposure, fame, and increased enrollment.

## IV.    COMMON FACTUAL ALLEGATIONS

172. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

173. Plaintiffs also incorporate by reference the allegations contained in the other complaints filed in the respective member cases of this consolidated action.

174. At all relevant times, Defendant Nassar maintained an office at MSU in East Lansing, Michigan.

175. At all relevant times, Defendants MSU, MSU Trustees, Nassar, Stollak, Strampel, Kovan, Teachnor-Hauk, Klages, and Lemmen were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

176. At all relevant times, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his employment or agency with Defendant MSU.

177. At all relevant times, including the years 1996 to 2015, Defendant Nassar was acting in the scope of his employment or agency with Defendant USAG.

178. At all relevant times, including the years 1996 to 2015, Defendant Nassar was acting in

the scope of his employment or agency with Defendant USOC.

179.   At all relevant times, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his agency with Defendant Twistars.

180.   Defendant Nassar graduated from Michigan State University with a Doctor of Osteopathic Medicine degree in approximately 1993.

181.   Defendant Nassar was employed by and/or an agent of Defendant USAG from approximately 1986 to 2015, serving in various positions including but not limited to:

    a.   Certified Athletic Trainer;

    b.   Osteopathic Physician;

    c.   National Medical Director;

    d.   National Team Physician, USA Gymnastics;

    e.   National Team Physician, USA Gymnastics Women's Artistic Gymnastics National Team.

182.   Defendant Nassar received a benefit from his relationship with Defendant USAG in the form of national and global exposure, fame, and increased patients at his office at MSU, which resulted in Defendant Nassar receiving higher compensation.

183.   Defendant USAG received a benefit from its relationship with Defendant Nassar in the form of medical services rendered to its member athletes, national and global exposure, fame, and increased enrollment.

184.   Defendant Nassar was employed by Defendant MSU from approximately 1996 to 2016 in various positions including but not limited to:

    a.   Associate Professor, Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine;

b.   Team Physician, Defendant MSU's Men's and Women's Gymnastics Team;

c.   Team Physician, Defendant MSU's Men's and Women's Track and Field Teams;

d.   Team Physician, Defendant MSU's Men's and Women's Crew Team;

e.   Team Physician, Defendant MSU's Intercollegiate Athletics;

f.   Medical Consultant, Defendant MSU's Wharton Center for the Performing Arts;

g.   Advisor, Student Osteopathic Association of Sports Medicine.

185.   As part of Defendant Nassar's employment and contractual duties with MSU, Defendant Nassar was responsible for spending between 50 to 70% of his time engaged in "Outreach" and/or "Public Services."

186.   A part of Defendant Nassar's outreach included providing medical treatment to athletes affiliated with Defendants USAG and Twistars as well as other organizations such as Holt High School.

187.   Based on MSU's decision to compensate Nassar for his work with USAG and Twistars, Nassar was acting in the scope of his employment with MSU while he was working at USAG and Twistars and also while he was working with athletes from those institutions.

188.   Defendant Twistars is a gymnastics facility with which Defendant Nassar affiliated from its inception in or around 1996.

189.   Defendant John Geddert ("Defendant Geddert"), owner and operator of Twistars USA, Inc. d/b/a Gedderts' Twistars Gymnastics Club USA served as the USA World and Olympic Women's Gymnastics Team Head Coach.

190.   Defendant Geddert regularly recommended Defendant Nassar to members of Defendant Twistars as a reputable physician.

191.   For a period of time, Defendant Twistars displayed a photo of Defendant Nassar at its

facility.

192.   As an agent of Defendant Twistars, Defendant Nassar regularly provided services and treatment to Defendant Twistars' members and Defendant USAG's members on Defendant Twistars' premises.

193.   Defendant Nassar received a benefit from his relationship with Defendant Twistars in the form of national and global exposure, fame, and increased patients at his office at MSU.

194.   Defendant Twistars received a benefit from its relationship with Defendant Nassar in the form of medical services rendered to its member athletes, national and global exposure, fame, and increased enrollment.

195.   As a former physician of Osteopathic Medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student-athletes of Defendant MSU.

196.   Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

197.   While employed by Defendants MSU and USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

198.   For over 20 years, Defendant MSU's Sports Medicine Clinic has provided health care to MSU student athletes and the general public.[11]

199.   When the MSU Defendants operated the MSU Sports Medicine Clinic and provided medical services to Plaintiffs and other, they were acting as an arm of the state.

200.   The MSU Sports Medicine Clinic charged patients, including Plaintiffs, for their receipt of medical services.

201.   Charging Plaintiffs (and others) and billing insurance companies for medical services is

---

[11] See "MSU Sports Medicine," http://sportsmed.msu.edu/, last accessed Feb. 22, 2018.

an activity proprietary in nature.

202. The MSU Defendants charged fees comparable to specialists for the services provided at the MSU Sports Medicine Clinic.[12]

203. The MSU Sports Medicine Clinic engaged in proprietary functions by entering into the business of providing medical services for the primary purpose of raising funds and making a profit for the MSU Defendants.

204. The MSU Sports Medicine Clinic cannot be normally supported by taxes and fees.

205. During his employment, agency, and representation with the MSU Defendants, Defendant USAG, and Defendant Twistars, Defendant Nassar sexually assaulted, abused, and molested Plaintiffs by engaging in nonconsensual sexual touching, assault, and harassment including but not limited to digital vaginal and anal penetration.

206. The State of Michigan's Department of Licensing and Regulatory Affairs Occupational Health Standards regarding Bloodborne Infectious Diseases mandates use of gloves when exposed to potentially infectious material, including vaginal secretions.[13]

207. Upon information and belief, in or around 1998 a parent of a gymnast at Defendant Twistars' facility complained to Defendant Geddert regarding Defendant Nassar's conduct, yet the concerns and allegations went unaddressed.

208. In 1997 or 1998, Plaintiff Boyce, who was a minor at the time, told MSU gymnastics head coach Kathie Klages about concerns the participant had with Nassar's "treatment." Defendant Klages convinced the participant not to file a formal complaint because Klages

---

[12] *See* "MSU Sports Medicine," http://sportsmed.msu.edu/patients.html, last accessed Feb. 22, 2018.

[13] *See*, Michigan Administrative Code, R. 325.70001, et seq., *available at* http://www.michigan.gov/documents/CIS_WSH_part554_35632_7.pdf. Last accessed, January 5, 2017.

intimidated the participant by stating there would be serious consequences to her (the participant) and Nassar.

209.   As a result of Defendant Klages being informed about Nassar's conduct, other athletes were asked by Klages if Nassar had performed the "procedure" involving digital vaginal and anal penetration on her, and at least one athlete responded in the affirmative. Klages told the athlete that there is no reason to bring up Nassar's conduct.

210.   Also, in or around 1998, Jane A71 Doe complained to a coach at Twistars's facility regarding Defendant Nassar's conduct, yet the concerns and allegations went unaddressed.

211.   In or around 1999 the MSU Defendants were also put on notice of Defendant Nassar's conduct by an MSU student and track and cross-country athlete, Christie Achenbach, after she complained to MSU employees, including trainers and her head coach, Kelli Bert, that Defendant Nassar touched her vaginal area although she was seeking treatment for an injured hamstring.

212.   Despite her complaints to MSU representatives, Achenbach's concerns and allegations went unaddressed.

213.   In approximately 2000, a female student athlete and member of Defendant MSU's Women's Softball Team, Tiffany Thomas Lopez, was sexually assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including trainers.

214.   Ms. Lopez's allegations regarding the sexual assault include the following statements:

Plaintiff is informed and believes, and on that basis, alleges, that Defendants knew or should have known that NASSAR had engaged in unlawful sexually-related conduct in the past, and/or was continuing to engage in such conduct. Defendants had a duty to disclose these facts to Plaintiff, her parents and others,

29

but negligently and/or intentionally suppressed, concealed or failed to disclose this information. The duty to disclose this information arose by the special, trusting, confidential, fiduciary relationship between Defendants and Plaintiff. Specifically, the Defendant MSU knew that NASSAR was performing intravaginal adjustments with his bare, ungloved hand and in isolation with young females, based on the following:

    a.   The Plaintiff, approximately 18 years old at the time, had a visit with NASSAR where he touched her vagina, in order to purportedly heal back pain, she was having, under the guise of legitimate medical treatment. The Plaintiff complained to a trainer on her softball team who responded by saying that NASSAR was a world-renowned doctor, and that it was legitimate medical treatment. The Plaintiff continued with the purported treatment;

    b.   As the purported treatments continued, NASSAR became bolder, having the Plaintiff remove her pants, and then inserting his bare, ungloved and unlubricated hand into her vagina. The Plaintiff, again, reported to Defendant MSU training staff, this time a higher-ranking trainer. This trainer told the Plaintiff that the treatment sounded unusual and that the Plaintiff needed to speak to an even higher-level trainer in the Department, who ended up being one of three individuals who supervised the entire department at Defendant MSU;

    c.   When the Plaintiff went to see this individual, the Plaintiff was told by that individual that what happened to the Plaintiff was not sexual abuse, that NASSAR was a world-renowned doctor, and that the Plaintiff was not to discuss what happened with NASSAR and was to continue seeing him for purported treatment. The Plaintiff continued to see NASSAR for treatment;

    d.   Finally, in or around 2001, the Plaintiff refused to continue to see NASSAR for these abusive and invasive procedures. Defendant MSU then pressured and coerced the Plaintiff to declare herself medically inactive. The Plaintiff was shunned from the Defendant MSU sports program, and left Defendant MSU to return home to California.[14]

215.   One of the trainers that Ms. Lopez reported to was Lianna Hadden, who is still presently

       employed by MSU as an athletic trainer with the volleyball team.

216.   After reporting the assault to Ms. Hadden, Ms. Lopez also reported the assault to

---

[14] *See*, Case No. BC644417, filed with the Superior California Court of the State of California, County of Los Angeles, December 21, 2016, ¶26.

Defendant Teachnor-Hauk.

217. Ms. Lopez told Defendant Teachnor-Hauk that she was "extremely uncomfortable," but Defendant Teachnor-Hauk told Ms. Thomas Lopez that Nassar was engaged in actual medical treatment.

218. Defendant Teachnor-Hauk further dissuaded Ms. Lopez from reporting Nassar's conduct further by telling Ms. Lopez that if she pursued the matter further that it would cast a burden over her family and cause Ms. Lopez a lot of heartache and trauma.

219. Defendant Teachnor-Hauk also defended Nassar by stating to Ms. Lopez by asking why she would want to drag Nassar through an allegation of sexual assault.

220. Despite her complaints to MSU employees, agents, and representatives, Ms. Lopez's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

221. In approximately 2001 or 2002, Jennifer Rood Bedford, an MSU student athlete on the women's volleyball team, was sexually assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including trainers.[15]

222. According to Ms. Bedford, Nassar was known among the women's volleyball team as the "crotch doc" because of his "unconventional methods" of treating sports injuries with vaginal penetrations.

223. Ms. Bedford was extremely uncomfortable with the fact that she had been assaulted and

---

[15] *See* Nassar Victim: Jennifer Rood Bedford Statement, Jan. 16, 2018, Available at https://www.clickondetroit.com/video/nassar-victim-jennifer-rood-bedford-statement. Last accessed January 16, 2018.

reported the incident to MSU athletic trainer Lianna Hadden.

224. Ms. Hadden dissuaded Ms. Bedford from filing a formal complaint against Nassar because it would result in an investigation against Nassar, making an accusation against Nassar, and a statement that Ms. Bedford felt that what Nassar did was unprofessional or criminally wrong.

225. Upon information and belief, in approximately 2004, Defendant Gary E. Stollak was told by Kyle Stephens—then 11 or 12 years old—that she had been abused by Defendant Nassar.

226. Kyle Stephens was not a medical patient of Defendant Nassar, so there was no medical pretext for Defendant Nassar to commit the abuse.

227. Defendant Stollak did not report the abuse to law enforcement or to child protective services.

228. Instead, Defendant Stollak suggested that Ms. Stephens and her parents meet with Nassar.

229. Ms. Stephens refused to attend the meeting, but her parents met with Defendant Stollak and Defendant Nassar.

230. Defendant Stollak's failure to report Defendant Nassar endangered dozens, if not hundreds, of Plaintiffs who were subsequently sexually abused, assaulted, and molested by Defendant Nassar.

231. Because MSU took no action to investigate the 1997 or 1998, 1999, 2000, and 2001 or 2002, and 2004 complaints and took no corrective action, from at least 2000 to 2016, under the guise of treatment, Plaintiffs, many of whom were minors, were also sexually assaulted, abused, and molested by Defendant Nassar by vaginal and anal digital

penetration, without the use of gloves or lubricant and by touching and groping their breasts.

232. In 2004, Defendant Nassar authored a chapter in Principles of Manual Sports Medicine by Steven J. Karageanes.

233. In the chapter, Defendant Nassar described the pelvic diaphragm, coccyx, and sacroiliac ligaments as an area of the body not fully examined due to its proximity to the genitalia and buttocks, and stated it was "referred to as the 'no fly zone' because of the many cultural stigmas in touching this area."

234. Defendant Nassar recommended taking "special measures to explain any examination and techniques applied in this region," and "warning in advance of what you are planning to do," among other suggestions.

235. There is no mention of intravaginal or intra-rectal techniques or procedures in the chapter.

236. As described in detail below, Defendant Nassar often failed to follow his own recommendations with Plaintiffs as:

    a. He did not explain any intravaginal or intra-rectal techniques to Plaintiffs or their parents; and,

    b. He did not warn Plaintiffs he was going to engage in vaginal or anal digital penetration before doing so.

237. Also in 2004, Brianne Randall-Gay reported Defendant Nassar's conduct to her parents and to the Meridian Township Police Department in Meridian Township, Michigan.

238. In or around 2010, Defendant Geddert witnessed a gymnast who was approximately 15 years old being sexually assaulted by Defendant Nassar.

33

239. Upon witnessing the sexual assault, Defendant Geddert made a joke and made a statement to the effect of: "I guess your back really did hurt."

240. In or around 2010 and 2011, Defendant Geddert served in a leadership role with Defendant USAG, notably as a USAG coach representing Team USA in national and international USAG competitions and on the Junior Olympic Program Committee—each of these events were sanctioned directly or indirectly be Defendant USOC.

241. In or around 2011, Defendant Geddert was traveling in a vehicle with members of the USAG Senior National Team, including Aly Raisman.

242. At the time, Defendant Geddert was serving in his capacity as an agent for Defendants USAG and USOC as an Olympic Coach.

243. Ms. Raisman indicated she and her teammates would talk about Defendant Nassar's conduct amongst themselves.

244. While traveling together, in Defendant Geddert's presence, one of Ms. Raisman's teammates described in graphic detail what Defendant Nassar had done to her the prior evening—including specific details that constituted Defendant Nassar's sexual assault of a minor child.

245. Ms. Raisman stated Defendant Geddert did not question her or teammate about the statements made.

246. As early as 2010, through Defendant Geddert, Defendant USOC had notice of Defendant Nassar's misconduct and propensity to sexually abuse and assault girls and young women.

247. In or around June 2015, Margaret Nichols and other athletes were overheard discussing Nassar's misconduct at the Karolyi Ranch.

248. The "Karolyi Ranch" was designated as being the United States' Olympic Training Center, thus, was required to follow all protocols, mandates, policies, bylaws, rules, and/or practices of Defendant USOC (as well as Defendant USAG).

249. Defendant USOC was responsible for ensuring that the Karolyi Ranch, provided adequate supervision for the minors training and competing thereat, reasonable safety protocols ensuring the safety of those minors, and reasonable supervision, training, and oversight procedures for all medical care provided to gymnasts at the Karolyi Ranch, including training of staff on identification of sexual abuse, proper procedures, use Karolyi Ranch, including training of staff on identification of sexual abuse, proper procedures, use of proper medical care, and staffing of ample medical personnel to ensure proper care of all minor gymnasts.

250. An adult reported Ms. Nichols' concerns to USAG.

251. Ms. Nichols' complaints were received by former USAG President and CEO Steve Penny and a representative of the USOC, among others.

252. At no time did Defendants USAG or USOC inform Defendants MSU, MSU Trustees, other MSU representatives, Defendants Twistars, Geddert or any USAG members or member clubs of the concerns that led to or any MSU Defendant Nassar being relieved from his duties with Defendant USAG.

253. At no time did Defendants USAG or USOC inform its member athletes, coaches, member clubs or the public that Defendant Nassar had been dismissed, relieved from his duties, and was under criminal investigation.

254. Instead Defendants USAG and USOC allowed its members and the public to believe Nassar simply "retired."

255.    In 2014, following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015 the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and Defendant MSU's response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.[16]

256.    The OCR concluded their investigation in 2015 and presented Defendant MSU with a twenty-one-page agreement containing measures and requirements to resolve the 2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.[17]

257.    While the OCR was conducting their investigation, additional complaints regarding Defendant Nassar's conduct surfaced in 2014. Amanda Thomashow reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.[18]

258.    Kristine Moore, an attorney investigator in Defendant MSU's Title IX office investigated the 2014 complaints.

259.    However, Amanda Thomashow reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

---

[16] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf, last accessed January 4, 2017.

[17] *See,* Resolution Agreement, August 28, 2015, OCR Document #15-11-2098, #15-14-2133. Available at, https://www2.ed.gov/documents/press-releases/michigan-state-agreement.pdf. Last accessed January 5, 2017.

[18] *See,* At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at, http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault-harassment-larry-nassar/94993582/. Last accessed January 5, 2017.

     a. Defendant Nassar was sexually aroused while touching her;

     b. The appointment with Defendant Nassar did not end until Amanda Thomashow physically removed his hands from her body.

260. Three months after initiating the investigation, in July 2014, Amanda Thomashow's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "[n]ot of a sexual nature."[19]

261. Two of the medical experts consulted by the Office for Inclusion and Intercultural Initiatives in investigating the victim's allegations were Defendants Lemmen and Teachnor-Hauk.

262. Kristine Moore produced two different versions of the report in response to the July 2014 investigation—one version was sent to Amanda Thomashow and a different version was sent to Defendant Nassar, Defendant Strampel, and other MSU personnel that contained a completely different and expanded conclusion section.

263. The version of the report that Kristine Moore sent to Amanda Thomashow contained the following conclusion:

> We cannot find that the conduct was of a sexual nature. Thus, it did not violate the Sexual Harassment Policy. However, we find the claim helpful in that it allows us to examine certain practices at the MSU Sports Medicine Clinic.

264. The other version of the report that Kristine Moore produced for Defendant MSU that was not provided to Amanda Thomashow contained the following conclusion:

> We cannot find that the conduct was of a sexual nature. Thus, it

---

[19] *Id.*

did not violate the Sexual Harassment Policy. However, we find the claim helpful in that it brought to light some significant problems that the practice will want to address.

We find that whether medically sound or not, the failure to adequately explain procedures such as these invasive, sensitive procedures, is opening the practice up to liability and is exposing patients to unnecessary trauma based on the possibility of perceived inappropriate sexual misconduct. In addition, we find that the failure to obtain consent from patients prior to the procedure is likewise exposing the practice to liability. If procedures can be performed skin-on-skin or over clothes in the breast or pelvic floor area, it would seem patients should have the choice between the two. Having a resident, nurse or someone in room during a sensitive procedure protects doctors and provides patients with peace of mind. If "touching is what DO's do" and that is not commonly known, perhaps the practice will want to consider a disclaimer or information sheet with that information provided to the patient up front.

Finally, we believe the practice should consider whether its procedure for intake of complaints about physicians' behavior is adequate. Ms. Thomashow claims she tried to file a complaint with the front desk receptionist, telling her that she was cancelling her appointment because she felt "violated." Whether this triggers a reporting protocol should be examined by the practice.

265. Following the investigation, on or about July 30, 2014, Defendant Strampel sent an e-mail to Defendant Nassar that provided new institutional guidelines and restrictions that Defendant Nassar was subject to including:

a.   Defendant Nassar was not to examine or treat patients alone but was to be accompanied by a chaperone such as a resident or nurse;[20]

b.   The alleged "procedure" was to altered to ensure there would be little to no skin to skin contact when in certain "regions" and if skin to skin contact was "absolutely necessary" the "procedure" was to be explained in detail with another person in the room for both the explanation and the "procedure;" and,

c.   New people in the practice were to be "oriented" to ensure understanding with the guidelines.

266. Defendant Strampel sent a copy of the July 30, 2014 e-mail that outlined Defendant Nassar's restrictions and guidelines to Defendant Dietzel.

---

[20] *Id.*

267. At all relevant times, Defendant Dietzel, Defendant Strampel, and Defendant Kovan were acting in a supervisory role to Defendant Nassar.

268. The MSU Defendants failed to take any actions to enforce or ensure that Defendant Nassar was in compliance with the restrictions outlined by Defendant Strampel in his July 30, 2014 e-mail to Defendant Nassar.

269. Upon information and belief, the MSU Defendants failed to take any action to orient new MSU employees to ensure that they were aware of the restrictions placed on Nassar.

270. In approximately March 2016, Diane Rork was an employee of MSU serving as a registered medical assistant.[21]

271. Through her employment with MSU, Diane Rork had occasion to work with patients who were to be seen by Defendant Nassar.

272. At no point in time was Diane Rork ever told of any restrictions or guidelines regarding Defendant Nassar's treatment of patients.

273. On one occasion in March 2016, Diane Rork was completing a chart of a girl younger than 13 who was set to be examined by Defendant Nassar in an exam room at Defendant MSU's Sports Medicine Clinic.

274. Defendant Nassar ordered Diane Rork to leave the room so that he could "treat" the young girl alone.

275. Diane Rork reported her March 2016 interaction with Defendant Nassar to the MSU Police Department in January 2017.

276. MSU terminated Diane Rork's employment approximately two weeks later.

---

[21] *See,* Kim Kozlowski, *Witness: MSU Knew Nassar Asked Her to Leave Girl's Exam*, Kim Kozlowski, DETROIT NEWS (Dec. 21, 2017), http://www.detroitnews.com/story/news/michigan/2017/12/21/msu-nassar-scandal-witness-claims-retribution/108800992/

277. In addition, an unnamed registered nurse employed by MSU at the MSU Sports Medicine from approximately 2015 to 2016, has indicated that she was never made aware of any restrictions or guidelines concerning Defendant Nassar.

278. This unnamed registered nurse was the only registered nurse employed by Defendant MSU's Sports Medicine Clinic during the time of her employment.

279. From July 2014 to September 2016, despite complaints about Defendant Nassar's conduct and an open criminal investigation into Defendant Nassar's conduct, Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

280. In a March 14, 2017 interview with Michigan State University Police Department Detective Sergeant Christopher Rozman, Defendant Strampel admitted that the institutional restrictions and guidelines that Defendant Nassar was subject to were illusory in nature because he only shared them with Defendant Dietzel and took no action whatsoever to ensure that the institutional restrictions and guidelines were implemented, followed, or enforced.

281. Defendant Strampel also told Detective Sergeant Rozman that he did not want any other employees in the Sports Medicine Clinic to know that Defendant Nassar had been accused of sexual assault or that Nassar was subject to institutional restrictions or guidelines.

282. Defendant Strampel also admitted to Detective Sergeant Rozman that he did not take any steps to orient any new employees at Defendant MSU's Sports Medicine Clinic to the institutional restrictions or guidelines that Defendant Nassar was purportedly subject to until after Defendant Nassar's termination.

283.  In a March 15, 2017 interview with Michigan State University Police Department Detective Lieutenant Andrea Munford, Michigan State University Police Department Detective Sergeant Christopher Rozman, and Federal Bureau of Investigation Special Agent Rodney Charles, Defendant Teachnor-Hauk stated that she had never had an athlete tell her that Defendant Nassar had made them uncomfortable or that Defendant Nassar had performed digital vaginal penetration.

284.  Defendant Teachnor-Hauk's March 15, 2017 statements to law enforcement were false for the reason that numerous athletes had previously reported concerns of uncomfortable and inappropriate treatment by Defendant Nassar to her, including complaints of digital vaginal penetration by Defendant Nassar under the guise of medical treatment.

285.  Several Plaintiffs were made aware of Defendant Nassar's widespread sexual abuse on or around September 12, 2016 or sometime thereafter through related media coverage.[22]

286.  Others have been made aware of the allegations of Defendant Nassar's conduct more recently through related media coverage.

287.  Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016 only after the MSU Defendants became aware that:

  a.  Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar;[23] and,

  b.  A former patient of Defendant Nassar, Rachael Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. Ms. Denhollander's allegations of sexual assault by Defendant Nassar included but were not limited to:

---

[22] *Id.*

[23] *See*, Case No. 34-2016-00200075, filed with the Superior Court of the State of California, County of Sacramento, September 8, 2016. A copy of the Complaint is available at https://www.documentcloud.org/        documents/3106054-JANE-JD-COMPLAINT-Signed.html. Last accessed January 5, 2017.

41

      i.      Massaging her genitals;

      ii.     Penetrating her vagina and anus with his finger and thumb; and,

      iii.    Unhooking her bra and massaging her breasts.[24]

288.    Reasons given to Defendant Nassar for his termination included but were not limited to:

      a.   Deviation from "required best practices put in place following the internal sexual harassment investigation conducted … in 2014;"

      b.   Failure to disclose a 2004 complaint to Meridian Township Police; and,

      c.   Dishonesty by Defendant Nassar when Defendant MSU questioned him about receiving prior complaints about the "procedure" at issue.

289.    Shortly after MSU terminated Defendant Nassar's employment, Defendant Klages requested the MSU Women's Gymnastics Team members to sign a card for the team to show their support for Defendant Nassar—despite the fact that Defendant Klages was aware that Defendant Nassar's employment had been terminated due to numerous claims of sexual assault against patients and athletes.[25]

290.    Defendant Klages also passionately defended Defendant Nassar to the MSU Women's Gymnastics Team and told her athletes that she would trust her own grandchildren with him—despite the numerous allegations of sexual assault against Defendant Nassar and the existence of open criminal investigations into his conduct.

291.    In September 2016, following MSU's termination of Defendant Nassar's employment, MSU Athletic Department's Director of Athletic Communications, Jamie Weir Baldwin,

---

[24] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed January 5, 2017.

[25] *See*, MSU Abuse Scandal: Coach Had Gymnasts Sign Card for Dr. Larry Nassar, Stephanie Gosk, Kristen Powers, and Tracy Connor, March 21, 2017. Available at, https://www.nbcnews.com/news/us-news/msu-abuse-scandal-coach-had-gymnasts-sign-card-dr-larry-n731781. Last accessed December 27, 2017.

instructed members of the MSU Women's Gymnastics Team not to speak to the media or post on their social media accounts regarding Defendant Nassar's actions.

292.  Based on the communications of the MSU Athletic Department, members of the MSU Women's Gymnastics Team believed that they would be punished by MSU or face negative consequences if they came forward to the police or media to describe sexual assaults against them.

293.  In December 2016, following the filing of federal child pornography charges against Defendant Nassar, Defendant Klages continued to defend Defendant Nassar and told the parent of one of Defendant Nassar's victims that the child pornography "could have been planted" by somebody suing Defendant Nassar and also continued to deny that Defendant Nassar had sexually assaulted any patients by suggesting that the victims had "misinterpreted the treatment."

294.  MSU did not directly encourage the members of the MSU Women's Gymnastics Team to report suspected abuse by Defendant Nassar to the police until February 2017— approximately 5 months after MSU terminated Defendant Nassar's employment.

295.  After receiving allegations of "athlete concerns," in approximately summer 2015 Defendant USAG relieved Defendant Nassar of his duties.[26]

296.  Upon information and belief, Defendant USOC was made aware of the same allegations in 2015.

297.  At no time did Defendants USAG or USOC inform Defendants MSU, MSU Trustees, or other MSU representatives of the concerns that led to Defendant Nassar being relieved

---

[26] *See*, Former USA Gymnastics doctor accused of abuse, Mark Alesia, Marisa Kwiatkowski, Tim Evans, September 12, 2016. Available at, http://www.indystar.com/story/news/2016/09/12/former-usa-gymnastics-doctor-accused-abuse/89995734/. Last accessed January 5, 2017.

from his duties with Defendant USAG.

298. At no time did Defendants USAG or USOC inform Defendants Twistars or Geddert of the concerns that led to Defendant Nassar being relieved from his duties with Defendant USAG—despite the fact that Defendant Twistars is a USAG member club and Defendant Geddert is a USAG member coach and had been an Olympic coach with USOC.

299. In approximately December 2016, Defendant USAG settled one or more claims against it involving allegations of sexual abuse by Defendant Nassar against Olympic gold-medal-winning gymnast McKayla Maroney pursuant to a confidential settlement agreement in California.

300. Upon information and belief, USAG entered into one or more confidential settlement agreements in California involving claims of child sex abuse or other acts that could be prosecuted as a felony sex offense by Defendant Nassar.

301. Notably, California law prohibits confidential settlements in cases involving allegations of child sexual abuse or an act that could be prosecuted as a felony sex offense. CAL. CIV. PROC. CODE § 1002.

302. Upon information and belief, USAG's settlement agreement with McKayla Maroney is not the first or the only settlement agreement that USAG has entered into to resolve civil claims of victims of sexual abuse by Defendant Nassar against USAG.

303. In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, and was later released on $1 million bond.[27]

304. In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in Federal

---

[27] State of Michigan, Ingham County Circuit Court Case No. 17-143-FC.

Court in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of child pornography.

305. According to the federal indictment,[28] Defendant Nassar:

    a. Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004;

    b. Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016 including images involving a minor who had not attained 12 years of age.

306. Testimony given by an FBI agent at a hearing held on December 21, 2016, alleged, among other allegations, that Defendant Nassar used a GoPro camera to record video images of children in a swimming pool and that:

    a. Defendant Nassar's hand can be seen grabbing one girl's hand and shoving it into the vaginal area of another girl; and,[29]

    b. Defendant Nassar's thumb can be seen pressing into a child's vagina/vaginal area.[30]

307. In mid-January 2017, Defendant Brooke Lemmen, D.O. submitted a letter of resignation to Defendant Strampel amid allegations that she:

    a. Removed several boxes of confidential treatment patient records from Defendant MSU's Sports Medicine clinic at Defendant Nassar's request;

    b. Did not disclose to Defendant MSU that Defendant USAG was investigating Defendant Nassar as of July 2015; and,

    c. Made a staff member feel pressured not to fully cooperate in an internal investigation into allegations against Defendant Nassar.

308. On February 7, 2017, a superseding indictment added an additional count of "Destruction and Concealment of Records and Tangible Objects" alleging between September 19,

---

[28] 1:16-cr-00242 PageID.1-4.
[29] *Id*. at PageID.49-50.
[30] *Id*. at PageID.50.

2016 and September 20, 2016, Defendant Nassar "caused a third-party vendor to permanently delete and destroy all images, records, documents, and files contained on the hard drive of a laptop computer, and the defendant threw in the trash a number of external hard drives."[31]

309. On February 17, 2017, following a preliminary examination, Defendant Nassar was ordered to stand trial on three charges of first-degree criminal sexual conduct with a person under 13 in Ingham County, Michigan following testimony which included, among others, allegations of digital vaginal penetration at Defendant Nassar's residence.

310. On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under the age of 13 years old in Ingham County, Michigan[32] and Eaton County, Michigan.[33]

311. Defendant Nassar's preliminary examinations on the second set of charges in Ingham County was held on May 12, 2017, May 26, 2017, and June 23, 2017.

312. During Nassar's preliminary examination on May 12, 2017 in the 55th District Court in Ingham County, Michigan, a young woman testified regarding an instance of sexual assault that occurred at Twistars's facility in Dimondale, Michigan in approximately 2010 when she was fifteen years old as follows, "Mostly all I remember is [Nassar] doing the treatment on me with his fingers in my vagina, massaging my back with a towel over

---

[31] *Id.* at PageID.88.
[32] *State v. Nassar*, Ingham County District Court Case No. 17-00425, *see also*, http://www.michigan.gov/documents/ag/Nassar_affidavit_Ingham_County_charges_Feb._2017_552531_7.pdf
[33] *State v. Nassar*, Eaton County District Court Case No. 17-0318, *see also,* http://www.michigan.gov/documents/ag/Nassar_affidavit_Eaton_County_charges_Feb._2017_552536_7.pdf

my butt, and John [Geddert] walking in and making a joke that I guess my back really did

hurt, and then I was uncomfortable because John [Geddert] was in there during that."

313.   At the conclusion of the preliminary examination, Defendant Nassar was ordered to stand

trial on 12 counts of first-degree criminal sexual conduct following testimony by Rachael

Denhollander and others, which included, among others, allegations of digital vaginal and

anal penetration by Defendant Nassar.

314.   Defendant Nassar's preliminary examination on the charges issued in Eaton County,

Michigan was held on June 30, 2017.

315.   At the conclusion of the preliminary examination, Defendant Nassar was ordered to stand

trial on 7 counts of first-degree criminal sexual conduct following testimony, which

included among others, allegations of digital vaginal penetration by Defendant Nassar.

316.   Nassar faced a total of 22 counts of first-degree criminal sexual conduct in circuit court—

15 in Ingham County, Michigan and 7 in Eaton County, Michigan.

317.   On or about July 11, 2017, Defendant Nassar pled guilty in his federal criminal case to:

(1) Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. §

2252A(a)(2)(A); (2) Possession of Child Pornography, in violation of 18 U.S.C. §

2252A(a)(5)(B); and (3) Destruction and Concealment of Records and Tangible Objects,

in violation of 18 U.S.C. § 1519.

318.   On November 11, 2017 Defendant Nassar pleaded guilty to seven counts of first-degree

criminal sexual conduct in Ingham County Circuit Court.

319.   On November 29, 2017 Defendant Nassar pleaded guilty to three counts of first-degree

criminal sexual conduct in Eaton County Circuit Court.

320.   On December 7, 2017 Defendant Nassar was sentenced in the United States District

Court for the Western District of Michigan by District Court Judge Janet T. Neff to three twenty-year sentences to be served consecutively on his convictions for (1) Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); (2) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and (3) Destruction and Concealment of Records and Tangible Objects, in violation of 18 U.S.C. § 1519.

321. Defendant Nassar's sentencing hearing on his convictions for seven counts of first-degree criminal sexual conduct in Ingham County Circuit Court took place from January 16, 2018 to January 24, 2018.

322. Defendant Nassar's sentencing on his convictions for three counts of first-degree criminal sexual conduct in Eaton County Circuit Court took place from January 31, 2018 to February 5, 2018.

323. Between the sentencing hearings in Ingham and Eaton Counties, approximately 204 victim impact statements given over nine days.

324. Many Plaintiffs in this action gave impact statements, and many Plaintiffs who were initially seeking to proceed pseudonymously in this action chose to publicly identify themselves at the sentencing hearings.

325. On January 24, 2018, Defendant Nassar was sentenced in Ingham County Circuit Court to serve 40 to 175 years in the Michigan Department of Corrections.

326. On February 5, 2018, Defendant Nassar was sentenced in Eaton County Circuit Court to serve 40 to 125 years in the Michigan Department of Corrections.

327. During and in the wake of the sentencing hearings:

   a.    Ms. Simon resigned as President of Defendant MSU on January 24, 2018;

b.      Mr. Hollis resigned as Athletic Director of Defendant MSU on January 26, 2018;

c.      By January 31, 2018, the entire board of directors of Defendant USAG resigned under threat of decertification by the U.S. Olympic Committee;

d.      Steps to revoke Defendant Strampel's tenure and terminate his employment with Defendant MSU were initiated on or around February 9, 2018, with Defendant MSU stating publicly, ". . . Strampel did not act with the level of professionalism we expect from individuals who hold senior leadership positions, particularly in a position that involves student and patient safety . . . . Further allegations have arisen that question whether his personal conduct over a long period of time met MSU's standards."[34]

## V.      SPECIFIC FACTUAL ALLEGATIONS

### A.      LARISSA BOYCE

328.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

329.    In approximately 1997, Plaintiff Boyce was training with MSU Youth Gymnastics, under the instruction of Kathie Klages.

330.    From approximately 1991 until 1998, Plaintiff Boyce was a member of Defendant USAG.

331.    After Plaintiff Boyce began experiencing low back pain, Defendant Klages instructed Plaintiff Boyce to seek treatment with Defendant Nassar.

---

[34] See, Engler Takes First step to Remove Strampel, February 8, 2018, available at http://msutoday.msu.edu/news/2018/engler-takes-first-step-to-remove-strampel/.  Last accessed Feb. 17, 2018.

332. During her visits with Defendant Nassar, Plaintiff Boyce received treatment from Defendant Nassar at his office at Defendant MSU's Sports Medicine Clinic, which is located on or adjacent to Defendant MSU's East Lansing, Michigan campus. Plaintiff Boyce was also seen on occasion in Jenison Fieldhouse, which is located on Defendant MSU's campus.

333. Plaintiff Boyce treated with Defendant Nassar from approximately 1997 until late 1999.

334. For over two years, under the guise of treatment, Defendant Nassar sexually assaulted, battered, abused, and molested Plaintiff Boyce by touching and rubbing her genital area and digitally penetrating her vagina without the use of medical gloves or lubricant and without Plaintiff Boyce's consent or the consent of Plaintiff Boyce's parents.

335. Plaintiff Boyce was a minor when many instances of the sexual abuse happened, as she did not reach the age of majority until late 1998.

336. Defendant Nassar would begin "treatments" by asking Plaintiff Boyce to completely disrobe from the waist down. Then, Defendant Nassar would have Plaintiff Boyce lie on the examining table, usually face-down. Defendant Nassar would then digitally penetrate Plaintiff Boyce's vagina and rub very hard while he made grunting noises. Defendant Nassar would occasionally rest his thumb or finger on Plaintiff Boyce's anus. Plaintiff Boyce often perceived that Defendant Nassar was sexually aroused during these "treatments."

337. Defendant Nassar represented that these "treatments" were for the purpose of alleviating Plaintiff Boyce's low back pain.

338. On at least one occasion, Defendant Nassar asked Plaintiff Boyce about her sex life and in particular whether she performed oral sex on her then-boyfriend.

339.  These "treatments" would occur approximately once per week at first, gradually decreasing to once every two weeks.

340.  Plaintiff Boyce did not treat and never intended to treat with Defendant Nassar for OB/GYN issues.

341.  Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Boyce or Plaintiff Boyce's parents even though she was a minor at the time.

342.  Neither Plaintiff Boyce nor Plaintiff Boyce's parents consented to any touching, rubbing, or digital penetration of Plaintiff Boyce's vagina.

343.  Defendant Nassar attempted to create a position of trust with both Plaintiff Boyce and Plaintiff Boyce's parents by, among other things, asking Plaintiff Boyce to call him "Larry" instead of "Dr. Nassar."

344.  Sometime in late 1997 to mid-1998, when Plaintiff was 16 or 17 years old, Plaintiff Boyce told Defendant Kathie Klages that Plaintiff Boyce was concerned about the "treatments" provided by Defendant Nassar.

345.  Defendant Klages explained that she had known Defendant Nassar for years and could not imagine him doing anything questionable. Defendant Klages told Plaintiff Boyce that Plaintiff Boyce must be "misunderstanding" or "reading into" what Defendant Nassar was doing. Defendant Klages explained that she could file something, but that it would have serious consequences for Plaintiff Boyce and for Nassar.

346.  This conversation left Plaintiff Boyce feeling intimidated, embarrassed, and scared, and caused Plaintiff Boyce to believe that nothing illegal or tortious was happening.

347.  At her next appointment with Defendant Nassar, he informed Plaintiff Boyce that Defendant Klages had told him of Plaintiff Boyce's conversation with Klages. Defendant

Nassar proceeded to tell Plaintiff Boyce that she "was not understanding a proper medical treatment." Defendant Nassar proceeded to commit another sexual assault at that appointment.

348. In approximately September of 2016, Plaintiff Boyce became aware of allegations of sexual abuse against Defendant Nassar.

349. These actions were intentionally and fraudulently concealed and not documented in Plaintiff Boyce's medical records.

350. Plaintiff Boyce, a minor at the time, believed the conduct of Defendant Nassar constituted medical treatment and did not discover or become aware that said conduct breached the standard of care or practice or was otherwise unlawful or tortious until the allegations against Dr. Nassar and Michigan State University were recently made public.

351. Plaintiff Boyce did not treat or intend to treat with Dr. Nassar for issues related to obstetrics or gynecology (hereinafter "OB/GYN").

352. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Boyce believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

353. Plaintiff Boyce is married to Plaintiff Adam Boyce.

### B. ARIANNA GUERRERO

354. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

355. Plaintiff Guerrero is a 15-year-old female who, in March of 2014, was a gymnast.

356.  From approximately 2005 until 2013, Plaintiff Guerrero was a competitive gymnast and member of Defendant Twistars.

357.  From approximately 2012 until 2014 Plaintiff Guerrero was a competitive gymnast and member of Defendant USAG.

358.  On or about March 10, 2014, Plaintiff Guerrero was seen as a patient by Defendant Nassar at Defendant MSU's Sports Medicine Clinic secondary to a gymnastics-related back injury.

359.  Following the initial visit, Plaintiff Guerrero was seen by Defendant Nassar on at least six other occasions.

360.  At each visit, Defendant Nassar would instruct Plaintiff Guerrero to disrobe, put on a medical gown, and then stand in front of Defendant Nassar and bend at the waist.

361.  From 2014 to 2016, Defendant Nassar engaged in inappropriate sexual touching with Plaintiff Guerrero, including digitally penetrating Plaintiff Guerrero's vagina without the use of medical gloves or lubricant.

362.  Defendant Nassar conducted acupuncture near Plaintiff Guerrero's genitals and frequently grabbed her buttocks.

363.  Plaintiff Guerrero was told not to call Defendant Nassar at the office, but rather to text his phone.

364.  Defendant Nassar offered an appointment at his private residence, which Plaintiff Guerrero refused.

365.  Some or all of this conduct occurred after Michigan State University imposed a particular protocol for Defendant Nassar, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to

involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

366. Michigan State University and MSU Sports Medicine had received notice of Nassar's inappropriate conduct on multiple occasions dating back to at least 1997.

367. These actions were intentionally and fraudulently concealed and not documented in the medical record.

368. Plaintiff Guerrero, a minor, believed the conduct of Defendant Nassar constituted medical treatment and did not discover or become aware that said conduct breached the standard of care or practice or was otherwise unlawful or tortious until the allegations against Defendant Nassar and Michigan State University were recently made public.

369. Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Guerrero or Plaintiff Guerrero's parents even though she was a minor at the time.

370. Neither Plaintiff Guerrero nor Plaintiff Guerrero's parents consented to any touching, rubbing, or digital penetration of Plaintiff Guerrero's vagina

371. Plaintiff Guerrero did not treat or intend to treat with Defendant Nassar OB/GYN related issues.

372. As a result of Defendant Nassar's abuse, Plaintiff Guerrero suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestation.

373. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Guerrero believed the "treatment" she

received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

374.   Plaintiff Guerrero brings this action by her next friend Plaintiff Tony Guerrero.

###   C.   KASSIE CASTLE

375.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

376.   From approximately 2004 until 2015, Plaintiff Castle treated with Defendant Nassar, first at Defendant Twistars' facility and at Defendant MSU's Sports Medicine Clinic.

377.   When Plaintiff Castle began treating with Defendant Nassar in 2004, she was a minor— between 11 and 12 years old.

378.   From approximately 2000 until 2008, Plaintiff Castle was a member of Defendant Twistars.

379.   From approximately 2002 until 2008, Plaintiff Castle was a member of Defendant USAG.

380.   Plaintiff Castle presented to Defendant Nassar with complaints of gymnastics-related injuries to her ribs and back.

381.   Between 2004 and 2015, at appointments at his office at Defendant MSU's Sports Medicine Clinic, Defendant Nassar would remove Plaintiff Castle's sports bra, massage her breasts, pull down her pants and rub her buttocks with his thumb, digitally penetrating her anus with his thumb and causing bleeding, and engage in other similar conduct under the guise of performing legitimate medical treatment for Plaintiff Castle's rib and back injuries.

382.  On one occasion, while massaging Plaintiff Castle's genitals, Defendant Nassar cut her labia minora with his fingernail, causing bleeding.

383.  Defendant Nassar would engage in inappropriate sexual dialog with Plaintiff Castle before, during, and after the penetrative assaults detailed above.

384.  On several occasions, Defendant Nassar would perform the above-described "treatment" while Plaintiff Castle's mother was in the examination room.  However, Defendant Nassar would position himself and Plaintiff Castle so that Plaintiff Castle's mother could not observe and/or ascertain the actions Defendant Nassar was taking during the examinations.

385.  On multiple occasions during these treatments, Plaintiff Castle witnessed Defendant Nassar sexually aroused and Defendant Nassar's erection would come into contact with Plaintiff Castle's body.

386.  Defendant Nassar did not give prior notice or obtain consent from Plaintiff Castle or from Plaintiff Castle's parents for digital penetration or to touch Plaintiff Castle's vagina, anus, or breasts.

387.  Defendant Nassar frightened Plaintiff Castle into quitting gymnastics by telling her she could become paralyzed.

388.  Plaintiff Castle did not treat or intend to treat with Defendant Nassar OB/GYN related issues.

389.  As a result of Defendant Nassar's abuse, Plaintiff Castle suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors,

diminished educational opportunity, and post-traumatic stress disorder with physical manifestation.

390. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Castle believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

### D.    KRISTIN THELEN

391. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

392. From approximately 1998 until 2007, Plaintiff Thelen was a competitive youth gymnast and member of Defendant USAG.

393. Plaintiff Thelen treated with Defendant Nassar from 2005 to 2007 at his office at Defendant MSU's Sports Medicine Clinic secondary to gymnastics-related knee, leg and back injuries.

394. When Plaintiff Thelen initiated treatment with Defendant Nassar, she was a minor— approximately 16 years old

395. Defendant Nassar diagnosed Plaintiff Thelen with a fracture in her back, though no other doctor offered that diagnosis.

396. On several occasions during these treatment sessions, Defendant Nassar digitally penetrated Plaintiff Thelen's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Thelen's knee, leg, and back injuries.

397.  On at least one occasion, Plaintiff Thelen's mother was present in the room during these treatments.  However, Defendant Nassar would position himself and Plaintiff Thelen in such a way as to prevent Plaintiff Thelen's mother from observing and/or ascertaining his conduct.

398.  On one occasion, Defendant Nassar explained that he could relieve Plaintiff' Thelen's leg pain by manipulating a bundle of nerves near Plaintiff Thelen's genitals.

399.  Defendant Nassar did not give prior notice or obtain consent from Plaintiff Thelen or Plaintiff Thelen's parents to make contact with and/or digitally penetrate Plaintiff Thelen's vagina.

400.  Plaintiff Thelen did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

401.  As a result of Defendant Nassar's abuse, Plaintiff Thelen suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations including but not limited to eating disorders.

402.  Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Thelen believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**E.    JANE B8 DOE**

403.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

404.   As early as 1995, Plaintiff Jane B8 Doe was a participant in Spartan youth gymnastics programs.

405.   Plaintiff began treating with Defendant Nassar in 1995 at his office at MSU Sports Medicine Clinic and Jennison Field House secondary to gymnastics-related lower back injuries on a weekly basis.

406.   When Plaintiff Jane B8 Doe began treating with Defendant Nassar, she was a minor, approximately 14 or 15 years old, and was a virgin.

407.   When Plaintiff Jane B8 Doe began treating with Defendant Nassar, she was a member of Defendant USAG.

408.   At the beginning of most of these appointments, Defendant Nassar would hug Jane B8 Doe and take other steps to make her feel special and gain her trust.

409.   Defendant Nassar engaged Plaintiff Jane B8 Doe in sexually suggestive conversations, asking if she had a boyfriend and "how far" they would go in terms of sexual activity.

410.   On several occasions at appointments at his office at MSU Defendant Nassar sexually assaulted Plaintiff Jane B8 Doe by digitally penetrating Plaintiff Jane B8 Doe's vagina and anus without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B8 Doe's lower back injury.

411.   On at least one occasion, Plaintiff Jane B8 Doe's parents were present in the room during these appointments, however, Defendant Nassar would position himself and Plaintiff Jane B8 Doe in such a way as to prevent observation of his conduct.

412.   During these "treatments," Plaintiff Jane B8 Doe perceived Defendant Nassar to be sexually aroused and making grunting noises.

413. On at least one occasion, Plaintiff Jane B8 Doe specifically declined the intravaginal "treatment," but Defendant Nassar held her down with the weight of his body and digitally penetrated Plaintiff Jane B8 Doe's vagina against Plaintiff Jane B8 Doe's will.

414. As a result of MSU gymnastics head coach Defendant Klages being informed by Plaintiff Boyce of Defendant Nassar's conduct, Jane B8 Doe was asked by Defendant Klages if Defendant Nassar had performed a procedure involving digital vaginal and anal penetration on Plaintiff Jane B8 Doe; Plaintiff Jane B8 Doe responded in the affirmative to which Defendant Klages told Plaintiff Jane B8 Doe that there is no reason to bring up or otherwise report Defendant Nassar's conduct.

415. Plaintiff Jane B8 Doe did not treat or intend to treat with Dr. Nassar for OB/GYN related issues.

416. As a result of Defendant Nassar's abuse, Plaintiff Jane B8 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations, including but not limited to eating disorders and termination of her gymnastics career.

417. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane B8 Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

418. Plaintiff Jane B8 Doe is married to John B8 Doe.

F. **JANE B12 DOE**

419. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

420. From 2006 to 2009, Plaintiff Jane B12 Doe was a patient of Defendant Nassar at Defendant MSU's Sports Medicine Clinic secondary to sustaining diving-related back injuries.

421. At the time Plaintiff Jane B12 Doe initiated treatment with Defendant Nassar, she was a minor, approximately 14 to 17 years old.

422. From approximately 1999 until 2000, Plaintiff Jane B12 Doe was a member of Defendant Twistars.

423. Defendant Nassar offered a "treatment" involving pressing on a pressure point near Plaintiff Jane B12's vagina under the guise it was legitimate medical treatment for Plaintiff Jane B12 Doe's back injuries.

424. From 2006 to 2009, on several separate occasions Defendant Nassar massaged Plaintiff Jane B12 Doe's vaginal area without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B12 Doe's back injuries.

425. Plaintiff Jane B12 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

426. As a result of Defendant Nassar's abuse, Plaintiff Jane B12 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

427.   Based on Defendant Nassar's representations, Plaintiff Jane B12 Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

### G.   JESSICA TARRANT

428.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

429.   From approximately 2002 until 2013 Plaintiff Tarrant was a competitive gymnast with affiliation with both Defendant Twistars and Defendant USAG.

430.   Beginning in 2010, Plaintiff Tarrant presented to Defendant Nassar at the Defendant MSU's Sports Medicine Clinic with complaints of back pain.

431.   At the time Plaintiff Tarrant initiated her treatment with Defendant Nassar, Plaintiff Tarrant was a minor, approximately 14 years old.

432.   From approximately 2002 until 2008, Plaintiff Tarrant was a member of Defendant Twistars.

433.   From approximately 2005 until 2013, Plaintiff Tarrant was a member of Defendant USAG.

434.   On several occasions, Defendant Nassar would place his hands near Plaintiff Tarrant's vaginal area, then digitally penetrate Plaintiff's vagina and anus without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Tarrant's back pain.

435.   Defendant Nassar did not give prior notice or obtain consent for his conduct or explain the details of the procedure to Plaintiff Tarrant.

436. Plaintiff Tarrant did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

437. As a result of Defendant Nassar's abuse, Plaintiff Tarrant suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

438. Based on Defendant Nassar's representations and representations of other individuals affiliated with the MSU defendants, Plaintiff Tarrant believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women

### H. KAYLEE MCDOWELL

439. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

440. From approximately 2004 until 2014 Plaintiff McDowell was a competitive gymnast and member of Defendant Twistars and Defendant USAG.

441. After sustaining gymnastics-related injuries, Defendant Geddert referred to Plaintiff McDowell to Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

442. Beginning in 2006 or 2007, Plaintiff McDowell presented to Defendant Nassar for treatment of her gymnastics-related injuries.

443. At the time Plaintiff McDowell initiated her treatment with Defendant Nassar, Plaintiff McDowell was a minor, approximately 10 years old.

444. On several occasions, at appointments at his office at MSU Sports Medicine Clinic, Defendant Nassar sexually assaulted Plaintiff McDowell by placing his ungloved hands

near Plaintiff McDowell's vaginal area and by digitally penetrating Plaintiff McDowell's vagina and anus without out the use of medical gloves or lubricant under the guise that it was legitimate medical treatment for Plaintiff McDowell's gymnastics-related injuries.

445. Also, during the course of these treatments, Defendant Nassar would also rub Plaintiff McDowell's breasts under her clothing under the guise it was legitimate medical treatment for Plaintiff McDowell's gymnastics-related injuries.

446. Defendant Nassar did not give prior notice or obtain consent for his conduct or explain the details of the procedure to Plaintiff McDowell.

447. Plaintiff McDowell's mother would often be in the room for these treatments, but Defendant Nassar would position himself and Plaintiff McDowell in such a way as to prevent Plaintiff McDowell's mother from observing or ascertaining the actions he was taking.

448. In addition to the treatment at Defendant MSU's Sports Medicine Clinic, Defendant Nassar also performed similar assaultive treatments at his home, at gymnastic meets hosted by Defendant Twistars, and in the athletic training room at Holt High School in Holt, Michigan.

449. Defendant Nassar would engage in other inappropriate conduct with Plaintiff McDowell, contacting her on social media even after September of 2016.

450. Plaintiff McDowell did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

451. As a result of Defendant Nassar's abuse, Plaintiff McDowell suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and

depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

452. Based on Defendant Nassar's representations and representations of other individuals affiliated with the MSU defendants, Plaintiff McDowell believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

## I.    SAMANTHA DANIELS

453. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

454. Beginning in 2009, Plaintiff Daniels treated with Defendant Nassar at his office at Defendant MSU's Sports Medicine Clinic secondary to sustaining gymnastics-related back injuries.

455. From approximately 2002 until 2014 Plaintiff Daniels was a member of Defendant Twistars.

456. From approximately 2006 until 2014 Plaintiff Daniels was a member of Defendant USAG.

457. When Plaintiff Daniels began treating with Defendant Nassar, she was a minor, approximately 13 years old.

458. Plaintiff Daniels first treated with Defendant Nassar after gymnastics practice at Defendant Twistars' Dimondale location.

459. Plaintiff Daniels also treated with Defendant Nassar at his Defendant Nassar's home.

460. Defendant Nassar would "crack" Plaintiff Daniels's back and perform acupuncture.

461.  While Defendant Nassar was "adjusting" Plaintiff Daniels's back, he would place one hand on Plaintiff's groin and digitally penetrate Plaintiff Daniels's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Daniels's gymnastic-related back injuries.

462.  Defendant Nassar digitally penetrated Plaintiff Daniels's vagina on at least four separate occasions between 2009 and 2014.

463.  Defendant Nassar did not give prior notice or obtain consent for digital penetration from Plaintiff Daniels or from Plaintiff Daniels's parents.

464.  Plaintiff Daniels did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

465.  As a result of Defendant Nassar's abuse, Plaintiff Daniels suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

466.  Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Daniels believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

**J**.  **MORGAN VALLEY**

467.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

468.  In 2014, Plaintiff Valley presented to Defendant Nassar with complaints of back and hip pain.

469. From approximately 2008 until 2009, Plaintiff Jane 16 Doe was a member of Defendant Twistars.

470. From approximately 2003 until 2011, Plaintiff Valley was a member of Defendant USAG.

471. At the time of her "treatments" with Defendant Nassar, Plaintiff Valley was a minor, approximately 17 years old.

472. On several occasions, at appointments at Defendant MSU's Sports Medicine Clinic, Defendant Nassar digitally penetrated Plaintiff Valley's vagina under the guise of medical treatment.

473. Defendant Nassar did not give prior notice or obtain consent for his conduct or explain the details of the procedure to Plaintiff Valley.

474. Plaintiff Valley did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

475. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Valley believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

### K.   JESSICA ANN SMITH

476. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

477. Beginning in 2010, Plaintiff Smith initiated treatment with Defendant Nassar in 2012 at Defendant MSU's Sports Medicine Clinic secondary to sustaining an ankle injury while participating as a ballerina.

478. At the time Plaintiff Smith initiated treatment with Defendant Nassar she was a 17-year-old minor.

479. At appointments at his office at MSU Sports Medicine Clinic, Defendant Nassar digitally penetrated Plaintiff Smith's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Smith's ankle injury.

480. Other members of Plaintiff Smith's ballet troupe knew of this "treatment," and stated among themselves that Defendant Nassar was the first person to "finger fuck" them (the ballerinas).

481. Defendant Nassar did not give prior notice or gain obtain consent for the digital penetration from Plaintiff Smith prior to taking that action.

482. Plaintiff Smith did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

483. As a result of Defendant Nassar's abuse, Plaintiff Smith suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

484. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Smith believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

### L. **CHELSEA ZERFAS**

485. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

486.   Beginning in 2014 and throughout 2015, Plaintiff Zerfas was a competitive gymnast who treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and at Defendant Nassar's personal residence after sustaining a gymnastics-related stomach injury.

487.   From approximately 2007 until 2015 Plaintiff Zerfas was a member of Defendant Twistars.

488.   From approximately 2011 until 2015 Plaintiff Zerfas was a member of Defendant USAG.

489.   Plaintiff Zerfas began treating with Defendant Nassar in 2014 and 2015 at age 12 at his office at Defendant MSU's Sports Medicine Clinic.

490.   Plaintiff Zerfas was referred to Defendant Nassar through her affiliation with Defendant Twistars.

491.   On at least one occasion, Defendant Nassar made manual contact with Plaintiff Zerfas's external genitalia without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Zerfas's stomach injury.

492.   Defendant Nassar did not give prior notice or obtain consent for the contact with Plaintiff Jane B23's genitalia.

493.   Some or all of this conduct occurred after Michigan State University imposed a particular protocol for Defendant Nassar, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

494.   Plaintiff Zerfas did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

495. Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Zerfas, a minor, believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

496. Plaintiff Zerfas brings this action by her next friend Plaintiff Ron Zerfas.

**M.    JANE B25 DOE**

497. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

498. From approximately January to August of 2013, Plaintiff Jane B25 Doe treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic secondary to a gymnastics-related back injury.

499. At the time Plaintiff Jane B25 Doe initiated treatment with Defendant Nassar, she was 15 years old.

500. From approximately 2011 until 2015 Plaintiff Jane B25 Doe was a competitive gymnast and member of Defendant USAG.

501. On at least two occasions, Defendant Nassar digitally penetrated Plaintiff Jane B25 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B25 Doe's back injury.

502. Plaintiff Jane B25 Doe's mother accompanied her at every visit, however, Defendant Nassar positioned himself and Plaintiff Jane B25 Doe in such a way as to prevent Plaintiff Jane B25 Doe's mother from observing his conduct.

503. Defendant Nassar also did not adequately explain the "treatment" or its purpose to Plaintiff Jane B25 Doe.

504.    Defendant Nassar did not give prior notice or obtain prior consent prior to digitally penetrating Plaintiff Jane B25 Doe.

505.    Defendants Michigan State University and MSU Sports Medicine had received notice of Defendant Nassar's inappropriate conduct on multiple occasions dating back to at least 1997.

506.    In approximately September of 2016, Plaintiff Jane B25 Doe became aware of allegations of sexual abuse against Defendant Nassar.

507.    These actions were intentionally and fraudulently concealed and not documented in the medical record.

508.    Plaintiff Jane B25 Doe believed the conduct of Defendant Nassar constituted medical treatment and did not discover or become aware that said conduct breached the standard of care or practice or was otherwise unlawful or tortious until the allegations against Defendants Nassar and Michigan State University were recently made public.

509.    Plaintiff Jane B25 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

510.    As a result of Defendant Nassar's abuse, Plaintiff Jane B25 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

511.    Based on Defendant Nassar's representations and the representations of other individuals affiliated with the MSU defendants, Plaintiff Jane B25 Doe believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

### N. **LYNDSY GAMET**

512.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

513.  In 1996, Plaintiff Gamet was a competitive gymnast at Great Lakes Gymnastics who was referred to Defendant Nassar at Defendant MSU's Sports Medicine Clinic after sustaining a gymnastics-related lower back injury.

514.  When Plaintiff Gamet began treating Defendant Nassar she was about 12 years old.

515.  Plaintiff Gamet was a gymnast at Great Lakes Gymnastics and, later, at Defendant Twistars from 1996 until 1997.

516.  From approximately 1994 until 2002, Plaintiff Gamet received treatment from Defendant Nassar at Defendant MSU's Sports Medicine Clinic and at Defendant Nassar's personal residence.

517.  From approximately 1994 until 2000, Plaintiff Gamet was a member of Defendant USAG.

518.  On several occasions between 1994 and 2002, during the course of her treatment with Defendant Nassar, Defendant Nassar would massage Plaintiff Gamet's vaginal area prior to digitally penetrating Plaintiff Gamet's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Gamet's back injury.

519.  On one occasion, while receiving a "treatment" at Defendant Nassar's house, Plaintiff Gamet was told by Defendant Nassar that he (Nassar) had explained the "treatment" to Plaintiff Gamet's mother and she (Plaintiff's mother) approved of the "treatment."

520. Plaintiff Gamet continued to see Nassar until 2002 and received treatment at the Jennison Field House, Defendant Nassar's residence, MSU Sports Medicine Clinic, and at Defendant Twistars's facility in Dimondale, Michigan.

521. Plaintiff Gamet did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

522. As a result of Defendant Nassar's abuse, Plaintiff Gamer suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

523. Based on Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Gamet believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

524. Plaintiff Gamet is married to Plaintiff Andrew Gamet.

### O.    ALEXIS ALVARADO

525. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

526. Beginning in 2011, Plaintiff Alvarado began treating with Defendant Nassar at Defendant MSU's Sports Medicine Clinic after sustaining a gymnastics-related back injury.

527. When Plaintiff Alvarado began treating with Defendant Nassar, she was a 13-year-old minor.

528. From approximately 2004 until 2013, Plaintiff Alvarado was a member of Defendant USAG.

529. Plaintiff Alvarado was referred to Defendant Nassar by her family physician and physical therapist.

530. At an initial evaluation, Defendant Nassar "cracked" Plaintiff Alvarado's back and said she may have a fracture. Defendant Nassar ordered x-rays and told Plaintiff that they showed that she had a stress fracture.

531. Defendant Nassar also told Plaintiff Alvarado that her "butt muscles didn't work."

532. Beginning in 2011, Defendant Nassar made unconsented contact with Plaintiff Alvarado's vagina and digitally penetrated Plaintiff Alvarado's vagina without the use of medical gloves or lubricant under the guise that it was legitimate medical treatment for Plaintiff Alvarado's back injury.

533. Before Defendant Nassar penetrated Plaintiff Alvarado's vagina for the first time, he told her there was another type of treatment. He did not explain what he was about to do, but once he penetrated her, he asked her if he was hurting her and if it was ok. This is what he asked every time.

534. Sometimes Plaintiff Alvarado would say the "treatment" was ok, and sometimes she would say her back was better so Defendant Nassar would stop.

535. Plaintiff Alvarado had cupping treatments about 3-4 times total while a patient of Defendant Nassar. Plaintiff Alvarado was assaulted on the dates she had cupping procedures.

536. When Defendant Nassar treated Plaintiff Alvarado, the total treatment time was about 20 minutes and the time he spent penetrating her and touching her breasts was about 10 - 15 minutes.

537. Many times, Defendant Nassar would have Plaintiff Alvarado take her clothes all off and he would put a towel over her buttocks. Sometimes no towel was placed over her butt and she would be completely exposed.

538. Defendant Nassar did not assault Plaintiff Alvarado when Plaintiff Alvarado's father or a friend was in the room. However, sometimes Defendant Nassar assaulted Plaintiff Alvarado when her physical therapist was in the room, although Defendant Nassar would position himself so the therapist could not see what was going on.

539. On a few occasions there was a medical student with Defendant Nassar, but Defendant Nassar would always tell the student to go check on another patient, so the student would not be in the room when he was treating Plaintiff Alvarado.

540. Defendant Nassar gave Plaintiff Alvarado two (2) gifts that she can remember; one was a picture of some of the 2012 Olympians that was autographed, and the other was a pin from one of the Olympics.

541. Plaintiff Alvarado did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

542. As a result of Defendant Nassar's abuse, Plaintiff Alvarado suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

543. Based on Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Alvarado believed the "treatment" she received to be legitimate medical procedures until reports surfaced in or about September 2016 of similar allegations made by other women.

P.    **JANE B34 DOE**

544.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

545.    Plaintiff Jane B34 Doe was a member of Stars and Stripes Gymnastics and US Junior Gymnastics.

546.    From approximately 2002 until 2014 Plaintiff Jane B34 Doe was a member of Defendant USAG.

547.    From the Fall 2009 until Spring of 2014, while Plaintiff Jane B34 Doe was a minor until she was approximately 19 years of age, Plaintiff Jane B34 Doe suffered a back fracture and IT band issues and was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

548.    On numerous occasions from 2009 until 2014, Defendant Nassar digitally penetrated Plaintiff Jane B34 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment to treat her IT-band and other gymnastics-related injuries.

549.    Defendant Nassar represented to Plaintiff Jane B34 Doe that there existed "pressure points" in her vagina and that the "treatment" she was receiving was the same treatment Olympic gymnasts received for similar injuries.

550.    Defendant Nassar instructed Plaintiff Jane B34 Doe to undress but to keep on her bra prior to being digitally penetrated.

551.    On approximately two separate occasions, Plaintiff Jane B34 Doe's parents were in the room and Defendant Nassar would positing himself and Plaintiff Jane B34 Doe so they could not ascertain the actions Defendant Nassar was taking.

552.  Some or all of this conduct occurred after Michigan State University imposed a particular protocol for Defendant Nassar, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

553.  Plaintiff Jane B34 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

554.  As a result of Defendant Nassar's abuse, Plaintiff Jane B34 Doe suffers from severe mental and emotional symptoms including, but not limited to increased anxiety and post-traumatic stress disorder with physical manifestations.

555.  Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B34 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

Q.  **JANE B35 DOE**

556.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

557.  From approximately 2002 until 2014, Plaintiff Jane B35 Doe was a member of Defendant USAG.

558.  From 2012 until 2016, Plaintiff Jane B35 Doe was a member of Defendant Twistars.

559.  Plaintiff Jane B35 Doe suffered a hip injury and was referred to Defendant Nassar for treatment.

560. Plaintiff Jane B35 Doe treated with Defendant Nassar approximately 60 times between 2012 and 2016.

561. From 2012 until 2016, Plaintiff Jane B35 Doe treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and at Defendant Nassar's personal residence

562. Defendant Nassar represented to Plaintiff Jane B35 Doe that he was performing a "pelvic manipulation"

563. On numerous occasions during Plaintiff Jane B35 Doe's appointments from 2012 until 2016, Defendant Nassar digitally penetrated Plaintiff Jane B35 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for her hip injury.

564. From approximately 2012 to 2016 Defendant Nassar digitally penetrated Plaintiff Jane B35 Doe under the guise of medical treatment approximately 8 to 16 times at Defendant MSU's Sports Medicine Clinic and/or Defendant Nassar's personal residence.

565. Plaintiff Jane B35 Doe's parents were present during these "treatments" however, Defendant Nassar would position himself and Plaintiff Jane B35 Doe as to her parents could not observe or ascertain the actions he was taking.

566. Some or all of this conduct occurred after Michigan State University imposed a particular protocol for Defendant Nassar, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

567. Defendant Nassar did not give prior notice or obtain consent for the digital penetration of Plaintiff Jane B35 Doe.

568.     Plaintiff Jane B35 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

569.     As a result of Defendant Nassar's abuse, Plaintiff Jane B35 Doe suffers from severe mental and emotional symptoms including, but not limited to increased anxiety and post-traumatic stress disorder with physical manifestations.

570.     Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B35 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

571.     Plaintiff Jane B35 Doe brings this action by her next friend Jane B35NF Doe.

### R.      TAYLOR LIVINGSTON

572.     Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

573.     From approximately 2009 until 2012 Plaintiff Livingston treated with Defendant Nassar at MSU Sports Medicine Clinic, Defendant Twistars facility, and at Defendant Nassar's personal residence after sustaining a gymnastics-related back, calf and ankle injuries.

574.     When Plaintiff Livingston began treating with Defendant Nassar she was approximately 13 years old.

575.     From approximately 2011 until 2014 Plaintiff Livingston was a member of Defendant Twistars.

576.     From approximately 1999 until 2014 Plaintiff Livingston was a member of Defendant USAG.

577.   Plaintiff Livingston began treating with Defendant Nassar for gymnastics related back, calf and ankle injury when she was approximately 13 years old.

578.   During at least one visit, Defendant Nassar digitally penetrated Livingston's vagina without the use of gloves or lubricant.  In addition, Defendant Nassar would rub close to Plaintiff Livingston's genital region and make inappropriate and unconsented contact with her buttocks.  Defendant Nassar undertook these actions under the guise it was legitimate medical treatment for Plaintiff Livingston's back, calf, and ankle injuries.

579.   During these "treatments", Defendant Nassar would make inappropriate—often sexually charged—commentary directed towards Plaintiff Livingston.

580.   Defendant Nassar did not give prior notice or obtain consent to digitally penetrate Plaintiff Livingston.

581.   Plaintiff Livingston did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

582.   Plaintiff Livingston was assaulted approximately 20-25 times during the course of her appointments with Defendant Nassar; a majority of the abuse occurred at Defendant MSU's Sports Medicine Clinic, with others occurring at Defendant Nassar's personal residence.

583.   As a result of Defendant Nassar's abuse, Plaintiff Livingston suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, post-traumatic stress disorder with physical manifestations.

584.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Livingston believed the "treatment" she received to be legitimate

medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

### S.    KATELYNNE HALL

585.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

586.    Beginning in 2007, Plaintiff Hall was a competitive gymnast who treated with Defendant Nassar for gymnastics-related injuries to her cervical and thoracic back until approximately 2016 at Defendant MSU's Sports Medicine Clinic.

587.    From approximately 2007 until 2016, Plaintiff Hall was a member of Defendant USAG.

588.    Defendant Nassar would also provide treatment to Plaintiff Hall at Defendant USAG affiliated gymnasiums and at certain gymnastics meets hosted by Defendant MSU.

589.    Starting in approximately 2012—when Plaintiff Hall, Defendant Nassar began treating Plaintiff Hall for cervical and thoracic back injuries.

590.    At approximately 5 – 10 separate occasions, Defendant Nassar digitally penetrated Hall's vagina the guise it was legitimate medical treatment to treat Plaintiff Hall's gymnastic-related back injuries.

591.    During the penetration, Defendant Nassar would not wear medical gloves, but would occasionally use lubricant.

592.    During the above-described action, Defendant Nassar would also make contact with Plaintiff Hall's buttocks.

593.    At times, prior to the penetration, Defendant Nassar would instruct other healthcare professionals and/or MSU Medical School students to leave the room prior to penetrating Hall.

594.  At times, in between treatment sessions, Defendant Nassar would initiate contact with Hall via social media.

595.  Some or all of this conduct occurred after Michigan State University imposed a particular protocol for Defendant Nassar, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

596.  Defendant Nassar did not give prior notice or obtain consent to digitally penetrate Plaintiff Hall.

597.  Plaintiff Hall did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

598.  As a result of Defendant Nassar's abuse, Plaintiff Hall suffers from severe mental and emotional symptoms including, but not limited to increased anxiety and post-traumatic stress disorder with physical manifestations.

599.  Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Hall believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**T.      JANE B42 DOE**

600.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

601.  Plaintiff Jane B42 Doe treated with Defendant Nassar for gymnastics related back and hip injuries from approximately 1994 until approximately 2000.

602.    Plaintiff Jane B42 Doe was between ages 11 and 17 when she treated with Defendant
        Nassar.

603.    Plaintiff Jane B42 Doe treated with Defendant Nassar at his office at Defendant MSU's
        Sports Medicine Clinic, Defendant Twistars facility, and at MSU and/or Defendant
        Twistars gymnastic meets/competitions.

604.    At her appointments, Defendant Nassar instructed Plaintiff Jane B42 Doe lie face down
        on the examination table.  Defendant Nassar then proceeded to pull Plaintiff Jane B42
        Doe's legs apart, massaged her inner thighs and buttocks, and then digitally penetrated
        Plaintiff Jane B42 Doe's vagina for approximately twenty (20) minutes.

605.    After this process, Defendant Nassar would have Plaintiff Jane B42 Doe stand up from
        the table, and if she did not "look right" he would penetrate her again; these treatments
        continued throughout her time seeing Defendant Nassar under the guise of medical
        treatment for her back and hip issues.

606.    Defendant Nassar did not was his hands prior to performing this procedure nor did he
        wear medical gloves or use lubricant while performing this act.

607.    When Plaintiff Jane B42 Doe was approximately 14 years old, she saw Defendant Nassar
        after sustaining a tailbone injury.

608.    As treatment for said tailbone injury, Defendant Nassar would digitally penetrate Plaintiff
        Jane B42 Doe's vagina and anus under the guise it was legitimate medical treatment for
        Plaintiff Jane B42 Doe's tailbone injury.  During this process, Defendant Nassar would
        switch between vaginal and anal digital penetration without washing his hands or
        utilizing any type of medical glove or lubricant.

609.    When Defendant Nassar would perform these actions upon Plaintiff Jane B42 Doe, he was often alone in a room with her.  Occasionally there was another medical professional in the room (e.g. medical student, resident physician, etc.).  When other individuals and/or medical professionals were in the room during the "treatments", Defendant Nassar would either stop the penetration, or would still penetrate under a towel or sheet as to conceal this action from the other medical professional in the room at the time.

610.    Plaintiff Jane B42 Doe's parents and/or any other legal guardian and/or adult was ever present in the room while Defendant Nassar was penetrating Plaintiff Jane B42 Doe.

611.    Defendant Nassar performed these actions on Plaintiff Jane B42 Doe over a period of approximately seven (7) years at the aforesaid facilities.

612.    Defendant Nassar assaulted Plaintiff Jane B42 Doe on approximately three-hundred (300) separate occasions at Defendant Twistars facility from approximately 1994 until 2001.

613.    Defendant Nassar assaulted Plaintiff Jane B42 Doe on approximately thirty (30) separate occasions at Defendant MSU's Sports Medicine Clinic from approximately 1994 until 2001.

614.    Defendant Nassar assaulted Plaintiff Jane B42 Doe on approximately twenty (20) separate occasions at either Defendant MSU or Defendant Twistars hosted gymnastic meets/competitions.

615.    Defendant Nassar did not give prior notice or obtain consent to digitally penetrate Plaintiff Jane B42 Doe's vagina or anus.

616.    Plaintiff Jane B42 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

84

617.   As a result of Defendant Nassar's abuse, Plaintiff Jane B42 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, post-traumatic stress disorder with physical manifestations including, but not limited to substance abuse issues.

618.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B42 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

   **U.      JANE B43 DOE**

619.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

620.   In approximately 1989-1990, when Plaintiff Jane B43 Doe was a member of Great Lakes Gymnastics, she and began treating with Defendant Nassar after developing a gymnastics-related back injury.

621.   From approximately 1987 until 1999, Plaintiff Jane B43 Doe was a member of Defendant Twistars and/or its former location as Great Lakes Gymnastics.

622.   From approximately 1993 until 1996, Plaintiff Jane B43 Doe was a member of Defendant USAG.

623.   Prior to the actions that are the subject matter of this action, Plaintiff Jane B43 Doe treated with Defendant Nassar at Great Lakes Gymnastics for shin splints and ankle problems where non-assaultive treatment was rendered.

624.   Plaintiff Jane B43 Doe was approximately 9 to 10 years of age when she began treating with Nassar at MSU Sports Medicine Clinic for hip and back injuries.

625. Plaintiff Jane B43 Doe also received treatment from Defendant Nassar at his personal residence and/or apartment.

626. On several separate occasions, Defendant Nassar digitally penetrated Plaintiff Jane B43 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for her gymnastics-related hip and back injuries.

627. Defendant Nassar would represent to Plaintiff Jane B43 Doe that by utilizing this technique he was massaging Plaintiff Jane B43 Doe's muscles to help loosen the affected area.

628. Defendant Nassar did not give prior notice or obtain consent to digitally penetrate Plaintiff Jane B43 Doe.

629. Plaintiff Jane B43 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

630. As a result of Defendant Nassar's abuse, Plaintiff Jane B43 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, post-traumatic stress disorder with physical manifestations, and fertility issues and/or complications

631. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B43 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

## V.     JANE B44 DOE

632. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

633. Beginning in 1994, Plaintiff Jane B44 Doe was a gymnast first at Great Lakes Gymnastics and then at Defendant Twistars facility; Plaintiff Jane B44 Doe maintained membership with Defendant Twistars until 2000.

634. From 1994 until 2000, Plaintiff Jane B44 Doe was between the ages of 12 and 18 years.

635. Plaintiff Jane B44 Doe began receiving treatment from Defendant Nassar in 1994 while a member of Great Lakes Gymnastics—where Defendant Nassar was a trainer.  During this time frame she treated with Defendant Nassar but was not assaulted.

636. Plaintiff Jane B44 Doe continued to train for gymnastics at Defendant Twistars' facility after Great Lakes Gymnastics.

637. During the same timeframe, Plaintiff Jane B44 Doe was also a member of Defendant USAG.

638. Between 1997 and 1998, when Defendant Jane B44 Doe was between 15 and 16 years old, Plaintiff Jane B44 Doe suffered gymnastics related back injuries and saw Defendant Nassar at Defendant MSU's Sports Medicine Clinic for treatment.

639. On at least 3 occasions, at appointments for her back injuries, Defendant Nassar digitally penetrated Plaintiff Jane B44 Doe's vagina without utilizing medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B44 Doe's back injuries.

640. On at least one occasion during this treatment, Plaintiff Jane B44 Doe began crying while Defendant Nassar digitally penetrated her vagina—Defendant Nassar did not cease the digital penetration during this occasion.

641. On at least one occasion during an appointment a Defendant Nassar assaulted Plaintiff Jane B44 Doe, Plaintiff Jane B44 Doe was actively menstruating.   Nonetheless,

87

Defendant Nassar proceeded to digitally penetrate Plaintiff Jane B44 Doe's vagina without removal of her tampon.

642. Plaintiff Jane B44 Doe's mother was present during these appointments, however, Defendant Nassar would position himself and Plaintiff Jane B44 Doe so that her mother could not observe or ascertain the actions he was taking.

643. Plaintiff Jane B44 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

644. As a result of Defendant Nassar's abuse, Plaintiff Jane B44 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, post-traumatic stress disorder with physical manifestations, and chronic back issues based on failure to treat secondary to Defendant Nassar's assaults.

645. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B44 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

### W. JANE B45 DOE

646. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

647. In approximately 2002, Plaintiff Jane B45 Doe began treating with Defendant Nassar at Defendant MSU's Sports Medicine Clinic for shin splints sustained while performing rhythmic gymnastics;

648. Plaintiff Jane B45 Doe was approximately 10 years old when she began treating with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

649. In approximately 2006, when Plaintiff Jane B45 Doe was approximately 16 years old, she sustained gymnastics-related groin and back injuries for which she was referred to treatment with Defendant Nassar.

650. At appointments to treat Plaintiff Jane B45 Doe's groin and back injuries, Defendant Nassar would provide manual manipulation to Plaintiff Jane B45 Doe's thighs, and digitally penetrate Plaintiff Jane B45 Doe's vagina and anus without the use of medical gloves or lubricant.

651. Defendant Nassar performed the above-provided action under the guise it was legitimate medical treatment for Plaintiff Jane B45 Doe's groin and back injuries.

652. Plaintiff Jane B45 Doe's grandmother was present during these appointments, however, Defendant Nassar would position himself and Plaintiff Jane B45 Doe so that her grandmother could not observe or ascertain the actions he was taking.

653. On approximately six other occasions, Defendant Nassar engaged Plaintiff Jane B45 Doe with inappropriate bodily contact with Plaintiff Jane B45's lower extremities, including her genitalia area, without penetration.

654. At the time of the above-stated incidents, Plaintiff Jane B45 Doe was a member of Defendant USAG.

655. Plaintiff Jane B45 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

656. As a result of Defendant Nassar's abuse, Plaintiff Jane B45 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, and post-traumatic stress disorder with physical manifestations.

657. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B45 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

## X.     JANE B46 DOE

658. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

659. From approximately 2004 until 2015 Plaintiff Jane B46 Doe was a competitive gymnast and member of Defendant USAG.

660. In approximately 2011, when Plaintiff Jane B46 Doe was approximately 13 years old, Plaintiff Jane B46 Doe began treating with Defendant Nassar on Defendant MSU's Sports Medicine Clinic after suffering multiple gymnastics-related stress fractures in her back.

661. On three separate occasions, Defendant Nassar digitally penetrated Plaintiff Jane B46 Doe's vagina without utilizing gloves or any type of lubricant; Defendant Nassar referred to this treatment as "trigger pointing" the area.

662. On each occasion, Defendant Nassar's digital penetration of Plaintiff Jane B46 Doe's vagina would last approximately 10 minutes.

663. Defendant Nassar digitally penetrated Plaintiff Jane B46 Doe's vagina under the guise it was legitimate medical treatment for Plaintiff Jane B46 Doe's back injuries.

664. At the time of the above-mentioned abuse, Plaintiff Jane B46 Doe was a member of Defendant USAG via Legacy Elite Gymnastics Center in Chicago, Illinois.

665.   At every appointment with Defendant Nassar, either Plaintiff Jane B46 Doe's mother or Plaintiff Jane B46 Doe's father were present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B46 Doe so that her mother or father could not observe or ascertain the actions he was taking.

666.   Plaintiff Jane B46 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

667.   As a result of Defendant Nassar's abuse, Plaintiff Jane B46 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations requiring counseling.

668.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B46 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

## Y.    JANE B47 DOE

669.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

670.   From approximately 2012 until 2016 Plaintiff Jane B47 Doe treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic after sustaining gymnastics related injuries to her tailbone and ribs.

671.   Defendant Nassar diagnosed Plaintiff Jane B47 Doe with a bent tailbone/coccyx and rib injury.

672.   At all times Plaintiff Jane B47 Doe treated with Defendant Nassar, she was a member of Defendant USAG; Overall Plaintiff Jane B47 Doe was a member of Defendant USAG from approximately 2006 until 2014.

673.   At the time Plaintiff Jane B47 Doe began treatment with Defendant Nassar, she was a minor, approximately 12 to 16 years of age.

674.   On at least five separate occasions, Defendant Nassar digitally penetrated Plaintiff Jane B47 Doe's vagina and anus without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B47 Doe's tailbone and rib injuries.

675.   At all of Plaintiff Jane B47 Doe's appointments with Defendant Nassar, Plaintiff Jane B47 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B47 Doe so that her mother could not observe or ascertain the actions he was taking.

676.   Defendant Nassar did not give prior notice or obtain prior consent to digitally penetrate Plaintiff Jane B47 Doe.

677.   Some or all of this conduct occurred after MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

678.   Plaintiff Jane B47 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

679.   As a result of Defendant Nassar's abuse, Plaintiff Jane B47 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety

and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

680. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B47 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

681. Plaintiff Jane B47 Doe brings this action by her next friend Plaintiff Jane B47NF Doe.

**Z.   JANE B48 DOE**

682. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

683. From approximately 1991 until 2001, Plaintiff Jane B48 Doe treated with Defendant Nassar for gymnastics-related injuries first at Great Lakes Gymnastics, then at Defendant Twistars' facility and Defendant MSU's Sports Medicine Clinic.

684. During the aforesaid time period, Plaintiff Jane B48 Doe was a member of Defendant Twistars.

685. When Plaintiff Jane B48 Doe began treating with Defendant Nassar, she was a minor, approximately 7 to 18 years old.

686. Beginning in 1996, when Plaintiff Jane B48 Doe was approximately 13 years old, she began to treat with Defendant Nassar in the training room at Defendant Twistars' facility for a gymnastics-related hip injury.

687. On several separate occasions from 1996 until 2001 Defendant Nassar touched the outside of and digitally penetrated Plaintiff Jane B48 Doe's vagina without the use of

medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B48 Doe's hip injuries.

688.    The majority of the assaultive treatment detailed above occurred in the training room at Defendant Twistars' facility, but Plaintiff Jane B48 Doe was also abused at Defendant MSU's Sports Medicine Clinic during the same time-frame.

689.    Defendant Nassar did not utilize medical gloves or any form of lubricant prior to digitally penetrating Plaintiff Jane B48 Doe.

690.    Defendant Nassar assaulted Plaintiff Jane B48 Doe in the course of these medical "treatments" approximately hundreds of times during the above-mentioned timeframe.

691.    For all appointments that occurred at Defendant MSU's Sports Medicine Clinic with Defendant Nassar, Plaintiff Jane B48 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B48 Doe so that her mother could not observe or ascertain the actions he was taking.

692.    Defendant Nassar did not give prior notice or obtain consent to digitally penetrate Plaintiff Jane B48 Doe.

693.    Plaintiff Jane B48 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

694.    As a result of Defendant Nassar's abuse, Plaintiff Jane B48 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations requiring therapy, and intimacy issues.

695.    Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B48 Doe believed the "treatment" she received to be legitimate

94

medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

696.    Plaintiff Jane B48 Doe is married to Plaintiff John B48 Doe.

## AA.    CHRISTINA BARBA

697.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

698.    From approximately 1987 until 2016, Plaintiff Barba treated with Defendant Nassar for gymnastic related injuries at Defendant MSU's Sports Medicine Clinic.

699.    Within the timeframe of 1987 until 2016, Plaintiff Barba participated in what were portrayed to her by Defendant Nassar as medical experiments at Defendant Nassar's apartment.

700.    Beginning as early as 1987, Plaintiff Barba was a member Great Lakes Gymnastics, which was a precursor to Defendant Twistars' facility in Dimondale, Michigan.

701.    From approximately 1985 until 1994, Plaintiff Barba was a member of Defendant USAG.

702.    While a member of Great Lakes Gymnastics, Plaintiff Barba was introduced to, and received periodic treatment from, Defendant Nassar.

703.    On at least two separate occasions between 1992 and 1994, Defendant Nassar asked if Plaintiff Barba, who was approximately 14 to 16 years of age, to come to his apartment to assist in a medical experiment related to flexibility.

704.    Upon arrival at Defendant Nassar's apartment, Defendant Nassar instructed Plaintiff Barba to undress and lie in a bathtub filled with water for a period of time.

705.    Next, Defendant Nassar instructed Plaintiff Barba to lie prone on a table upon which Defendant Nassar began performing physical manipulation techniques to her lower

extremities and specifically made contact with Plaintiff Barba's buttocks and pelvis. Toward the end of this treatment, Defendant Nassar digitally penetrated Plaintiff Barba's vagina without the use of gloves or lubricant.

706. While Plaintiff Barba was in high school and college, she began to treat with Defendant Nassar for gymnastics related back injuries at Defendant MSU's Sports Medicine Clinic.

707. On at least one occasion, while Defendant Nassar was providing treatment to Plaintiff Barba's lower extremities, Defendant Nassar digitally penetrated Plaintiff Barba's vagina without the use of medical gloves or lubricant under the guise that it was legitimate medical treatment for Plaintiff Barba's back injuries.

708. Plaintiff Barba did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

709. As a result of Defendant Nassar's abuse, Plaintiff Barba suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations requiring therapy.

710. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Barba believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**BB.** **JANE B51 DOE**

711. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

712. Defendant Jane B51 Doe is a minor and current member of Defendant USAG.

713. In 2012, Plaintiff Jane B51 Doe's gymnastics coach referred Plaintiff Jane B51 Doe to Defendant Nasar at Defendant MSU's Sports Medicine Clinic after sustaining a gymnastics-related lower back injury.

714. Plaintiff Jane B51 Doe continued to treat with Defendant Nassar until 2016; approximately 12 times total.

715. On at least one occasion in 2016, Defendant Nassar digitally penetrated Plaintiff Jane B51 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B51 Doe's lower back injury.

716. Defendant Nassar did not give notice or obtain prior consent from either Plaintiff Jane B51 Doe or Plaintiff Jane B51 Doe's parents prior to the digital penetration.

717. Some or all of this conduct occurred after MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure

718. Plaintiff Jane B51 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

719. As a result of Defendant Nassar's abuse, Plaintiff Jane B51 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

720. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B51 Doe believed the "treatment" she received to be legitimate

medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

721. Plaintiff Jane B51 Doe brings this action by her next friend John B51NF Doe.

**CC.**   **EMILY MEINKE**

722. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

723. From approximately 1992 until 2001, Plaintiff Meinke treated with Defendant Nassar for gymnastics-related injuries at Defendant Twistars facility/training room, Defendant MSU's Sports Medicine Clinic, Jennison Fieldhouse, Defendant Nassar's home, and Plaintiff Meinke's home.

724. From 1992 until 2001, Plaintiff Meinke was a competitive gymnast and member of Defendant Twistars and Defendant USAG.

725. Beginning in 1992, Plaintiff Meinke began treating with Defendant Nassar at Defendant MSU's Sports Medicine Clinic for treatment on IT band and back injuries.

726. During these appointments, Defendant Nassar massage Plaintiff Meinke's back and IT band. Defendant Nassar would then digitally penetrate Plaintiff Meinke's vagina and anus without the use of medical gloves or lubricant under the guise that it was legitimate medical treatment for Plaintiff Meinke's IT band and back injuries.

727. At one point between 1992 and 2001, Plaintiff Meinke sustained a sternum injury.  As treatment, Defendant Nassar inappropriately and without consent touched Plaintiff Meinke's breasts under the guise it was legitimate medical treatment for Plaintiff Meinke's sternum injury.

728.   Defendant Nassar perpetuated similar treatments over the course of the above timeframe at Defendant Twistars Facility, Defendant MSU's Sports Medicine Clinic, and Defendant Nassar's home.

729.   On at least one occasion, Defendant Nassar treated Plaintiff Meinke at his personal residence.  At this appointment, Defendant Nassar digitally penetrated Plaintiff Meinke's vagina and anus without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Meinke's injuries.   Approximately half-way through the procedure, Defendant Nassar said he had to go put on looser pants in his bedroom which was in close proximity to the living room.  At this time, Plaintiff Meinke observed Defendant Nassar remove his pants and observed the fact that Defendant Nassar was sexually aroused.

730.   In total, Plaintiff Meinke was assaulted approximately 25 to 50 times at Defendant Twistars facility from 1992 to 2001.

731.   In total, Plaintiff Meinke was assaulted by Defendant Nassar approximately 100 to 250 times at Defendant MSU's Sports Medicine Clinic from 1992 until 2001.

732.   In total, Plaintiff Meinke was assaulted at Defendant Nassar's home on one occasion from 1992 until 2001.

733.   Plaintiff Meinke did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

734.   As a result of Defendant Nassar's abuse, Plaintiff Meinke suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, post-traumatic stress

disorder with physical manifestations requiring therapy, endometriosis, and fertility issues.

735. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Meinke believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

736. Plaintiff Meinke is married to Plaintiff Jacob Parker.

**DD.**   **MORGAN MARGRAVES**

737. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

738. From approximately 2001 until 2002, Plaintiff Morgan Margraves was a member of Defendant Twistars.

739. Beginning in 2006, Plaintiff Morgan Margraves began receiving medical treatment from Defendant Nassar at Defendant MSU's Sports Medicine Clinic secondary to sustaining lower body injuries and abdominal issues.

740. When Plaintiff Morgan Margraves began treating with Defendant Nassar, she was between 15 and 16 years old.

741. Defendant Nassar would began the appointments with manual manipulation on Plaintiff Morgan Margraves lower body.   Then, Defendant Nassar would digitally penetrate Plaintiff Morgan Margraves vagina with approximately two to three fingers without the use of medical gloves or lubricant.

742. Defendant Nassar performed these procedures under the guise it was legitimate medical treatment for Plaintiff Morgan Margraves abdominal issues.

743. From approximately 2005 until 2007, Plaintiff Morgan Margraves was assaulted by Defendant Nassar on approximately 5-10 separate occasions at the Defendant MSU's Sports Medicine Clinic.

744. In approximately 2010, Plaintiff Morgan Margraves sustained back and rib injuries and again was seen by Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

745. At the time of the 2010 injury, Plaintiff Morgan Margraves was approximately 20 years old and a student at Defendant MSU.

746. At the initial visit for the upper-back and rib injury, Defendant Nassar provided conventional manual manipulation and chiropractic-type treatment.

747. On at least two occasions after the initial consultation, under the guise of treating her upper-back neck pain, Defendant Nassar digitally penetrated Plaintiff Morgan Margraves vagina without the use of medical gloves or lubricant.

748. Plaintiff Morgan Margraves did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

749. As a result of Defendant Nassar's abuse, Plaintiff Morgan Margraves suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations requiring therapy.

750. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Morgan Margraves believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**EE.   JANE B55 DOE**

751.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

752.   From approximately 2013 until 2016 Plaintiff Jane B55 Doe began treating with Defendant Nassar at Defendant MSU's Sports Medicine Clinic secondary to figure skating-related injuries to her lower back, knee, and groin region.

753.   Plaintiff Jane B55 Doe was between the ages of 17 and 20 when she treated with Defendant Nassar.

754.   Plaintiff Jane B55 Doe attended appointments for her injuries at both Defendant Nassar's home as well as at Defendant MSU's Sports Medicine Clinic.

755.   While providing treatment at the above-listed locations, Defendant Nassar would digitally penetrate Plaintiff Jane B55 Doe's vagina without utilizing medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B55 Doe's back, knee, and groin injuries.

756.   Plaintiff Jane B55 Doe was assaulted by Defendant Nassar approximately 10-20 times during medical appointments from 2013 to 2016.

757.   Plaintiff Jane B55 Doe was assaulted by Defendant Nassar approximately 5 times at Defendant MSU's Sports Medicine Clinic during the aforesaid timeframe.

758.   On at least one occasion, Plaintiff Jane B55 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B55 Doe so that her mother could not observe or ascertain the actions he was taking.

759.   Some or all of this conduct occurred after MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2)

procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure

760.   Plaintiff Jane B55 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

761.   As a result of Defendant Nassar's abuse, Plaintiff Jane B55 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

762.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B55 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

FF.   **JANE B57 DOE**

763.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

764.   From approximately 2006 until 2013 Plaintiff Jane B57 Doe was a competitive gymnast and member of Defendant Twistars.

765.   While a gymnast at Defendant Twistars, in approximately 2010, when Plaintiff Jane B57 Doe was a minor, Plaintiff Jane B57 Doe was referred to Defendant Nassar by staff from Defendant Twistars after sustaining a gymnastics-related back and knee injuries.

766.   From approximately 2010 until 2016, Plaintiff Jane B57 Doe treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and in the basement of Defendant Nassar's home.

767. Beginning in 2010, Defendant Nassar digitally penetrated Plaintiff Jane B57 Doe's vagina and anus without the use of medical gloves or lubricant under the guise he was providing legitimate medical treatment for Plaintiff Jane B57 Doe's back and knee injuries; these types of treatments continued until approximately 2016.

768. In total, Defendant Nassar assaulted Plaintiff Jane B57 Doe on approximately 5 separate occasions during appointments at Defendant MSU's Sports Medicine Clinic from 2010 until 2016.

769. In total, Defendant Nassar assaulted Plaintiff Jane B57 Doe on approximately 15-20 separate occasions in the basement of Defendant Nassar's home from 2010 until 2016.

770. Some or all of this conduct occurred after MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

771. Plaintiff Jane B57 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

772. As a result of Defendant Nassar's abuse, Plaintiff Jane B57 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

773. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B57 Doe believed the "treatment" she received to be

legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

774. Plaintiff Jane B57 Doe brings this action by her next friend, Plaintiff Jane B57NF Doe.

**GG.   JANE B60 DOE**

775. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

776.  From approximately 2012 until 2015, Plaintiff Jane B60 Doe was referred to Defendant Nassar at Defendant MSU's Sports Medicine Clinic for gymnastics related back injuries.

777. From approximately 2005 until 2017 Plaintiff Jane B60 Doe was a member of Defendant USAG.

778. At the onset of the treatment, Defendant Nassar took several measures to gain both the trust of Plaintiff Jane B60 Doe and her father including, but not limited to, giving Plaintiff Jane B60 Doe gifts signed by Olympic gymnasts Defendant Nassar knew Plaintiff Jane B60 Doe idolized.

779. During Jane B60 Doe's medical appointments, Defendant Nassar manipulated Plaintiff Jane B60 Doe's lower extremities, and then began—with unwashed and ungloved hands—making contact with the outside of Plaintiff Jane B60 Doe's vagina.  Defendant Nassar digitally penetrated Plaintiff Jane B60's vagina without the use of medical gloves or lubricant.  Defendant Nassar took these actions under the guise that it was legitimate medical treatment for Plaintiff Jane B60 Doe's back injuries.

780. Defendant Nassar assaulted Plaintiff Jane B60 on least 29 separate occasions at Defendant MSU's Sports Medicine Clinic between 2012 and 2015—all while Plaintiff Jane B60 Doe was a minor.

781.    Plaintiff Jane B60 Doe's mother or father were present during each of Jane B60 Doe's visits to the MSU Sports Medicine Clinic, however, Defendant Nassar would position himself and Plaintiff Jane B60 Doe so that her parents could not observe or ascertain the actions he was taking.

782.    Some or all of this conduct occurred after MSU supposedly imposed protocols for Defendant Nassar following the 2014 complaint, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

783.    Defendant Nassar did not follow any of these protocols with Plaintiff Jane B60 Doe.

784.    Plaintiff Jane B60 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

785.    As a result of Defendant Nassar's abuse, Plaintiff Jane B60 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

786.    Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Jane B60 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**HH.   ARIANNA CASTILLO**

787.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

788. From approximately 2000 until 2008, Plaintiff Castillo was a member of Defendant Twistars and, as such, trained and received treatment at this facility.

789. From approximately 2004 until 2010, Plaintiff Castillo was a member of Defendant USAG.

790. From approximately 2005 until 2008, Plaintiff Castillo treated with Defendant Nassar for gymnastics related hip injuries.

791. After sustaining a gymnastics-related hip injury in approximately 2005, when Plaintiff Castillo was approximately 8 years old, she was sent to Defendant Nassar for treatment at both Defendant Twistars facility and at Defendant MSU's Sports Medicine Clinic.

792. During medical appointments for Plaintiff Castillo's hip injuries, Defendant Nassar digitally penetrated Plaintiff Castillo's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Castillo's hip injuries.

793. Similar penetrative treatments occurred on several different occasions during 2005 and 2008 at both Defendant Twistars' facility and at MSU Sports Medicine Clinic.

794. In total, Plaintiff Castillo was assaulted by Defendant Nassar approximately 15 − 20 times at Defendant Twistars' facility from 2005 to 2008.

795. In total, Plaintiff Castillo was assaulted by Defendant Nassar approximately 2 − 3 times at Defendant MSU's Sports Medicine Clinic from 2005 to 2008.

796. Plaintiff Castillo did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

797. As a result of Defendant Nassar's abuse, Plaintiff Castillo suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and

depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations requiring therapy.

798. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Castillo believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

## II.   CHRISTY HOLMES

799. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

800. In 1999, Plaintiff Holmes was a gymnast who sustained lower back injuries and was referred to treatment with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

801. At these visits, Defendant Nassar would instruct Plaintiff Holmes to lay on her stomach. Defendant Nassar would then begin physically manipulating Plaintiff Holmes's pubic bones.  Defendant Nassar would digitally penetrate Plaintiff Holmes's vagina without the use of medical gloves or lubricant.

802. Defendant Nassar would perform the above treatments under the guise it was legitimate medical treatment to treat Plaintiff Holmes' lower back injuries.

803. Throughout 1999, Plaintiff Holmes was seen by Defendant Nassar approximately 2 – 4 times at Defendant MSU's Sports Medicine Clinic; Plaintiff Holmes was similarly assaulted by Defendant Nassar at each consultation.

804. On at least one of the occasions detailed above, Plaintiff Holmes's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Holmes so that her mother could not observe or ascertain the actions he was taking

805.   Plaintiff Holmes did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

806.   As a result of Defendant Nassar's abuse, Plaintiff Holmes suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations requiring therapy.

807.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Holmes believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

### JJ.   LAUREN MARGRAVES

808.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

809.   From 2002 until approximately 2007, Plaintiff Lauren Margraves was a competitive gymnast and member of both Defendant USAG and Defendant Twistars.

810.   In 2006, Plaintiff Lauren Margraves sustained a gymnastics-related lower body injury while training at Defendant Twistars facility.

811.   Staff from Defendant Twistars facility referred Plaintiff Lauren Margraves to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

812.   On at least 6 separate occasions in 2006, Defendant Nassar digitally penetrated Plaintiff Lauren Margraves vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Lauren Margraves lower body injury. Additionally, Defendant Nassar would make inappropriate and unconsented contact with

Plaintiff Lauren Margraves lower body under the guise it was also legitimate medical treatment.

813.   Defendant Nassar did not give prior notice or obtain consent to perform digital penetrations from Plaintiff Lauren Margraves or from Plaintiff Lauren Margraves' parents.

814.   Plaintiff Jane Lauren Margraves did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

815.   On at least one occasion, Plaintiff Lauren Margraves' mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Lauren Margraves so that her mother could not observe or ascertain the actions he was taking.

816.   As a result of Defendant Nassar's abuse, Plaintiff Lauren Margraves suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, diminished educational opportunity, and post-traumatic stress disorder with physical manifestations.

817.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Lauren Margraves believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

## KK.   MADISON MARGRAVES

818.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

819. From approximately 2000 until 2007, Plaintiff Madison Margraves was a member of Defendant Twistars.

820. From approximately 2006 until 2007, Plaintiff Madison Margraves was a member of Defendant USAG.

821. From approximately 2014 until 2016, while Plaintiff Madison Margraves was still a minor, she treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic for gymnastic-related leg and groin area injuries.

822. At these treatment sessions, Defendant Nassar would instruct Plaintiff Madison Margraves to change into baggy shorts and then would have her lay on the table. Next, Defendant Nassar would manipulate Plaintiff Madison Margraves lower extremities and make inappropriate and unconsented contact with the outside of Plaintiff Madison Margraves' vagina.

823. At these treatment sessions, Defendant Nassar digitally penetrated Plaintiff Madison Margraves' vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Madison Margraves leg and groin issues.

824. On at least one occasion, Defendant Nassar performed acupuncture treatment on Plaintiff Madison Margraves' vagina under the guise that it was to treat her back pain.

825. On several occasions, Defendant Nassar would have Plaintiff Madison Margraves stand in front of her and bend over in front of Defendant Nassar. Defendant Nassar would then place his hands onto Plaintiff Madison Margraves' hips and put his arms around Plaintiff Madison Margraves' body in order to "re-align" her body.

826. Some or all of this conduct occurred after MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1) having

another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure

827. Plaintiff Maddison Margraves did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

828. As a result of Defendant Nassar's abuse, Plaintiff Maddison Margraves suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

829. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Maddison Margraves believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**LL.    JANE B65 DOE**

830. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

831. Between 1992 and 2001, Plaintiff Jane B65 Doe was a competitive gymnast.  From approximately 1996 to 1997, Plaintiff Jane B65 Doe was a member of Defendant Twistars.

832. Beginning in 1992, and continuing into 1997, Plaintiff Jane B65 Doe received treatment for gymnastics related injuries at Defendant Nassar's apartment (hereinafter referred to as the "apartment treatments").

833. During these apartment treatments, Defendant Nassar would first provide massage therapy, and then would instruct Plaintiff Jane B65 Doe to lie in a bathtub.  After the bath, Defendant Nassar instructed Plaintiff Jane B65 Doe to lie naked on an examination table and then provide additional massage therapy.

834. During at least one of the apartment treatment sessions, Defendant Nassar informed Plaintiff Jane B65 Doe that he was conducting an experiment on gymnasts who urinate after gymnastics and massage therapy.  Accordingly, Defendant Nassar would instruct Plaintiff Jane B65 Doe to attach electrodes to her lower abdomen and genital areas, and then lie in a bathtub for a period of time.

835. During at least one of the apartment treatment sessions, after exiting the bath and lying on the examination table, Defendant Nassar digitally penetrated Plaintiff Jane B65 Doe's vagina without the use of medical gloves or lubricant.  While penetrating Plaintiff Jane B65 Doe, Defendant Nassar instructed Plaintiff Jane B65 Doe to perform Kegel exercises upon his finger.  Defendant Nassar instructed Plaintiff Jane B65 Doe that this was part of his research and further instructed her not to inform her parents.

836. Plaintiff Jane B65 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

837. As a result of Defendant Nassar's abuse, Plaintiff Jane B65 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

838. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B65 Doe believed the "treatment" she received to be

113

legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**MM.   JANE B67 DOE**

839.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

840.   From approximately 1999 until 2005, Plaintiff Jane B67 Doe was a gymnast with Defendant Twistars.

841.   From approximately 1992 until 2005, Plaintiff jane B67 Doe was a member of Defendant USAG.

842.   From approximately 2000 to 2004 Plaintiff Jane B67 Doe was a member of Defendant USAG's national team.

843.   Beginning in 1997, Plaintiff Jane B67 Doe suffered a gymnastics-related hamstring injury and was referred to Defendant Nassar for treatment.

844.   At the initial appointment for Plaintiff Jane B67 Doe's hamstring issue, Defendant Nassar implemented manipulative massage techniques on her hamstring and gradually worked his way up Plaintiff Jane B67 Doe's leg and eventually digitally penetrated Plaintiff Jane B67 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B67 Doe's hamstring injury.

845.   Similar penetrative assaults as describe above reoccurred on at least 5 separate occasions at Defendant MSU's Sports Medicine Clinic from the years 1997 until 2005.

846.   On at least one occasion, Plaintiff Jane B67 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B67 Doe so that her mother could not observe or ascertain the actions he was taking.

847.  Plaintiff Jane B67 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

848.  As a result of Defendant Nassar's abuse, Plaintiff Jane B67 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

849.  Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B67 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

850.  Plaintiff Jane B67 Doe is married to Plaintiff John B67 Doe.

       **NN.   JANE B68 DOE**

851.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

852.  From approximately 1986 until 1996, Plaintiff Jane B68 Doe was a competitive gymnast and member of Defendant USAG and treated with Defendant Nassar for gymnastics-related injuries and other ailments.

853.  From approximately 1990 until 1993, Plaintiff Jane B68 Doe was a member of Defendant USAG's national team.

854.  Prior to the allegations contained in this complaint, Defendant Nassar was considered a trusted family friend of Plaintiff Jane B68 Doe whom she trusted and had received medical treatment from in the past.

855.   Eventually, Plaintiff Jane B68 Doe became a collegiate gymnast at Ball State University where she developed a stress fracture in her lower back.

856.   During the summer of 1997, Plaintiff Jane B68 Doe was job-shadowing Defendant Nassar through his office at Defendant MSU's Sports Medicine Clinic.

857.   At the end of the shift, Defendant Nassar offered to treat Plaintiff Jane B68 Doe's pre-existing back injury.

858.   Defendant Nassar began manual manipulation of Plaintiff Jane B68 Doe's leg and inner thigh and then digitally penetrated Plaintiff Jane B68 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B68 Doe's back injuries.

859.   During the course of the procedure, Plaintiff Jane B68 Doe noticed that Defendant Nassar had become sexually aroused and was breathing heavily.

860.   Plaintiff Jane B68 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

861.   As a result of Defendant Nassar's abuse, Plaintiff Jane B68 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, post-traumatic stress disorder with physical manifestations requiring therapy.

862.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B68 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**OO.   JANE B69 DOE**

116

863.    Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

864.    From approximately 2013 and 2016, Plaintiff Jane B69 Doe was a competitive gymnast and member at Defendant Twistars facility.

865.    Plaintiff Jane B69 Doe was between the ages of 10 and 13 when she treated with Defendant Nassar.

866.    In 2013, Plaintiff Jane B69 Doe sustained a gymnastics-related injury to her iliotibial band ("IT Band") and hip flexors.  Accordingly, she was referred to Defendant Nassar for treatment at Defendant Twistars facility and at Defendant MSU's Sports Medicine Clinic.

867.    From approximately 2013 and 2016, Plaintiff Jane B69 Doe attended visits with Defendant Nassar once per week at Defendant Twistars facility.  During this timeframe Plaintiff Jane B69 Doe also attended visits with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

868.    During these visits, Defendant Nassar would manipulate Plaintiff Jane B69 Doe's legs and knees and would place his hand on top of her inner thigh.  As this progressed, Defendant Nassar would digitally penetrate Plaintiff Jane B69 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B69 Doe's hip and leg injuries.

869.    Defendant Nassar performed similar actions at every visit upon which Plaintiff Jane B69 Doe would attend.

870.    Between 2013 and 2016, Defendant Nassar assaulted Plaintiff Jane B69 Doe in the above-provided fashion at least 20 times at Defendant MSU's Sports Medicine Clinic.

117

871.   Between 2013 and 2016, Defendant Nassar assaulted Plaintiff Jane B69 Doe in the above-provided fashion at least 200 times at Defendant Twistars facility.

872.   After the above-provided "treatments", Defendant Nassar would give Plaintiff Jane B69 Doe gifts including, but not limited to, Olympic pins.

873.   Plaintiff Jane B69 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

874.   On all of the occasions detailed above, Plaintiff Jane B69 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B69 Doe so that her mother could not observe or ascertain the actions he was taking.

875.   Some or all of this conduct occurred after MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

876.   As a result of Defendant Nassar's abuse, Plaintiff Jane B69 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations including but not limited to panic attacks, sleep disturbances, concentration and memory issues, and stomach aches.

877.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B69 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

118

878.   Plaintiff Jane B69 Doe brings this action by her next friend Plaintiff Jane B69NF Doe.

**PP.   JANE B71 DOE**

879.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

880.   From approximately 1995 until 2001, Plaintiff Jane B71 Doe was a member of Defendant USAG and a competitive gymnast at Kentwood Gymnastics—a Defendant USAG member gym.

881.   In approximately 1997, Plaintiff Jane B71 Doe sustained a serious gymnastics-related back injury and was referred to Defendant MSU's Sports Medicine Clinic and Defendant Nassar for treatment.

882.   Plaintiff Jane B71 Doe began treating with Defendant Nassar in 1997 and continued treatment until approximately 1999.

883.   Defendant Nassar began the treatment by providing manipulation-type treatment to Plaintiff Jane B71 Doe's lower body including her legs and hips.  During this treatment, Defendant Nassar digitally penetrated Plaintiff Jane B71 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B71 Doe's back injuries.

884.   Defendant Nassar's digital penetration of Plaintiff Jane B71 Doe reoccurred over the course of two years and occurred approximately 20 – 40 times in total; each penetration lasted approximately 10-15 minutes.

885.   On at least one occasion, Plaintiff Jane B71 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B71 Doe so that her mother could not observe or ascertain the actions he was taking.

886.  Plaintiff Jane B71 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

887.  As a result of Defendant Nassar's abuse, Plaintiff Jane B71 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

888.  Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B71 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

## QQ.  KENZIE GASSAWAY

889.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

890.  From approximately 1996 until 1999, Plaintiff Gassaway treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and at Defendant Twistars' facility for gymnastics-related hamstring and pelvic injuries.

891.  From approximately 1996 until 1999, Plaintiff Gassaway was a member of Defendant Twistars.

892.  From approximately 1994 until 2000 Plaintiff Gassaway was a member of Defendant USAG.

893.  On at least one occasion, in and around 1996, Plaintiff Gassaway was referred to Defendant Nassar at Defendant Twistars facility after sustaining a hamstring tear.

894. As treatment for said hamstring tear, Defendant Nassar had Plaintiff Gassaway lie prone on the table, and then Defendant Nassar would digitally penetrate her vagina and anus. After penetrating Plaintiff Gassaway, Defendant Nassar would then instruct her to go perform more gymnastics, then return for more treatment, where Defendant Nassar, again, digitally penetrated Plaintiff Gassaway's vagina and anus. Defendant Nassar did not utilize medical gloves or lubricant during either of these penetration occurrences.

895. Defendant Nassar represented to Plaintiff Gassaway that the above-mentioned procedure was legitimate medical treatment for Plaintiff Gassaway's hamstring injury.

896. In or around 1997 to 1998, Plaintiff Gassaway sustained a similar gymnastics-related hamstring injury and was, again, referred to Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

897. On at least one occasion, Defendant Nassar had Plaintiff Gassaway lay prone on the examination table upon which Defendant Nassar began manipulating Plaintiff Gassaway's injured hamstring and lower extremities. Defendant Nasser then digitally penetrated Plaintiff Gassaway's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Gassaway's hamstring tear.

898. On all occasions detailed above, Plaintiff Gassaway's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Gassaway so that her mother could not observe or ascertain the actions he was taking.

899. Plaintiff Gassaway did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

121

900.   As a result of Defendant Nassar's abuse, Plaintiff Gassaway suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

901.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Gassaway believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

902.   Plaintiff Gassaway is married to Plaintiff John Gassaway.

### RR.   KATHERINE EBERT

903.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

904.   From approximately 2005 until 2016, Plaintiff Ebert was a competitive gymnast and member of Defendant USAG.

905.   In 2013, After sustaining a gymnastics-related knee injury, Plaintiff Ebert was referred to Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

906.   During at least one visit with Defendant Nassar, he provided he was going to check Plaintiff Ebert's flexibility.   While stretching Plaintiff Ebert's leg, Defendant Nassar placed his hand under Plaintiff Ebert's leotard and then digitally penetrated Plaintiff Ebert's vagina without the use of medical gloves or lubricant.

907.   Shortly after Defendant Nassar digitally penetrated Plaintiff Ebert's vagina, Plaintiff Ebert observed that Defendant Nassar was sexually aroused.

908. Plaintiff Ebert did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

909. On all of the occasions detailed above, Plaintiff Ebert's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Ebert so that her mother could not observe or ascertain the actions he was taking.

910. Some or all of this conduct occurred after MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

911. As a result of Defendant Nassar's abuse, Plaintiff Ebert suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, diminished educational opportunity, and post-traumatic stress disorder with physical manifestations.

912. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Ebert believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

### SS.   JANE B77 DOE

913. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

914. From approximately 2004 until 2013, Plaintiff Jane B77 Doe was a gymnast and member of Defendant USAG.

915. In 2013, Plaintiff Jane B77 Doe sustained a gymnastics-related tailbone and lower back injury and was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

916. During Plaintiff Jane B77 Doe's appointments with Defendant Nassar, he would massage Plaintiff Jane B77 Doe's vagina and then digitally penetrate Plaintiff Jane B77 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B77 Doe's injuries.

917. In total, Defendant Nassar assaulted Plaintiff Jane B77 Doe in a similar fashion provided above on at least nine (9) separate occasions.

918. During all of the above-mentioned assaults Plaintiff Jane B77 Doe was a minor, specifically 17 years old.

919. Plaintiff Jane B77 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

920. As a result of Defendant Nassar's abuse, Plaintiff Jane B77 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

921. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B77 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

TT.   **JANE B79 DOE**

922.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

923.   From approximately 1991 and 2004 Plaintiff Jane B79 Doe was a competitive gymnast and member of Defendant USAG.

924.   Between 2001 and 2002, Plaintiff Jane B79 Doe was a member of Defendant USAG's National Team.

925.   Between 2000 and 2002, Plaintiff Jane B79 Doe competed at the United States National Gymnastics Championship and United States Classic ("U.S. Classic") gymnastics meet as a member of Defendant USAG.

926.   Between 2000 and 2002, while a member of Defendant USAG's National Team, Plaintiff Jane B79 Doe trained at the Karolyi Ranch with other gymnasts.

927.   In 2000, Plaintiff Jane B79 Doe was competing as a member of Defendant USAG at the U.S. Classic gymnastics meet.

928.   On the day before Plaintiff Jane B79 Doe was to compete in the U.S. Classic she sustained a hamstring injury and was referred to treat with Defendant USAG's coach Defendant Nassar.

929.   On this occasion, Defendant Nassar provided massage and/or manipulative treatment to Plaintiff Jane B79 Doe's hamstring area.  Defendant Nassar then instructed Plaintiff Jane B79 to lie on her back.  At that point, Defendant Nassar made inappropriate and unconsented contact with Plaintiff Jane B79's vagina and digitally penetrated Plaintiff Jane B79 Doe's vagina without the use of gloves or lubricant.

930. Between 2000 and 2002, Plaintiff Jane B79 Doe trained at the Karolyi Ranch and sustained a back injury.

931. On at least one occasion between 2000 and 2002, while Plaintiff Jane B79 Doe was training at the Karolyi Ranch, she was referred to Defendant Nassar—who volunteered as USAG's medical trainer at the Ranch—for treatment.

932. During these treatment sessions at the Ranch, Defendant Nassar made uncontested and inappropriate contact with Plaintiff Jane B79 Doe's vagina and buttocks and digitally penetrated Plaintiff Jane B79 Doe's vagina without the use of gloves or lubricant.

933. Plaintiff Jane B79 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

934. As a result of Defendant Nassar's abuse, Plaintiff Jane B79 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, eating disorders, intimacy issues, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

935. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B79 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

936. Plaintiff Jane B79 Doe is married to Plaintiff John B79 Doe.

**UU.** **JANE B82 DOE**

937. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

126

938.    From 1995 until 2007, Plaintiff Jane B82 Doe was a competitive gymnast and member of Defendant Twistars

939.    From 2003 until 2007, Plaintiff Jane B82 Doe was a student at Defendant MSU and a member of Defendant MSU's gymnastics team.

940.    Beginning in 1997, Plaintiff Jane B82 Doe began to treat with Defendant Nassar secondary to gymnastics-related injuries to her lower back, hip, and knee.

941.    The treatment initiated at Defendant Twistars' facility until approximately 2003 until Plaintiff Jane B82 Doe began treating with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

942.    From 2003 until 2007, Plaintiff Jane B82 Doe received treatment at the Jennison Field House, located on Defendant MSU's East Lansing, Michigan campus.

943.    From 1997 until 2003, Defendant Nassar digitally penetrated Plaintiff Jane B82 Doe's vagina and anus without the use of medical gloves or lubricant under the guise that it was legitimate medical treatment for her lower back, hip, and knee injuries while treating at Defendant Twistars Facility.

944.    From 2003 until 2007, Defendant Nassar digitally penetrated Plaintiff Jane B82 Doe's vagina and anus without the use of medical gloves or lubricant under the guise that it was legitimate medical treatment for her lower back, hip, and knee injuries while treating at Defendant MSU's Jennison Field House.

945.     While providing the above-mentioned "treatment", Defendant Nassar would engage Plaintiff Jane B82 Doe inappropriate dialogue related to her boyfriend, relationships, and sex life.

946. Plaintiff Jane B82 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

947. On at least one occasion, Plaintiff Jane B82 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B82 Doe so that her mother could not observe or ascertain the actions he was taking.

948. As a result of Defendant Nassar's abuse, Plaintiff Jane B82 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

949. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B82 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**VV.    JANE B83 DOE**

950. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

951. From 1995 until 2004 Plaintiff Jane B83 Doe was a competitive gymnast and member of both Defendant USAG and Defendant Twistars.

952. From 1996 until 2004, Plaintiff Jane B83 Doe began treating with Defendant Nassar at both Defendant Twistars facility, Defendant MSU's Sports Medicine Clinic, and Jenison Field House located on Defendant MSU's East Lansing, Michigan campus for gymnastics-related injuries.

128

953. From 1996 to 1999, Plaintiff Jane B83 Doe began treating with Defendant Nassar at Defendant Twistars' facility.

954. From 1998 until 2004, Plaintiff Jane B83 Doe treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and at Jennison Field House located on Defendant MSU's East Lansing, Michigan campus.

955. In providing treatment for Plaintiff Jane B83 Doe's gymnastics-related injuries, Defendant Nassar made inappropriate and unconsented contact with Plaintiff Jane B83 Doe's buttocks and genital region.

956. On at least one occasion between 1996 and 2004, Defendant Nassar digitally penetrated Plaintiff Jane B83 Doe's vagina without the use of medical gloves or lubricant under the guise that it was legitimate medical treatment for her gymnastics-related injuries.

957. Similar assaultive treatments occurred on several separate occasions between 1996 and 2004 at Defendant Twistars' facility, Defendant MSU's Sports Medicine Clinic, and Jennison Fieldhouse.

958. Plaintiff Jane B83 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

959. As a result of Defendant Nassar's abuse, Plaintiff Jane B83 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

960. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B83 Doe believed the "treatment" she received to be

legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

## WW.  REED ANDERSON

961.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs

962.  From 2002 until 2010, Plaintiff Anderson was a competitive gymnast and member of both Defendant Twistars and Defendant USAG.

963.  Beginning in 2007, when Plaintiff Anderson was a minor, Plaintiff Anderson sustained a gymnastics-related back injury and was referred to treat with Defendant Nassar.

964.  From approximately 2007 until 2010, Plaintiff Anderson treated with Defendant Nassar at both Defendant Twistars' facility and Defendant MSU's Sports Medicine Clinic.

965.  When receiving treatment from Defendant Nassar at Defendant Twistars' facility, Defendant Nassar would instruct Plaintiff Anderson to lie face-down on the examination table.  Defendant Nassar would then provide massage therapy starting at Plaintiff Anderson's neck and progressing down her body.

966.  When Defendant Nassar's hands reached Plaintiff Anderson's genital region, Defendant Nassar would make contact with and massage the outside of Plaintiff Anderson's vagina. Then Defendant Nassar digitally penetrated Plaintiff Anderson's vagina and anus without the use of medical gloves or lubricant; at times, Defendant would digitally penetrate Defendant Anderson's vagina and anus simultaneously.

967.  On at least one occasion, Defendant Nassar made inappropriate and unconsented contact with Plaintiff Anderson's breasts.

968.   During the typical exam, Defendant Nassar would also instruct Plaintiff Anderson to bend over in front of him to check her "alignment".  During this procedure, Plaintiff Anderson could feel that Defendant Nassar was sexually aroused.

969.   Defendant Nassar requested Plaintiff Anderson provide pictures of herself to Defendant Nassar and also requested Plaintiff Anderson like his videos, pictures, and other media on social media platforms including, but not limited to, Facebook and Instagram.

970.   From 2007 until 2010 Plaintiff Anderson was assaulted in a similar fashion at all appointments with Defendant Nassar at both Defendant Twistars' facility and Defendant MSU's Sports Medicine Clinic.

971.   In total, Plaintiff Anderson was assaulted on approximately 250-300 separate occasions at Defendant Twistars' facility under the guise of legitimate medical treatment.

972.   In total, Plaintiff Anderson was assaulted on 50-70 separate occasions at Defendant MSU's Sports Medicine Clinic under the guise of legitimate medical treatment.

973.   Plaintiff Anderson did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

974.   As a result of Defendant Nassar's abuse, Plaintiff Anderson suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

975.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Anderson believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

## XX.   **AMANDA GREEN**

976.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

977.   From 1997 until 2005, Plaintiff Green was a competitive gymnast and member of Defendant USAG.

978.   In 2008, Plaintiff Green was a freshman member of Defendant MSU's track and field team as a long-jumper.

979.   In 2008, after sustaining a hamstring injury, Plaintiff Green's coaches referred her to treat with Defendant Nassar at the Jennison Field House located upon Defendant MSU's campus.

980.   During the appointment to treat Plaintiff Green's hamstring injury, Defendant Nassar digitally penetrated Plaintiff Green's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Green's hamstring injury.

981.   Defendant Nassar did not give prior notice or obtain permission from Plaintiff Green for any digital penetration.

982.   Plaintiff Green did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

983.   As a result of Defendant Nassar's abuse, Plaintiff Green suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression requiring therapy, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations.

984. Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Green believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

985. Plaintiff Green is married to Plaintiff Jonathan Collins.

### YY.   JANE B89 DOE

986. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

987. From approximately 2007 until 2014 Plaintiff Jane B89 Doe was a competitive gymnast and member of Defendant USAG.

988. As a member of Defendant USAG, Plaintiff Jane B89 Doe trained at the Karolyi Ranch on numerous occasions.

989. Beginning in 2007, after sustaining gymnastics-related back and ankle injuries, Plaintiff Jane B89 Doe was referred to Defendant Nassar for treatment.

990. Between 2007 and 2014, on several separate occasions, Plaintiff Jane B89 Doe attended appointments with Defendant Nassar at Defendant MSU's Sports Medicine Clinic, Defendant USAG sanctioned gymnastics meets, the Karolyi Ranch, and regional meets at Defendant Twistars' facility.

991. On several occasions between 2007 and 2014, Defendant Nassar digitally penetrated Plaintiff Jane B89 Doe's vagina and anus without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for her back and ankle injuries.

992.   Defendant Nassar's assaults of Plaintiff Jane B89 Doe occurred at Defendant MSU's Sports Medicine Clinic, the Karolyi Ranch, and at USAG sanctioned gymnastics meets including but not limited to meets at Defendant Twistars' facility.

993.   Defendant Nassar did not give prior notice or gain prior consent for the digital penetration of Plaintiff Jane B89 Doe.

994.   Some or all of this conduct occurred after MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1) having another person (resident, nurse, etc.) in the room while he performed treatments; 2) procedures were to involve little to no skin contact; 3) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

995.   Plaintiff Jane B89 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

996.   On at least one occasion, Plaintiff Jane B89 Doe's mother or father were present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B89 Doe so that her parents could not observe or ascertain the actions he was taking.

997.   As a result of Defendant Nassar's abuse, Plaintiff Jane B89 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anxiety around male coaches and doctors, and post-traumatic stress disorder with physical manifestations including.

998.   Based on Defendant Nassar's representations and the representations of other individuals affiliated with MSU, Plaintiff Jane B89 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

### ZZ.   OLIVIA VENUTO

999.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1000.   In 2006, Plaintiff Venuto was a competitive ballet dancer who sustained a ballet-related back injury.

1001.   Secondary to her injuries, Plaintiff Venuto was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1002.   When Plaintiff Venuto began treating with Defendant Nassar, she was a minor.

1003.   On numerous occasions between 2006 and 2013, Defendant Nassar digitally penetrated Plaintiff Venuto's vagina and anus without the use of medical gloves or lubricant under the guise of legitimate medical treatment for Plaintiff Venuto's back injuries.

1004.   Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Venuto or Plaintiff Venuto's parents prior to the digital penetration.

1005.   Plaintiff Venuto did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1006.   On several separate occasions when Plaintiff Venuto was assaulted by Defendant Nassar and during at least one occasion Plaintiff Venuto's parents were present in the room, however, Defendant Nassar would position himself and Plaintiff Venuto so that her parents could not observe the actions he was taking.

1007.   As a result of Defendant Nassar's abuse, Plaintiff Venuto suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression requiring therapy as well as post-traumatic stress disorder with physical manifestations.

1008. Based on Defendant Nassar's representations and the representations of other individuals affiliated with Defendant MSU, Plaintiff Venuto believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

### AAA.  ALYSSA AVERY

1009. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1010. In 2004, Plaintiff Avery was a competitive gymnast who sustained gymnastics-related injuries.

1011. Secondary to her injuries, Plaintiff Avery was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1012. When Plaintiff Avery began to treat with Defendant Nassar, she was a minor.

1013. From approximately 2004 until 2014, Plaintiff Avery was a member of Defendant Twistars.

1014. On at least 90 separate occasions stemming from 2004 until 2014, Defendant Nassar digitally penetrated Plaintiff Avery's vagina and anus without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Avery's injuries.

1015. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Avery or Plaintiff Avery's parents prior to the digital penetration.

1016. Plaintiff Avery did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1017. Some or all of this conduct occurred after Defendant MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1.) having another person (resident, nurse, etc.) in the room while he performed treatments; 2.) procedures were to involve little to not skin contact; 3.) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

1018. As a result of Defendant Nassar's abuse, Plaintiff Avery suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and panic attacks, trust issues especially around male doctors, weight loss, ulcer and other stomach issues, sleep disturbances including insomnia and nightmares, and post-traumatic stress disorder with physical manifestations.

1019. Based on Defendant Nassar's representations and the representations of other individuals affiliated with Defendant MSU, Plaintiff Avery believed the "treatment" she received to be legitimate medical procedures until reports resurfaces in or about September 2016 of similar allegations made by other women.

   **BBB.   JANE B92 DOE**

1020. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1021. In 1999, Plaintiff Jane B92 Doe was a competitive gymnast who sustained gymnastics-related injuries.

1022. Secondary to her injuries, Plaintiff Jane B92 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1023. When Plaintiff Jane B92 Doe began treating with Defendant Nassar, she was a minor.

1024. During the time period of 1999 to 2002, Plaintiff Jane B92 Doe was a member of Great Lakes Gymnastics, and later Defendant Twistars.

1025. In 2002, Plaintiff Jane B92 Doe was a gymnastics coach at Defendant Twistars' facility.

1026. On at least 50 separate occasions between 1999 and 2002, Defendant Nassar digitally penetrated Plaintiff Jane B92 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B92 Doe's injuries.

1027. If Defendant Nassar noticed Plaintiff Jane B92 Doe was menstruating during one of these "treatments", Defendant Nassar would digitally penetrate Plaintiff Jane B92 Doe's anus without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B92 Doe's injuries.

1028. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B92 Doe or Plaintiff Jane B92 Doe's parents prior to the digital penetration.

1029. Plaintiff Jane B92 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1030. On all occasions Plaintiff Jane B92 Doe was assaulted by Defendant Nassar, no other party was present in the room.

1031. As a result of Defendant Nassar's abuse, Plaintiff Jane B92 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety, panic attacks, sleep disturbances, fear for her own children's safety, miscarriage, and PTSD with physical manifestations.

1032. Based on Defendant Nassar's representations and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B92 Doe believed the "treatment" she

received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

1033. Plaintiff Jane B92 Doe is married to Plaintiff John B92 Doe.

### CCC.  JANE B93 DOE

1034. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1035. In 2001, Plaintiff Jane B93 Doe was a varsity golfer for Defendant MSU who sustained a golf-related lower back injury.

1036. Secondary to her injuries, Plaintiff Jane B93 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic ant Defendant MSU's Jenison Field House.

1037. On at least one occasions between 2001 and 2004, Defendant Nassar digitally penetrated Plaintiff Jane B93 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B93 Doe's lower back injury.

1038. Defendant Nassar did not give prior notice or obtain consent from Plaintiff Jane B93 Doe prior to the digital penetration.

1039. Plaintiff Jane B93 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1040. As a result of Defendant Nassar's abuse, Plaintiff Jane B93 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, embarrassment, shame, and post-traumatic stress disorder with physical manifestations requiring therapy.

1041. Based on Defendant Nassar's representations and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B93 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

1042. Plaintiff Jane B93 Doe is married to Plaintiff John B93 Doe.

**DDD.  JANE B94 DOE**

1043. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1044. In 2013, Plaintiff Jane B94 Doe was a competitive gymnast who sustained gymnastics-related back and lower body injuries.

1045. From 2006 until 2013, Plaintiff Jane B94 Doe was a member of Defendant USAG.

1046. Secondary to her injuries, Plaintiff Jane B94 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1047. When Plaintiff Jane B94 Doe began treating with Defendant Nassar, she was a minor.

1048. On at least 3 separate occasions in 2013, Defendant Nassar made inappropriate and unconsented contact with Plaintiff Jane B94 Doe's buttocks, tailbone, hips, and stomach without the use of medical gloves under the guise it was legitimate medical treatment for Plaintiff Jane B94 Doe's injuries.

1049. On at least 3 separate occasions in 2013, Defendant Nassar would instruct Plaintiff Jane B94 Doe to bend over in front of him, after which Defendant Nassar would make inappropriate and unconsented contact with Plaintiff Jane B94 Doe's buttocks, hips, tailbone, and stomach.

1050. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B94 Doe or Plaintiff Jane B94 Doe's parents prior to making the aforesaid contact.

1051. Plaintiff Jane B94 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1052. On all occasions Plaintiff Jane B94 Doe was assaulted by Defendant Nassar, Plaintiff Jane B94 Doe's parents was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B94 Doe so that her parents could not observe or ascertain the actions he was taking

1053. As a result of Defendant Nassar's abuse, Plaintiff Jane B94 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and stress, sleep disturbances, diminished performance at school, and post-traumatic stress disorder with physical manifestations.

1054. Based on Defendant Nassar's representations and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B94 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**EEE.   JANE B96 DOE**

1055. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1056. In 1992, Plaintiff Jane B96 Doe was a competitive gymnast who sustained gymnastics-related hip and back injuries.

1057. Secondary to her injuries, Plaintiff Jane B96 Doe was referred to treat with Defendant Nassar.

141

1058. From approximately 1992 until 2016, Plaintiff Jane B96 Doe treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and Jenison Fieldhouse, Defendant Twistars' facility, Defendant Nassar's Home and apartment, Plaintiff Jane B96 Doe's home, and at assorted gymnastic meets and/or competitions.

1059. When Plaintiff Jane B96 Doe began treating with Defendant Nassar, she was a minor.

1060. On multiple separate occasions between 1992 and 2016, Defendant Nassar digitally penetrated Plaintiff Jane B96 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B96 Doe's hip and back injuries.

1061. On multiple occasions between 1992 and 2006, Defendant Nassar engaged in inappropriate and unconsented contact with Plaintiff Jane B96 Doe's vagina, anus, and breasts under the guise said contact was legitimate medical treatment for Plaintiff Jane B96 Doe's hip and back injuries.

1062. Between 1992 and 2006, Defendant Nassar assaulted Plaintiff Jane B96 Doe in excess of 1000 separate times.

1063. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B96 Doe or from Plaintiff Jane B96 Doe's parents prior to the digital penetration.

1064. Plaintiff Jane B96 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1065. Some or all of this conduct occurred after Defendant MSU imposes a particular protocol for Defendant Nassar following the 2014 complaint including, but not limited to: 1.) having another person (resident, nurse, etc.) in the room while he performed treatments; 2.) procedures were to involve little to no skin contact; 3.) procedures were to be

explained in detail with another person in the room for both the explanation and the procedure.

1066. On the majority of the occasions in which Plaintiff Jane B96 Doe was assaulted by Defendant Nassar, Plaintiff Jane B96 Doe's parents, family, and other individuals were present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B96 Doe so that these individuals could not observe or ascertain the actions he was taking.

1067. As a result of Defendant Nassar's abuse, Plaintiff Jane B96 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, eating disorders, infertility/ovarian dysfunction, and post-traumatic stress disorder with physical manifestations requiring therapy.

1068. Based on Defendant Nassar's representations and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B96 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

1069. Plaintiff Jane B96 Doe is married to Plaintiff John B96 Doe.

**FFF.**   **JANE B97 DOE**

1070. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1071. In 1996, Plaintiff Jane B97 Doe was a competitive gymnast who sustained several gymnastics-related injuries to her back, feet, and knees.

1072. Secondary to her injuries, Plaintiff Jane B97 Doe was referred to treat with Defendant Nassar.

1073. From 1996 until 2006, Plaintiff Jane B97 Doe treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and Jenison Fieldhouse, Defendant Twistars' facility, and at her parents' home.

1074. From its inception until 2006, Plaintiff Jane B97 Doe was a member of Defendant Twistars.

1075. From 1996 until 2000, Plaintiff Jane B97 Doe was a member of Defendant USAG.

1076. When Plaintiff Jane B97 Doe began treating with Defendant Nassar, she was a minor.

1077. On several separate occasions between 1996 and 2006, Defendant Nassar digitally penetrated Plaintiff Jane B97 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B97 Doe's injuries.

1078. In total, Defendant Nassar assaulted Plaintiff Jane B97 Doe on at least 460 separate occasions between 1996 and 2006.

1079. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B97 Doe or Plaintiff Jane B97 Doe's parents prior to the digital penetration.

1080. Plaintiff Jane B97 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1081. On several occasions Plaintiff Jane B97 Doe was assaulted by Defendant Nassar, Plaintiff Jane B97 Doe's parents and other individuals were present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B97 Doe so that none of these parties could observe or ascertain the actions he was taking.

1082. As a result of Defendant Nassar's abuse, Plaintiff Jane B97 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, headaches, stomachaches, sleep disturbances, irritability, PAN

vasculitis that is triggered and/or exacerbated by stress, and post-traumatic stress disorder with physical manifestations.

1083. Based on Defendant Nassar's representations and the representations of the other individuals affiliated with Defendant MSU, Plaintiff Jane B97 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

1084. Plaintiff Jane B97 Doe is married to Plaintiff John B97 Doe.

**GGG. JANE B98 DOE**

1085. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1086. In 2012, Plaintiff Jane B98 Doe was a varsity rower for Defendant MSU who sustained a rowing-related hip-injury.

1087. Secondary to her injury, Plaintiff Jane B98 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine clinic and at Defendant MSU's Jenison Fieldhouse and football facility.

1088. On at least 2 separate occasions, Defendant Nassar digitally penetrated Plaintiff Jane B98 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B98 Doe's hip injury.

1089. Defendant Nassar did not give prior notice or obtain consent from Plaintiff Jane B98 Doe prior to the digital penetration.

1090. Plaintiff Jane B98 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1091. On at least one occasion, a medical student was in the room during one of Plaintiff Jane B98 Doe's appointments with Defendant Nassar, however, Defendant Nassar instructed the student to leave the room prior to assaulting Plaintiff Jane B98 Doe.

1092. As a result of Defendant Nassar's abuse, Plaintiff Jane B98 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, increased anger, and post-traumatic stress disorder with physical manifestations requiring therapy.

1093. Based on Defendant Nassar's representations and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B98 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**HHH. ALEXANDRA BOURQUE**

1094. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1095. In 2001, Plaintiff Bourque was a competitive gymnast who sustained gymnastics related injuries including a fractured coccyx and hip bone.

1096. At the same time, Plaintiff Bourque was a member of Defendant USAG and visited the National Team Training Center at the Karolyi Ranch in 2000 or 2001.

1097. Secondary to her injuries, Plaintiff Bourque was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1098. When Plaintiff Bourque began treating with Defendant Nassar, she was a minor.

1099.  On at least 3 separate occasions, Defendant Nassar digitally penetrated Plaintiff Bourque's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Bourque's coccyx and hip injuries.

1100.  On at least one occasion, Defendant Nassar made inappropriate and unconsented contact with Plaintiff Bourque's vagina, buttocks, and breasts under the guise it was legitimate medical treatment for Plaintiff Bourque's coccyx and hip injuries.

1101.  On all occasions Plaintiff Bourque was assaulted by Defendant Nassar, Plaintiff Bourque's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Bourque so that her mother could not observe or ascertain the actions he was taking.

1102.  As a result of Defendant Nassar's abuse, Plaintiff Bourque suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety, depression and stress, eating disorders, trust issues, and post-traumatic stress disorder with physical manifestations.

1103.  Based on Defendant Nassar's representations and the representations of other individuals affiliated with Defendant MSU, Plaintiff Bourque believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

### III.   HOLLY WILES

1104.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1105.  In 2014, Plaintiff Wiles was a student at Defendant MSU as well as a member dancer and member of Defendant MSU's marching band.

1106.  In 2014, Plaintiff Wiles sustained a torn labrum and other injuries for which she was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1107.  When Plaintiff Wiles began treating with Defendant Nassar, she was a minor.

1108.  On at least 20 separate occasions between 2014 and 2016, Defendant Nassar made inappropriate and unconsented contact with Plaintiff Wiles vagina under the guise it was legitimate medical treatment for Plaintiff Wiles labrum injury.

1109.  On at least one occasion between 2014 and 2016, Defendant Nassar digitally penetrated Plaintiff Wiles' vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Wiles' torn labrum.

1110.  Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Wiles or Plaintiff Wiles' mother prior to the digital penetration or unconsented touching.

1111.  Plaintiff Wiles did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1112.  Some or all of this conduct occurred after Defendant MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1.) having another person (resident, nurse, etc.) in the room while he performed treatments; 2.) procedures were to involve little to no skin contact; 3.) procedures were to be explained in detail with another person in the room for both the explanation and procedure.

1113.  On all occasions Plaintiff Wiles was assaulted by Defendant Nassar, Plaintiff Wiles' mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Wiles so that her mother could not observe or ascertain the actions he was taking.

1114. As a result of Defendant Nassar's abuse, Plaintiff Wiles suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression and post-traumatic stress disorder with physical manifestations.

1115. Based on Defendant Nassar's representations and the representations of other individuals affiliated with Defendant MSU, Plaintiff Wiles believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**JJJ.    JANE B101 DOE**

1116. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1117. From approximately 1988 until 1995, Plaintiff Jane B101 Doe was a member of Great Lakes Gymnastics.

1118. From approximately 1995 until 2003, Plaintiff Jane B101 Doe was a member of Defendant Twistars.

1119. From approximately 2003 until 2016, Plaintiff Jane B101 Doe was a gymnastics coach at Defendant Twistars facility.

1120. From approximately 1995 until 2003, Plaintiff Jane B101 Doe was a member of Defendant USAG and was a national team member from 1997 until 2003.

1121. In 1991, Plaintiff Jane B101 Doe was a competitive gymnast who sustained a gymnastics-related back injury.

1122. Secondary to her injury, Plaintiff Jane B101 Doe was referred to treat with Defendant Nassar.

1123. From 1991 until approximately 2003, Plaintiff Jane B101 Doe treated with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and at Defendant Twistars' facility.

1124. When Plaintiff Jane B101 Doe began treating with Defendant Nassar, she was a minor.

1125. On several separate occasions between 1991 and 2003, Defendant Nassar digitally penetrated Plaintiff Jane B101 Doe's vagina and anus without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B101 Doe's gymnastics-related back injury.

1126. Between 1991 and 2003, Defendant Nassar assaulted Plaintiff Jane B101 Doe at least 220 times.

1127. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B101 Doe or Plaintiff Jane B101 Doe's parents prior to the digital penetration.

1128. Plaintiff Jane B101 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues

1129. On all occasions Plaintiff Jane B101 Doe was assaulted by Defendant Nassar, Plaintiff Jane B101 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B101 Doe so that her mother could not observe or ascertain the actions he was taking.

1130. As a result of Defendant Nassar's abuse, Plaintiff Jane B101 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, headaches, and post-traumatic stress disorder with physical manifestations.

1131. Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B101 Doe believed the "treatment" she

received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

1132.   Plaintiff Jane B101 Doe is married to Plaintiff John B101 Doe.

**KKK.  JANE B102 DOE**

1133.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1134.   In 1993, Plaintiff Jane B102 Doe was a competitive gymnast who sustained various gymnastics-related injuries including, but not limited to, injured leg, ankle, groin, back, and hips.

1135.   From 1989 until 1997, Plaintiff Jane B102 Doe was a member of Defendant USAG.

1136.   From 2016 until present, Plaintiff Jane B102 Doe was a member and gymnastics coach with Defendant Twistars.

1137.   Secondary to her injuries, Plaintiff Jane B102 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and Jenison Fieldhouse.

1138.   Plaintiff Jane B102 Doe treated with Defendant Nassar from approximately 1993 until 1997.

1139.   When Plaintiff Jane B102 Doe began treating with Defendant Nassar, she was a minor.

1140.   On at least 50 separate occasions between 1993 and 1997, Defendant Nassar digitally penetrated Plaintiff Jane B102 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B102 Doe's gymnastics-related injuries.

1141.   Defendant Nassar did not give prior notice or obtain consent form either Plaintiff Jane B102 Doe or Plaintiff Jane B102 Doe's parents prior to the digital penetration.

1142. Plaintiff Jane B102 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1143. On all occasion Plaintiff Jane B102 Doe was assaulted by Defendant Nassar, Plaintiff Jane B102 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B102 Doe so that her mother could not observe or ascertain the actions he was taking.

1144. As a result of Defendant Nassar's abuse, Plaintiff Jane B102 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, anger and trust issues, fear and distrust of men and male doctors, sleep disturbances, lost of gymnastics career, worsening hip, back, and groin injuries secondary to Defendant Nassar's lack of treatment, and post-traumatic stress disorder with physical manifestations.

1145. Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B102 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**LLL.   JANE B103 DOE**

1146. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1147. Between approximately 1992 until 2001, Plaintiff Jane B103 Doe was a competitive gymnast.  In approximately 1997, Plaintiff Jane B103 Doe sustained a gymnastics-related lower back injury.

1148. Secondary to her injury, Plaintiff Jane B103 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1149. When Plaintiff Jane B103 Doe began treating with Defendant Nassar, she was a minor.

1150. On at least one occasion in 1997, Defendant Nassar digitally penetrated Plaintiff Jane B103 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B103 Doe's lower back injury.

1151. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B103 Doe or Plaintiff Jane B103 Doe's parents prior to the digital penetration.

1152. Plaintiff Jane B103 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1153. On all occasions Plaintiff Jane B103 Doe was assaulted by Defendant Nassar, Plaintiff Jane B103 Doe's father was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B103 Doe so that her father could not observe or ascertain the actions he was taking.

1154. As a result of Defendant Nassar's abuse, Plaintiff Jane B103 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, fear and distrust of male doctors, and post-traumatic stress disorder with physical manifestations.

1155. Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B103 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**MMM. JANE B104 DOE**

1156. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1157. From approximately 1986 until 2003, Plaintiff Jane B104 Doe was a competitive gymnast who sustained gymnastics-related lower body injuries.

1158. Plaintiff Jane B104 Doe was a member of Great Lakes Gymnastics beginning in 1986 and became a member of Defendant Twistars from its inception until 2003.

1159. Plaintiff Jane B104 Doe was a member of Defendant USAG from 1995 until 2003 and was a national team member in 2001.

1160. Secondary to her injuries, Plaintiff Jane B104 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic. Plaintiff Jane B104 Doe also received treatment from Defendant Nassar at Defendant Twistars facility and at Great Lakes Gymnastics' facility.

1161. When Plaintiff Jane B104 Doe began treating with Defendant Nassar, she was a minor.

1162. On several separate occasions from 1994 until 2003, Defendant Nassar digitally penetrated Plaintiff Jane B104 Doe's vagina without medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B104 Doe's injuries.

1163. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B104 Doe or Plaintiff Jane B104 Doe's parents prior to the digital penetration.

1164. In total, from 1994 until 2003, Defendant Nassar assaulted Plaintiff Jane B104 Doe on at least 50 separate occasions.

1165. As a result of Defendant Nassar's abuse, Plaintiff Jane B104 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression ulcers, sleep disturbances, increased stress and embarrassment,

endometriosis, ovarian cysts, and post-traumatic stress disorder with physical manifestations.

1166. Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B104 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**NNN.  JANE B105 DOE**

1167. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1168. From approximately 1997 until 2004, Plaintiff Jane B105 Doe was a competitive gymnast who sustained various gymnastics related injuries.

1169. From 1998 to 2000, Plaintiff Jane B105 Doe was a member of Defendant USAG and a national team member.

1170. Secondary to her injuries, Plaintiff Jane B105 Doe was referred by Defendant Kovan to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1171. When Plaintiff Jane B105 Doe began treating with Defendant Nassar, she was a minor.

1172. On several separate occasions between 1997 and 2004, Defendant Nassar digitally penetrated Plaintiff Jane B105 Doe's vagina without the use of medical gloves or lubricant under the guise it was under legitimate medical treatment for Plaintiff Jane B105 Doe's gymnastics-related injuries.

1173. Between 1997 and 2004, Defendant Nassar assaulted Plaintiff Jane B105 Doe on at least 100 separate occasions.

1174. On all occasions Plaintiff Jane B105 Doe was assaulted by Defendant Nassar, Plaintiff Jane B105 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B105 Doe so that her mother could not observe or ascertain the actions he was taking.

1175. As a result of Defendant Nassar's abuse, Plaintiff Jane B105 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, fertility issues, increased stress leading to ulcers, and post-traumatic stress disorder with physical manifestations.

1176. Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B105 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

1177. Plaintiff Jane B105 Doe is married to Plaintiff John B105 Doe.

**OOO. JANE B106 DOE**

1178. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1179. From 2009 until 2016, Plaintiff Jane B106 Doe was a competitive gymnast when she sustained several various gymnastics-related injuries.

1180. From 2006 to 2015, Plaintiff Jane B106 Doe was a member of Defendant USAG.

1181. Secondary to her injuries, Plaintiff Jane B106 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1182. On several separate occasions between 2009 and 2016, Defendant Nassar digitally penetrated Plaintiff Jane B106 Doe's vagina without the use of medical gloves or

lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B106 Doe's injuries.

1183.   In total, Defendant Nassar assaulted Plaintiff Jane B106 Doe on at least 20 separate occasions.

1184.   Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B106 Doe or Plaintiff Jane B106 Doe's parents prior to the digital penetrations.

1185.   Plaintiff Jane B106 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1186.   Some or all of this conduct occurred after Defendant MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1.) having another person (resident, nurse, etc.) in the room while he performed treatments; 2.) procedures were to involve little to no skin contact; 3.) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

1187.   On all occasions Plaintiff Jane B106 Doe was assaulted by Defendant Nassar, Plaintiff Jane B106 Doe's mother was present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B106 Doe so that her mother could not observe or ascertain the actions he was taking.

1188.   As a result of Defendant Nassar's abuse, Plaintiff Jane B106 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, trust issues, and post-traumatic stress disorder with physical manifestations requiring therapy.

1189. Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B106 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**PPP.   SKYLER COOMER**

1190. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1191. From approximately 2011 to 2016, Plaintiff Coomer was a competitive gymnast who sustained gymnastics-related injuries.

1192. Plaintiff Coomer has been a member of Defendant USAG from 2008 until present day.

1193. In 2012, after sustaining a hamstring injury, Plaintiff Coomer was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1194. When Plaintiff Coomer began treating with Defendant Nassar, she was a minor.

1195. On at least one occasion in 2012, Defendant Nassar digitally penetrated Plaintiff Coomer's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Coomer's hamstring injury.

1196. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Coomer or Plaintiff Coomer's parents prior to the digital penetration.

1197. Plaintiff Coomer did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1198. On all occasions Plaintiff Coomer was assaulted by Defendant Nassar, Plaintiff Coomer's mother and sister were present in the room, however, Defendant Nassar would position

himself and Plaintiff comer so that her mother could not observe or ascertain the actions he was taking.

1199. As a result of Defendant Nassar's abuse, Plaintiff Coomer suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, increased stress and embarrassment, and post-traumatic stress disorder with physical manifestations.

1200. Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Coomer believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**QQQ. JANE B108 DOE**

1201. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1202. From approximately 2011 until 2016, Plaintiff Jane B108 Doe was a competitive gymnast and member of Defendant USAG.

1203. In 2008, Plaintiff Jane B108 Doe was a competitive gymnast who sustained a gymnastics related injury.

1204. In 2008, Plaintiff Jane B108 Doe was a member of Defendant USAG.

1205. Secondary to her injuries, Plaintiff Jane B108 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1206. When Plaintiff Jane B108 Doe began treating with Defendant Nassar, she was a minor.

1207. On at least one occasion in 2008, Defendant Nassar digitally penetrated Plaintiff Jane B108 Doe's anus without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B108 Doe's injury.

1208. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B108 Doe or Plaintiff Jane B108 Doe's parents prior to the digital penetration.

1209. Plaintiff Jane B108 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1210. On all occasions Plaintiff Jane B108 Doe was assaulted by Defendant Nassar, Plaintiff Jane B108 Doe's father was present in the room, however, Defendant Nassar would position himself and Plaintiff comer so that her mother could not observe or ascertain the actions he was taking.  On at least one occasion in 2008, Defendant Nassar urged Plaintiff Jane B108 Doe's father to leave the room prior to the penetration several times—Plaintiff Jane B108 Doe's father refused to do so.

1211. As a result of Defendant Nassar's abuse, Plaintiff Jane B108 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to, increased anxiety and depression, increased stress and embarrassment, sleep disturbances and post-traumatic stress disorder with physical manifestations requiring therapy.

1212. Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B108 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

**RRR. <u>JANE B109 DOE</u>**

1213.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1214.  From 2005 until 2008, Plaintiff Jane B109 Doe was a member of Defendant MSU's varsity Swim and Dive team.

1215.  After sustaining a back injury as a member of Defendant MSU's Swim and Dive Team, Plaintiff Jane B109 Doe was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic and Jenison Fieldhouse.

1216.  On at least two separate occasions between 2006 and 2007, Defendant Nassar digitally penetrated Plaintiff Jane B109 Doe's vagina without the use of medical gloves or lubricant under the guise it was legitimate medical treatment for Plaintiff Jane B109 Doe's back injury.

1217.  Defendant Nassar did not give prior notice of obtain consent from Plaintiff Jane B109 Doe prior to the digital penetration

1218.  Plaintiff Jane B109 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1219.  As a result of Defendant Nassar's abuse, Plaintiff Jane B109 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, post-partum depression, increased stress, sleep disturbances, trust issues, and post-traumatic stress disorder with physical manifestations requiring therapy.

1220.  Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B109 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

1221. Plaintiff Jane B109 Doe is married to Plaintiff John B109 Doe.

**SSS.**   **JANE B110 DOE**

1222. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1223. From 2000 until 2010, Plaintiff Jane B110 Doe was a competitive gymnast and member of Defendant USAG.

1224. In approximately 2008, Plaintiff Jane B110 Doe sustained a gymnastics-related back injury and was referred to treat with Defendant Nassar at Defendant MSU's Sports Medicine Clinic.

1225. Additionally, beginning in and around 2008, Plaintiff Jane B110 Doe also treated with Defendant Nassar at his personal residence.

1226. When Plaintiff Jane B110 Doe began treating with Defendant Nassar, she was a minor.

1227. On several separate occasions between 2008 and 2014, Defendant Nassar digitally penetrated Plaintiff Jane B110 Doe's vagina and anus under the guise it was legitimate medical treatment for Plaintiff Jane B110 Doe's back injury.

1228. Defendant Nassar did not give prior notice or obtain consent from either Plaintiff Jane B110 Doe or Plaintiff Jane B110 Doe's parents prior to the digital penetration.

1229. In total, Defendant Nassar assaulted Plaintiff Jane B110 Doe on at least 50 separate occasions.

1230. Plaintiff Jane B110 Doe did not treat or intend to treat with Defendant Nassar for OB/GYN related issues.

1231. Some of this conduct occurred after Defendant MSU imposed a particular protocol for Defendant Nassar following the 2014 complaint, including but not limited to: 1.) having

another person (resident, nurse, etc.) in the room while he performed treatments; 2.) procedures were to involve little to no skin contact; 3.) procedures were to be explained in detail with another person in the room for both the explanation and the procedure.

1232. On all occasions Plaintiff Jane B110 Doe was assaulted by Defendant Nassar, Plaintiff Jane B110 Doe's parents were present in the room, however, Defendant Nassar would position himself and Plaintiff Jane B110 Doe so that her parents could not observe or ascertain the actions he was taking.

1233. As a result of Defendant Nassar's abuse, Plaintiff Jane B110 Doe suffers from severe mental, physical, and emotional symptoms including, but not limited to increased anxiety and depression, trust issues, loss of educational opportunities, fear and mistrust of male doctors, and post-traumatic stress disorder with physical manifestations.

1234. Based on Defendant Nassar's representations, and the representations of other individuals affiliated with Defendant MSU, Plaintiff Jane B110 Doe believed the "treatment" she received to be legitimate medical procedures until reports resurfaced in or about September 2016 of similar allegations made by other women.

## VI.    FRAUDULENT CONCEALMENT

### A.    THE MSU DEFENDANTS

1235. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1236. Plaintiffs sought treatment at Defendant MSU's Sports Medicine Clinic and were in a special relationship in which they paid or were billed for medical treatment.

1237. Given the special relationship, the MSU defendants had a duty to disclose and to warn and protect the athletes and patients who sought treatment at its facility with its doctor.

1238. Plaintiffs hereby allege that the MSU Defendants committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or the MSU Defendants at the time Defendant Nassar's sexual assaults occurred by making material misrepresentation(s) to Plaintiffs.

1239. Defendant MSU's sports medicine trainers, employees, staff, managers, supervisors, directors, agents, apparent agents, and/or servants made material representation(s) to Plaintiffs involving a past or existing fact by making statements that:

　　a.　Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

　　b.　Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

　　c.　Defendant Nassar's conduct was "not sexual abuse;" and

　　d.　That Defendant Nassar's conduct and "treatments" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure."

1240. The material representation(s) to Plaintiffs were false in that the MSU Defendant had previously received strikingly similar complaints of abuse by Defendant Nassar from other students and patients and knew that the appropriateness of his "treatments" had been questioned in the past.

1241. When the MSU Defendants made the material misrepresentation(s) to Plaintiffs, they knew that they were false and/or they made them recklessly, without any knowledge of their truth and as a positive assertion, because they knew that Defendant MSU had previously received strikingly similar complaints of abuse by Defendant Nassar from other students and patients and knew that the appropriateness of his "treatments" had been questioned in the past.

1242. Defendants made the material representation(s) with the intent that the material representation(s) should be acted or relied upon by Plaintiffs or their parents, such that Plaintiffs:

    a. Should believe that the "treatments" were in fact legitimate medical "treatments;"

    b. Should believe that the "treatments" were proper, appropriate, and legitimate;

    c. Should not believe that they had been sexually assaulted;

    d. Should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

    e. Should continue the "treatments" so that he could continue to sexually assault them;

    f. Should not question and/or report the conduct to appropriate authorities; and

    g. Should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant MSU.

1243. Plaintiffs acted in reliance upon the material representation(s), in that Plaintiffs:

    a. Reasonably believed that the "treatments" were in fact "treatments;"

    b. Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

    c. Reasonably did not believe that they had been sexually assaulted;

    d. Believed that they should continue the "treatment[s];"

      e.  Did not believe that they should question and/or report the conduct to appropriate authorities; and,

      f.  Did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or the MSU Defendants.

1244.  Plaintiffs thereby suffered injury, in that Plaintiffs:

      a.  Could not stop the sexual assault;

      b.  Continued to undergo the "treatment[s]" and sexual assaults;

      c.  And suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity, among other injuries more fully described below.

1245.  The MSU Defendants concealed the fraud by failing to disclose, warn, or protect, or by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

      a.  Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal or anal penetration;

      b.  Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

      c.  Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

      d.  Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.  Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

    f.  Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

    g.  Making the statement that the position of his hand was in an appropriate place— when it was not—while he was digitally penetrating Plaintiffs, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1246. Defendants' agents and employees concealed the fraud by affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they:

    a.  Ignored, refused, and failed to inquire, question, and investigate the complaints and take action regarding Defendant Nassar's "treatments;"
    b.  Did not create a policy to require adults, parents, chaperones, guardians, and/or caregiver's presence during an examination of a minor or female patient by a physician; and

    c.  Did not enforce the restrictions that had been put into place in 2014 by Defendant MSU restricting Defendant Nassar's examination and treatment of patients.

1247. Plaintiffs did not know, could not have reasonably known, and were reasonably unaware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU until the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or sometime thereafter, for the following reasons among others:

    a.  Plaintiffs reasonably relied on the Fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

    b.  Plaintiffs were minors and/or young females at the time of the assaults and "treatments;"

c.  Plaintiffs did not know what a legitimate and appropriately performed intra-vaginal or intra-anal/rectal treatment was like because they had never experienced and/or had an intra-vaginal or intra-anal/rectal treatment before;

d.  Plaintiffs had never experienced and/or had an intra-vaginal treatment before because they had never been treated by a physician and/or therapist that performed them;

e.  Plaintiffs did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because they had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

f.  Plaintiffs had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology;

g.  Plaintiffs had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.  Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiffs to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i.  Plaintiffs could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

j.  In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the

parents from discovering that his "treatments" were sexual assaults and informing Plaintiffs that they had been sexually assaulted and had a cause of action against Defendant Nassar;

k.  Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l.  Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m.  Plaintiffs were intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n.  Plaintiffs trusted Defendant Nassar due to his notoriety and reputation;

o.  Plaintiffs trusted Defendant Nassar because he groomed them to believe that his "treatments" were legitimate;

p.  Plaintiffs trusted and felt that Defendant Nassar was a friend because at appointments he gave Plaintiffs gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust;

q.  Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of the civil justice system;

r.  Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors and young females who were not knowledgeable or aware of any remedy at law;

s.  Plaintiffs had no reason to believe or be aware that they could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

169

t.  Plaintiffs were never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment[s]" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

u.  Plaintiffs were compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport therefore the "treatments" were legitimate and appropriate;

v.  Plaintiffs were minors and young athletes; therefore, they were easily suggestible;

w.  Plaintiffs had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar;

x.  Plaintiffs reasonably and justifiably relied on the Fraud committed by the MSU Defendants by their material misrepresentations and concealment of the true nature of Defendant Nassar's "treatments" and his actions;

y.  Plaintiffs trusted that the MSU Defendants would protect Plaintiffs from harm and not hire, employ, and/or retain a physician that had, was, or would perform illegitimate and/or inappropriate "treatments," engage in inappropriate conduct, and/or sexually assault patients, students, or athletes;

z.  Plaintiffs were never told by the MSU Defendants that Defendant Nassar's conduct and "treatments" were inappropriate and sexual assault—to the contrary Plaintiffs were told that Defendant Nassar's conduct and "treatments" were appropriate and legitimate treatments, "not sexual abuse," "medically appropriate," and "not of a sexual nature" from a "world-renowned" and "Olympic doctor," who "knew what he was doing" and that Plaintiffs, because of their age and inexperience with intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exams, "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure;"

aa. Plaintiffs reasonably and justifiably relied on the MSU Defendants to protect them; and

bb. Plaintiffs were compelled by the MSU Defendants to undergo "treatments" like other athletes if they wanted to continue participating and competing in their relevant sport and therefore the "treatments" were legitimate and appropriate.

1248. The actions and inactions of the MSU Defendants and Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

1249. At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant MSU.

1250. The actions and inactions of the sports medicine trainers, employees, staff, managers, supervisors, directors, and the MSU Defendants, as described in the preceding paragraphs constituted Fraudulent Concealment.

1251. At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

**B.     DEFENDANT USA GYMNASTICS**

1252. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1253. Plaintiffs sought and received medical treatment from Defendant USAG and were in a special relationship with Defendant USAG due to its provision of medical treatment to its athletes.

1254. Given the special relationship, Defendant USAG had a duty to disclose and to warn and protect the athletes and patients who sought treatment at its sanctioned events and member gyms with its doctor.

1255. Plaintiffs incorporate by reference the Fraud claims made below and hereby allege that Defendant USAG committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant USAG at the

time his sexual assaults occurred by Defendant Nassar making a material representation(s) to Plaintiffs involving a past or existing fact by:

    a. Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b. Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c. Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d. Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e. Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

    f. Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

    g. Making a statement, explaining to Plaintiff and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiffs, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1256. The material representation(s) to Plaintiffs by Defendant Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

1257. When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

1258. Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

    a.  Should believe that the "treatments" were in fact "treatments;"

    b.  Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

    c.  Should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

    d.  Should continue the "treatment[s]" so that he could continue to sexually assault them;

    e.  Should not question and/or report the conduct to appropriate authorities; and,

    f.  Should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant USAG.

1259.  Plaintiffs acted in reliance upon Defendant Nassar's material representation(s), in that Plaintiffs:

    a.  Reasonably believed that the "treatments" were in fact "treatments;"

    b.  Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

    c.  Reasonably did not believe that they had been sexually assaulted;

    d.  Believed that they should continue the "treatment[s];"

    e.  Did not believe that they should question and/or report the conduct to appropriate authorities; and did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant USAG.

1260.  Plaintiffs thereby suffered injury, in that Plaintiffs:

    a.  Could not stop the sexual assault;

    b.  Continued to undergo the "treatment[s]" and sexual assaults; and,

    c.  Suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of

self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity, among other injuries more fully described below.

1261.   Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

    a.   Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.   Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.   Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d.   Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.   Making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

    f.   Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

    g.   Making a statement, explaining to Plaintiffs and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1262.   Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

174

    a. Positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

    b. Dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

    c. Prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

    d. Did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

    e. Did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

    f. Gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

1263. The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

1264. At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant USAG and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant USAG.

1265. At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## C.    **DEFENDANTS TWISTARS & JOHN GEDDERT**

1266. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs

175

1267. Plaintiffs sought and received medical treatment from Defendants Twistars and Geddert and were in a special relationship with Defendants Twistars and Geddert due to their provision of medical treatment to their athletes.

1268. Given the special relationship, Defendants Twistars and Geddert had a duty to disclose and to warn and protect the athletes and patients who sought treatment at its sanctioned events and facilities with its doctor.

1269. Plaintiffs incorporate by reference the Fraud claims made below and hereby allege that Defendant Twistars and Defendant John Geddert committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant Twistars and Defendant John Geddert at the time his sexual assaults occurred by Defendant Nassar making a material representation(s) to Plaintiffs involving a past or existing fact by:

    a.  Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.  Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.  Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d.  Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.  Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

    f.  Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.  Making a statement, explaining to Plaintiff and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiffs, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1270.  The material representation(s) to Plaintiffs by Defendant Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

1271.  When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

1272.  Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

a.  Should believe that the "treatments" were in fact "treatments;"

b.  Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.  Should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

d.  Should continue the "treatment[s]" so that he could continue to sexually assault them;

e.  Should not question and/or report the conduct to appropriate authorities; and,

f.  Should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant Twistars or Defendant Geddert.

1273.  Plaintiffs acted in reliance upon Defendant Nassar's material representation(s), in that Plaintiffs:

a.  Reasonably believed that the "treatments" were in fact "treatments;"

177

b.  Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.  Reasonably did not believe that they had been sexually assaulted;

d.  Believed that they should continue the "treatment[s];"

e.  Did not believe that they should question and/or report the conduct to appropriate authorities; and did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant Twistars or Defendant Geddert.

1274.  Plaintiffs thereby suffered injury, in that Plaintiffs:

a.  Could not stop the sexual assault;

b.  Continued to undergo the "treatment[s]" and sexual assaults; and,

c.  Suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity, among other injuries more fully described below.

1275.  Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

a.  Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b.  Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.  Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d.  Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.  Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

f.  Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g.  Making a statement, explaining to Plaintiffs and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1276.  Defendant Nassar concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a.  Positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b.  Dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

c.  Prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

d.  Did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

e.  Did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, or any similar policies established by Defendant Twistars or Defendant Geddert, by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

      f.   Gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

1277.   The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

1278.   At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant Twistars and Defendant Geddert and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant Twistars and Defendant Geddert.

1279.   At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## D.      DEFENDANT NASSAR

1280.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1281.   Plaintiffs had a special relationship with Defendant Nassar given their physician-patient relationship.

1282.   Given the special relationship, Defendant Nassar had an affirmative duty to disclose and to warn and protect athletes and patients who sought his medical treatment from sexual abuse, assault, and molestation.

1283.   Plaintiffs hereby allege that Defendant Nassar committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiffs' claims and that Plaintiffs had a cause of action against Defendant Nassar and/or Defendant MSU at the time his sexual assaults occurred making a material representation(s) to Plaintiffs involving a past or existing fact by:

a. Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b. Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c. Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

d. Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e. Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

f. Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

g. Making a statement, explaining to Plaintiff and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiffs, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1284. The material representation(s) to Plaintiffs by Defendant Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

1285. When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

1286. Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs, in that Plaintiffs:

a. Should believe that the "treatments" were in fact "treatments;"

b. Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

181

    c.  Should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

    d.  Should continue the "treatment[s]" so that he could continue to sexually assault them;

    e.  Should not question and/or report the conduct to appropriate authorities; and,

    f.  Should not reasonably believe and not be aware of a possible cause of action that they have against Defendant Nassar and/or Defendant Twistars or Defendant Geddert.

1287.  Plaintiffs acted in reliance upon Defendant Nassar's material representation(s), in that Plaintiffs:

    a.  Reasonably believed that the "treatments" were in fact "treatments;"

    b.  Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

    c.  Reasonably did not believe that they had been sexually assaulted;

    d.  Believed that they should continue the "treatment[s];"

    e.  Did not believe that they should question and/or report the conduct to appropriate authorities; and did not reasonably believe that they had and were not aware of a possible cause of action that they had against Defendant Nassar and/or Defendant Twistars or Defendant Geddert.

1288.  Plaintiffs thereby suffered injury, in that Plaintiffs:

    a.  Could not stop the sexual assault;

    b.  Continued to undergo the "treatment[s]" and sexual assaults; and,

    c.  Suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full

enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity, among other injuries more fully described below.

1289.   Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiffs that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiffs involving a past or existing fact by:

    a.   Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

    b.   Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

    c.   Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"

    d.   Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

    e.   Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

    f.   Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [their] ribs;" and,

    g.   Making a statement, explaining to Plaintiffs and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

1290.   Defendant Nassar concealing the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

    a.   Positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

183

b. Dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

c. Prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiffs so that he could sexually assault Plaintiffs;

d. Did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

e. Did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, or any similar policies established by Defendant Twistars or Defendant Geddert, by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

f. Gave Plaintiffs, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

1291. The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

1292. At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendants MSU, USAG, and Twistars and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendants MSU, USAG, and Twistars.

1293. At all times material hereto, Plaintiffs were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

## VII.    CLAIMS AGAINST MICHIGAN STATE UNIVERSITY DEFENDANTS

### A.    COUNT ONE

### VIOLATIONS OF TITLE IX
### 20 U.S.C. §1681(a), *et seq.*
### PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST DEFENDANTS MSU AND MSU TRUSTEES

1294.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1295.   Title IX's statutory language states, "No *person* in the United States shall on the basis of sex, be … subject to discrimination under any education program or activity receiving Federal financial assistance …"[35]

1296.   Plaintiffs are "persons" under the Title IX statutory language.

1297.   Defendant MSU receives federal financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681(a), *et seq.*

1298.   Defendant MSU is required under Title IX to investigate allegations of sexual assault, sexual abuse, and sexual harassment.

1299.   The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students and third parties.[36]

1300.   Defendant Nassar's actions and conduct were carried out under one of Defendant MSU's

---

[35] 20 U.S.C. § 1681(a) (emphasis added).
[36] U.S. Dept. of Ed., Office of Civil Rights, Q & A on Title IX and Sexual Misconduct, Sept. 22, 2017, at 1, 2, 3, https://www2.ed.gov/about/offices/list/ocr/docs/qa-title-ix-201709.pdf.

education programs or activities, which provides medical treatment to students, athletes, and the public.

1301. Defendant Nassar's conduct and actions toward Plaintiffs, that being nonconsensual digital vaginal and anal penetration, touching of Plaintiffs vaginal area, and touching of Plaintiffs breasts constitutes sex discrimination under Title IX.

1302. As early as 1997, an "appropriate person" at Defendant MSU had actual knowledge of the sexual assault, abuse, and molestation committed by Defendant Nassar by virtue of Plaintiff Boyce's statements to Defendant Klages regarding her sexual assault by Defendant Nassar.

1303. Plaintiff Boyce's statements to Defendant Klages were further corroborated to Defendant Klages by Plaintiff Jane B8 Doe.

1304. Defendant Klages was an "appropriate person" at Defendant MSU because, as the head gymnastics coach, she had control and autonomy over all aspects of Defendant MSU's varsity gymnastics program, including making personnel decisions.

1305. In addition, Defendant Teachnor-Hauk was an "appropriate person" at Defendant MSU because, as head athletic trainer, Defendant Teachnor-Hauk had the authority to institute corrective measures to ensure that student athletes were not being sexually assaulted.

1306. Moreover, both Defendant Klages and Defendant Teachnor-Hauk, as high-level officials employed at MSU, each had the authority and autonomy to raise complaints regarding sexual abuse by a fellow MSU employee to the highest levels at MSU, such as to then-President Simon, then-Athletic Director Mark Hollis, or Provost June Pierce Youatt.

1307. In addition, the MSU Defendants were notified about Defendant Nassar's sexual abuse and molestation by Christie Achenbach in or around 1999 and by Tiffany Thomas Lopez in 2000 on more than one occasion.

1308. Among the persons notified about Defendant Nassar's sexual abuse was Defendant Teachnor-Hauk, who was serving in a supervisory role to other athletic trainers and was an "appropriate person."

1309. In approximately 2001 or 2002, Jennifer Rood Bedford, an MSU student athlete on the women's volleyball team, was sexually assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including trainers.[37]

1310. According to Ms. Bedford, Nassar was known among the women's volleyball team as the "crotch doc" because of his "unconventional methods" of treating sports injuries with vaginal penetrations.

1311. Ms. Bedford was extremely uncomfortable with the fact that she had been assaulted and reported the incident to MSU athletic trainer Lianna Hadden.

1312. Ms. Hadden dissuaded Ms. Bedford from filing a formal complaint against Nassar because it would result in an investigation against Nassar, making an accusation against Nassar and statement that she felt that what Nassar did was unprofessional or criminally wrong.

1313. Upon information and belief, in approximately 2004, Defendant Gary E. Stollak was told by Kyle Stephens—then 11 or 12 years old—that she had been abused by Defendant Nassar.

1314. Defendant Stollak did not report the abuse to law enforcement or to child protective services.

---

[37] *See* Nassar Victim: Jennifer Rood Bedford Statement, Jan. 16, 2018, Available at https://www.clickondetroit.com/video/nassar-victim-jennifer-rood-bedford-statement. Last accessed January 16, 2018.

1315.  The MSU Defendants failed to carry out their duties to investigate and take corrective action under Title IX following the complaints of sexual assault, abuse, and molestation in or around 1997/1998, 1999, 2000, 2001/2002, and 2004.

1316.  The MSU Defendants were notified again in 2014 of Defendant Nassar's conduct when Amanda Thomashow reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.[38]

1317.  Amanda Thomashow reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

   a.  Defendant Nassar was sexually aroused while touching her;

   b.  The appointment with Defendant Nassar did not end until she physically removed his hands from her body.

1318.  Three months after initiating an investigation, in July 2014, Amanda Thomashow's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "Not of a sexual nature."[39]

1319.  In addition, MSU produced two different versions of the report in response to the July 2014 investigation—one version was sent to Amanda Thomashow and a different version was sent to Defendant Nassar and other MSU personnel that contained a completely different and expanded conclusion section.

---

[38] *See*, At MSU: Assault, harassment and secrecy. Matt Mencarini, December 15, 2016. Available at http://www.lansingstatejournal.com/story/news/local/2016/12/15/michigan-state-sexual-assault- harassment-larry-nassar/94993582/, last accessed January 5, 2017.

[39] *Id*.

1320. The version of the report sent to Amanda Thomashow contained the following conclusion:

> We cannot find that the conduct was of a sexual nature. Thus, it did not violate the Sexual Harassment Policy. However, we find the claim helpful in that it allows us to examine certain practices at the MSU Sports Medicine Clinic.

1321. The other version of the report that Kristine Moore produced for Defendant MSU that was not provided to Amanda Thomashow contained the following conclusion:

> We cannot find that the conduct was of a sexual nature. Thus, it did not violate the Sexual Harassment Policy. However, we find the claim helpful in that it brought to light some significant problems that the practice will want to address.
>
> We find that whether medically sound or not, the failure to adequately explain procedures such as these invasive, sensitive procedures, is opening the practice up to liability and is exposing patients to unnecessary trauma based on the possibility of perceived inappropriate sexual misconduct. In addition, we find that the failure to obtain consent from patients prior to the procedure is likewise exposing the practice to liability. If procedures can be performed skin-on-skin or over clothes in the breast or pelvic floor area, it would seem patients should have the choice between the two. Having a resident, nurse or someone in room during a sensitive procedure protects doctors and provides patients with peace of mind. If "touching is what DO's do" and that is not commonly known, perhaps the practice will want to consider a disclaimer or information sheet with that information provided to the patient up front.
>
> Finally, we believe the practice should consider whether its procedure for intake of complaints about physicians' behavior is adequate. Ms. Thomashow claims she tried to file a complaint with the front desk receptionist, telling her that she was cancelling her appointment because she felt "violated." Whether this triggers a reporting protocol should be examined by the practice.

1322. The substantial difference in the two reports supports Defendant MSU's deliberate indifference to sexual assaults on its campus because the differences in the versions of the reports evidences an attempt to diminish the sexual abuse experienced by Amanda Thomashow.

1323. Following the 2014 investigation, Defendant Nassar became subject to new institutional

guidelines, including requirements that Defendant Nassar minimize or eliminate skin-to-skin contact and to have a chaperone in the room.[40]

1324. Defendant Strampel conceded to law enforcement that these institutional guidelines were illusory because no efforts were made to implement or enforce them.

1325. As a result, Defendant MSU took no proactive steps to reduce opportunities for future harassment and hid the full results of the investigation from Amanda Thomashow, which caused countless other women and girls to be sexually assaulted by Defendant Nassar.

1326. The MSU Defendants failed to adequately supervise or otherwise ensure Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge that Defendant Nassar posed a substantial risk of additional sexual abuse of the females whom he had unfettered access.

1327. After the 1997/1998, 1999, 2000, 2001/2002, and 2014 complaints to MSU employees or agents, Defendant Nassar continued to sexually assault, abuse, and molest individuals.

1328. The MSU Defendants acted with deliberate indifference to known acts of sexual assault, abuse, and molestation on its premises by:

   a. failing to investigate and address the prior allegations as required by Title IX;

   b. failing to adequately investigate and address the 1997, 1999, 2000, 2001/2002, and 2014 complaints regarding Defendant Nassar's conduct; and,

   c. failing to institute corrective measures to prevent Defendant Nassar from violating and sexually abusing other students and individuals, including minors.

1329. The MSU Defendants acted with deliberate indifference as its lack of response to the allegations of sexual assault, abuse, and molestation was clearly unreasonable in light of the known circumstances, including Defendant Nassar's actions with patients, female athletes,

---

[40] *Id.*

and his access to young girls and young women.

1330. The MSU Defendants' deliberate indifference was confirmed by the Department of Education's investigation into Defendant MSU's handling of sexual assault and relationship violence allegations which revealed:

    a. A sexually hostile environment existed and affected numerous students and staff on Defendant MSU's campus;

    b. That the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner caused and may have contributed to a continuation of the sexually hostile environment.[41]

1331. The MSU Defendants' responses were clearly unreasonable as Defendant Nassar continued to sexually assault female athletes, patients, and other individuals until he was discharged from the University in September 2016.

1332. Between the dates of approximately 1992 and 2016, the MSU Defendants acted in a deliberately indifferent, grossly negligent, and/or reckless manner when they failed to reasonably respond to Defendant Nassar's sexual assaults and sex-based harassment of Plaintiffs on and off school premises.

1333. The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received repeated notice of Defendant Nassar's wrongdoing subjected Plaintiffs and countless others to further sexual harassment and sexual assaults as well as a sexually hostile environment—effectively denying them all access to educational opportunities at MSU, including medical care.

1334. As a direct and/or proximate result of the MSU Defendants' actions and/or inactions,

---

[41] *See,* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf. Last accessed January 4, 2017.

Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1335. In the alternative, the actions or inaction of the MSU Defendants was deliberately indifferent or so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### B.   COUNT TWO

### SEX DISCRIMINATION
### 42 U.S.C. § 18116 (PATIENT PROTECTION AND AFFORDABLE CARE ACT § 1557) PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST DEFENDANTS MSU AND MSU TRUSTEES

1336.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1337.   Section 1557 of the Patient Protection and Affordable Care Act, which is codified at 42 U.S.C. § 18116, provides that:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under . . . title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under . . . title IX shall apply for purposes of violations of this subsection.

1338.   Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* prohibits sex discrimination in programs that receive federal financial assistance.

1339.   Plaintiffs as females have a right under 42 U.S.C. § 18116 to receive health care services free from discrimination on the basis of sex.

1340.   Plaintiffs are "individuals" within the meaning of 42 U.S.C. § 18116.

1341.   Defendant MSU receives Federal financial assistance within the meaning of 42 U.S.C. § 18116 because it receives federal financial assistance such as credits, subsidies, or contracts of insurance.

1342. Defendants MSU and MSU Trustees employed the services of Defendant Nassar, doctors, and other professional and non-professional health care providers who cared for Plaintiffs and held themselves out to the public as competent, careful, and experienced in the care and treatment of patients.

1343. Plaintiffs sought medical care from Defendant Nassar at the MSU Sports Medicine Clinic, Jenison Fieldhouse, and other locations for a myriad of injuries as identified in each Plaintiffs' specific allegations.

1344. Plaintiffs expected to receive medical care for their injuries without being sexually assaulted and without fear of sexual harassment or assault.

1345. Defendant Nassar's conduct and actions toward Plaintiffs, that being nonconsensual and assaultive digital vaginal and anal penetration, touching of Plaintiffs vaginal area, inappropriate comments, and touching of Plaintiffs' breasts constitutes sex discrimination under Title IX and 42 U.S.C. § 18116, and otherwise denied each individual Plaintiff the benefits of appropriate medical care.

1346. Defendants MSU and MSU Trustees, and Defendants Strampel, Kovan, Dietzel, Teachnor-Hauk, and Klages knew or should have known of Nassar's abuse yet failed to take corrective action.

1347. Defendant MSU and MSU Trustees are vicariously and/or contractually liable for the actions of its principals, employees, agents, and representatives.

1348. Defendants MSU, MSU Trustees, Strampel, Kovan, Dietzel, and Klages supervised Nassar and/or were in a position to take appropriate action upon learning of concerns of misconduct as early as 1997.

1349. Defendants MSU, MSU Trustees, Strampel, Kovan, Dietzel, and Klages are directly liable for their failure to train, educate, and supervise.

1350. Defendants MSU, MSU Trustees, Strampel, Kovan, Dietzel, and Klages failed to properly train and supervise Nassar related to his treatment of Plaintiffs and with respect to promulgating and enforcing policies and procedures related to patient safety (*e.g.* use of gloves; consent; chaperones, etc.).

1351. Because of Defendants inaction and deliberate indifference, Defendants forced Plaintiffs to endure unnecessary pain, trauma, humiliation, and duress.

1352. Because of Plaintiffs' sex, Defendants treated Plaintiffs with a lack of care, dignity, and respect.

1353. The conduct of Defendants MSU and MSU Trustees described above constitutes sex discrimination against Plaintiffs.

1354. Defendants MSU and MSU Trustees perpetrated this discrimination with malice, deliberate disregard for, or deliberate or reckless indifference to Plaintiffs' rights.

1355. The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received repeated notice of Defendant Nassar's wrongdoing subjected Plaintiffs and countless others to further sexual harassment and sexual assaults as well as a sexually hostile environment—effectively denying them all access to any health program or activity at MSU and effectively denying them the benefits of appropriate medical care.

1356. As a direct and/or proximate result of the MSU Defendants' actions and/or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment,

loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1357. In the alternative, the actions or inaction of the MSU Defendants was deliberately indifferent or so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### C.     COUNT THREE

<u>**VIOLATION OF CIVIL RIGHTS**</u>
<u>**42 U.S.C. § 1983**</u>
<u>**PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST DEFENDANT KLAGES, DEFENDANT STRAMPEL, DEFENDANT KOVAN, DEFENDANT DIETZEL, DEFENDANT LEMMEN, DEFENDANT TEACHNOR-HAUK, DEFENDANT STOLLAK, AND DEFENDANT NASSAR**</u>

1358.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1359.   Plaintiffs, as females, are members of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

1360.   Plaintiffs also enjoy the constitutionally protected substantive due process right to be free from the invasion of bodily integrity through sexual assault, abuse, or molestation under the Fourteenth Amendment to the United States Constitution.

1361.   At all relevant times, Defendants Klages, Strampel, Kovan, Dietzel, Lemmen, Teachnor-Hauk, Stollak, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

1362.   The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, including the right to be free from sexual assault, of which reasonable persons in their positions should have known.

1363.   At all relevant times, Defendants Klages, Strampel, Dietzel, and Kovan had the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives, in the appropriate manner of detecting, reporting, and preventing sexual

abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice, failed to do so with deliberate indifference.

1364. At all relevant times, Defendants Strampel, Dietzel, and Kovan acted in a supervisory role to Defendant Nassar through their roles at Defendant MSU's Sports Medicine Clinic, MSU's College of Osteopathic Medicine, and other affiliated MSU departments or institutions.

1365. At all relevant times, Defendant Klages, as the head coach of the MSU Women's Gymnastics Team, acted in a supervisory role to Defendant Nassar while he was acting as team physician to the MSU Women's Gymnastics Team.

1366. As a matter of custom, policy, and/or practice, Defendant Klages had the ultimate responsibility and authority to investigate complaints from her athletes that involved allegations of impropriety or sexual assault by her team physician.

1367. As a matter of custom, policy, and/or practice, Defendants Klages, Strampel, Dietzel, and Kovan had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to students, patients, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

1368. Defendant Lemmen's actions in assisting to exonerate Defendant Nassar from wrongdoing in response to the 2014 Title IX investigation and Defendant Lemmen's removal of Defendant Nassar's patient medical records from Defendant MSU's Sports Medicine Clinic at Defendant Nassar's request demonstrate the existence of an agreement or conspiracy between Defendant Nassar and Defendant Lemmen to deprive Plaintiffs of their constitutional rights.

1369. Defendant Teachnor-Hauk's actions in assisting to exonerate Defendant Nassar from wrongdoing in response to the 2014 Title IX investigation, her statements to discourage Tiffany Thomas Lopez from pursuing further action against Defendant Nassar, and her statements to law enforcement denying the existence of any prior complaints about Defendant Nassar demonstrate the existence of an agreement or conspiracy between Defendant Nassar and Defendant Teachnor-Hauk to deprive Plaintiffs of their constitutional rights.

1370. Defendants Klages, Strampel, Dietzel, Lemmen, Kovan, Teachnor-Hauk, Stollak, and Nassar had a duty to prevent sexual assault, abuse, and molestation of MSU's patients, athletes, and other members of the public who utilize MSU's resources, those duties arising under the above-referenced constitutional rights.

1371. Defendant MSU's internal policies provide that "[a]ll University employees ... are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They state further: "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event . . . ."

1372. Defendant Klages violated the aforementioned internal policies in or around 1997 when Plaintiff Boyce and Plaintiff Jane B8 Doe told Defendant Klages that they had been sexually assaulted by Defendant Nassar, and Defendant Klages refused to report the incident and instead intimidated, humiliated, and embarrassed Plaintiffs Boyce and Jane B8 Doe.

1373. Defendant Klages's violation of the policy by refusing to take any action in response to legitimate and credible claims of sexual assault by Plaintiffs Boyce and Jane B8 Doe

resulted in Plaintiffs' continued violations of their constitutional rights, including their Due Process right to bodily integrity, which includes the right to be free from sexual assaults.

1374. Defendant Klages's actions as alleged above also demonstrate the existence of an agreement or conspiracy between Defendant Nassar and Defendant Klages to deprive Plaintiffs of their constitutional rights.

1375. Defendant MSU's aforementioned internal policies were violated in or around 1999 when Christie Achenbach reported sexual assault, abuse, and molestation by Defendant Nassar to MSU representatives including trainers and coaches, including Kelli Bert, and no action was taken to address her complaints.

1376. Defendant MSU's aforementioned internal policies were also violated in or around 2000 when Tiffany Thomas Lopez reported sexual assault, abuse, and molestation by Defendant Nassar to Defendant Teachnor-Hauk and other MSU representatives, including trainers, and no action was taken to address her complaints.

1377. Defendant MSU's aforementioned internal policies were also violated in or around 2001/2002 when Jennifer Rood Bedford reported sexual assault, abuse, and molestation by Defendant Nassar to Lianna Hadden and other MSU representatives, including trainers, and no action was taken to address her complaints.

1378. At all relevant times, Defendant MSU had a policy requiring MSU employees to immediately report suspected child abuse, sexual assault, and child pornography.[42]

---

[42] *See*, President Lou Anna K. Simon reminds Michigan State employees of obligation to report sexual assault, Brandon Howell, August 17, 2012, available at, http://www.mlive.com/lansing-news/index.ssf/2012/08/president_lou_anna_k_simon_rem.html, Last accessed Feb. 17, 2018 ("Simon writes in the e-mail … 'I write to remind University employees about the reporting protocols for suspected child abuse, child pornography, and allegations of sexual assault.' Jason Cody, a spokesperson for the university said the protocols outlined in Simon's email **'long have been in place for employees.'**")(emphasis added).

1379.   Defendant Klages violated this policy in or around 1997/1998.

1380.   Defendant Teachnor-Hauk violated this policy in or around 2000.

1381.   Defendant Stollak violated this policy in or around 2004.

1382.   Ultimately Defendants Klages, Strampel, Dietzel, Lemmen, Kovan, Stollak, Teachnor-Hauk failed to adequately and properly investigate the complaints of Plaintiffs or other similarly situated individuals including but not limited to failing to:

    a.   Perform a thorough investigation into improper conduct by Defendant Nassar with Plaintiffs after receiving complaints in 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014;

    b.   Thoroughly review and investigate all policies, practices, procedures, and training materials related to the circumstances surrounding the conduct of Defendant Nassar;

    c.   Recognize sexual assault when reported in 2014 and permitted university officials to deem sexual assault as "medically appropriate" and "not of a sexual nature;" and

    d.   Ensure all institutional guidelines issued following the 2014 investigation into Defendant Nassar's conduct were satisfied.

1383.   As indicated in the U.S. Department of Education Office of Civil Rights report, the MSU Defendants had a culture that permitted a sexually hostile environment to exist affecting numerous individuals on Defendant MSU's campus, including Plaintiffs.

1384.   Also indicated in the report was Defendant MSU's custom, practice, and/or policy of failing to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which caused and may have contributed to a continuation of the

sexually hostile environment.

1385. By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiffs, and by failing to appropriately respond to reports of Defendant Nassar's sexual assault, abuse, and molestation that was so clearly unreasonable that it amounted to gross negligence and deliberate indifference, Defendants Klages, Strampel, Dietzel, Lemmen, Teachnor-Hauk, Kovan, and Stollak are liable to Plaintiffs pursuant to 42 U.S.C. § 1983.

1386. Defendants Klages, Strampel, Dietzel, Lemmen, Teachnor-Hauk, Kovan, and Stollak are also liable to Plaintiffs under 42 U.S.C. § 1983 for maintaining customs, policies, and practices which deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution, including Plaintiffs' constitutional right to bodily integrity.

1387. Defendants Klages, Strampel, Dietzel, Lemmen, Teachnor-Hauk, Stollak, and Kovan tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the constitutional rights of persons such as Plaintiffs with impunity.

1388. As a direct and/or proximate result of Defendants Klages, Strampel, Dietzel, Lemmen, Teachnor-Hauk, Kovan, Stollak, and Nassar's actions and/or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities

and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1389.   In the alternative, the actions or inactions of Defendants Klages, Strampel, Dietzel, Lemmen, Teachnor-Hauk, Stollak, and Kovan were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**D.    COUNT FOUR**

**FAILURE TO TRAIN AND SUPERVISE**
**42 U.S.C. § 1983**
**PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST DEFENDANT KLAGES, DEFENDANT STRAMPEL, DEFENDANT DIETZEL, AND DEFENDANT KOVAN**

1390.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1391.   Defendants Klages, Strampel, Dietzel, and Kovan have the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives including

Defendant Nassar and all faculty and staff regarding their duties toward athletes, students, faculty, staff, and visitors.

1392. Defendants Klages, Strampel, Dietzel, and Kovan failed to train and supervise their employees, agents, and/or representatives including all faculty and staff, regarding the following duties:

    a.  Perceive, report, and stop inappropriate sexual conduct on campus;

    b.  Provide diligent supervision over student-athletes and other individuals;

    c.  Report suspected incidents of sexual abuse or sexual assault;

    d.  Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

    e.  Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

    f.  Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

1393. The above list of duties is not exhaustive.

1394. Defendants Klages, Strampel, Dietzel, and Kovan failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiffs' rights.

1395. As a result, Defendants Klages, Strampel, Dietzel, and Kovan deprived Plaintiffs of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

1396. As a direct and/or proximate result of Defendants Klages, Strampel, Dietzel, and Kovan's actions and/or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief,

humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1397. In the alternative, the actions or inaction of the Defendants Klages, Strampel, Dietzel, and Kovan were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of earnings and earning capacity.

E.     **COUNT FIVE**

**GROSS NEGLIGENCE**
**MCL 691.1407(2)(c)**
**PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOEAGAINST THE MSU DEFENDANTS AND DEFENDANT NASSAR**

1398.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1399.   The MSU Defendants owed Plaintiffs a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

1400.   Defendant Nassar owed Plaintiffs a duty of due care in carrying out medical treatment as an employee, agent, and/or representative of the MSU Defendants.

1401.   By seeking medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

1402.   The MSU Defendants' failure to adequately supervise Defendant Nassar, especially after MSU knew or should have known of complaints regarding his nonconsensual sexual touching and assaults during "treatments" was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs.

1403.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial

lack of concern for whether an injury would result to Plaintiffs.

1404. The MSU Defendants' conduct demonstrated a willful disregard for precautions to ensure Plaintiffs' safety.

1405. The MSU Defendants' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs.

1406. The MSU Defendants breached duties owed to Plaintiffs and were grossly negligent when they conducted themselves by the actions described above, said acts having been committed with reckless disregard for Plaintiffs' health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

1407. As a direct and/or proximate result of Defendants' actions and/or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1408. In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment,

loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**F.    COUNT SIX**

**NEGLIGENCE**
**PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST THE MSU DEFENDANTS AND DEFENDANT NASSAR**

1409.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1410.   The MSU Defendants owed Plaintiffs a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives and/or agents.

1411.   By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of the MSU Defendants, a special, confidential, and fiduciary relationship between Plaintiffs and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use ordinary care.

1412.   Defendant Nassar owed Plaintiffs a duty of ordinary care.

1413.   The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

1414.   The MSU Defendants had notice through its own employees, agents, and/or representatives

as early as 1997, again in 2000, and again in 2014 of complaints of a sexual nature related to Defendant Nassar's purported "treatments" with young girls and women.

1415. The MSU Defendants should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

1416. The MSU Defendants' failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

1417. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs in the course of his employment, agency, and/or representation of the MSU Defendants was a breach of the duty to use ordinary care.

1418. As a direct and/or proximate result of Defendants' conduct, actions and/or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1419. In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment,

loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**G.  COUNT SEVEN**

**VICARIOUS LIABILITY**
**PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST THE MSU DEFENDANTS**

1420. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1421. Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

1422. Vicarious liability essentially creates agency between the principal and its agent, so that the principal is held to have done what the agent has done.

1423. The MSU Defendants employed and/or held Defendant Nassar out to be its agent and/or representative from approximately 1996 to 2016.

1424. Defendant MSU's website contains hundreds of pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of

Sports Medicine.[43]

1425.   The MSU Defendants are vicariously liable for the actions of Defendant Nassar as described above that were performed during the course of his employment, representation, and/or agency with the MSU Defendants and while he had unfettered access to young female athletes on MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

1426.   As a direct and/or proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1427.   In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-

---

[43] As of January 5, 2017, using the search term "Nassar" at www.msu.edu returns 402 results, the majority of which include references to Defendant Nassar dating as far back as 1997.

traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## H.   COUNT EIGHT

### EXPRESS/IMPLIED AGENCY
### PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST MSU DEFENDANTS

1428.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1429.  An agent is a person who is authorized by another to act on its behalf.

1430.  The MSU Defendants intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

1431.  On the basis of those representations, Plaintiffs reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

1432.  Plaintiffs were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above, acts that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had unfettered access to young female athletes.

1433.  Plaintiffs were injured because they relied on the MSU Defendants to provide employees, agents, and or representatives who would exercise reasonable skill and care.

1434.  As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the

course of his employment, agency, and/or representation of the MSU Defendants, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1435.   In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## I.     COUNT NINE

### NEGLIGENT SUPERVISION
### PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST THE MSU DEFENDANTS

1436. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1437. The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency or representation with the MSU Defendants and while he interacted with young female athletes including Plaintiffs.

1438. It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs, unless properly supervised.

1439. The MSU Defendants by and through their employees, agents, managers and/or assigns, such as President Simon, President McPherson, Defendant Strampel or Defendant Kovan knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

1440. The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs.

1441. The aforementioned sexual abuse occurred while Plaintiffs and Defendant Nassar were on the premises of Defendant MSU, and while Defendant Nassar was acting in the course of his

employment, agency, and/or representation of the MSU Defendants.

1442. The MSU Defendants tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs with impunity.

1443. As a direct and/or proximate result of the MSU Defendants' negligent supervision, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1444. In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs'

daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**J.**   **COUNT TEN**

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST THE MSU DEFENDANTS**

1445.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1446.   The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs or those in Plaintiffs' situation.

1447.   As early as 1999, the MSU Defendants had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

1448.   The MSU Defendants knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

1449.   The MSU Defendants had a duty to warn or protect Plaintiffs and others in Plaintiffs' situation against the risk of injury by Defendant Nassar.

1450.   The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar as an employee, agent, and or representative of the MSU Defendants and Plaintiffs.

1451.   The MSU Defendants breached said duty by failing to warn Plaintiffs and/or by failing to take reasonable steps to protect Plaintiffs from Defendant Nassar.

1452.   The MSU Defendants breached its duties to protect Plaintiffs by failing to:

a.  Respond to allegations of sexual assault, abuse, and molestation;

b.  Detect and/or uncover evidence of sexual assault, abuse, and molestation; and,

c.  Investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

1453.  The MSU Defendants failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in violations of Plaintiffs' rights.

1454.  The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs from Defendant Nassar's conduct.

1455.  As a direct and/or proximate result of the MSU Defendants negligent failure to warn or protect, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1456.  In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment,

217

loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**K.**    **COUNT ELEVEN**

**NEGLIGENT FAILURE TO TRAIN OR EDUCATE**
**PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST THE MSU DEFENDANTS**

1457.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1458.   The MSU Defendants breached their duty to take reasonable protective measures to protect Plaintiffs and other minors from the risk of childhood sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs and other individuals (including minors) about how to avoid such a risk.

1459.   The MSU Defendants failed to implement reasonable safeguards to:

   a.   Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

   b.   Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs and other young athletes.

1460.   As a direct and/or proximate result of the MSU Defendants' negligent failure to train or educate, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress,

embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1461. In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

L. **COUNT TWELVE**

**NEGLIGENT RETENTION**
**PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST THE MSU DEFENDANTS**

1462. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1463. The MSU Defendants had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

1464. The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report and address complaints about his conduct of which they knew or should have known.

1465. The MSU Defendants were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

1466. The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs and an unknown number of other individuals.

1467. The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiffs as well as other minors and young adults.

1468. As a direct and/or proximate result of the MSU Defendants' negligent retention, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities

and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1469.   In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## M.      COUNT THIRTEEN

### FRAUD AND MISREPRESENTATION
**PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST MSU DEFENDANTS**

1470.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1471.   From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiffs and the public that Defendant Nassar was a competent and safe physician.

1472.   By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU

Defendants represented to Plaintiffs and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs and the public need not worry about being harmed by Defendant Nassar.

1473. The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs and an unknown number of other individuals.

1474. As of 1997, 1999, and 2000, the MSU Defendants knew their representations of Defendant Nassar were false as at least one student athlete in 1997, another in 1999, and Tiffany Thomas Lopez had complained of Defendant Nassar's conduct to MSU representatives.

1475. Although MSU was informed of Defendant Nassar's conduct they failed to investigate, remedy, or in any way address the 1997, 1999, and 2000 complaints.

1476. The MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

1477. Additional complaints against Defendant Nassar surfaced in 2014, however, because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiffs and an unknown number of other individuals.[44]

---

[44] *See* Letter from U.S. Department of Education Office for Civil Rights to Michigan State University, September 1, 2015, OCR Docket #15-11-2098, #15-14-2113. Available at

1478. Between the time of the 2014 complaint and September 2016, the MSU Defendants continued to hold Defendant Nassar out as a competent and safe physician.

1479. Plaintiffs relied on the assertions of the MSU Defendants and several Plaintiffs continued to seek treatment from Defendant Nassar in the wake of known concerns and dangers.

1480. Plaintiffs were subjected to sexual assault, abuse, and molestation as a result of the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar.

1481. As a direct and/or proximate result of the MSU Defendants' fraudulent misrepresentations, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1482. In the alternative, the actions or inaction of the Defendants was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety,

https://www2.ed.gov/documents/press-releases/michigan-state-letter.pdf. Last accessed January 4, 2017.

depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**N.      COUNT FOURTEEN**

**VIOLATIONS OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 PLAINTIFFS VENUTO, AVERY, JANE B92 D0E, JANE B93 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, JANE B98 DOE, BOURQUE, WILES, JANE B101 DOE, JANE B102 DOE, JANE B103 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, JANE B109 DOE, AND JANE B110 DOE AGAINST DEFENDANTS NASSAR AND THE MSU DEFENDANTS**

1483.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs

1484.   The Elliot-Larsen Civil Rights Act ("Elliot-Larsen") prohibits discrimination based on sex. MCL 37.2102.

1485.   "Discrimination because of sex includes sexual harassment." MCL 37.2.103(i).

1486.   "Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature." MCL 37.2103(i).

1487.   Elliot-Larsen protects against sexual harassment in educational institutions.

1488.   MSU is an educational institution pursuant to MCL 37.2401.

1489.   An educational institution shall not "discriminate against an individual in the *full utilization of or benefit* from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2401(a) (emphasis added).

1490.   Elliot-Larsen also protects against sexual harassment in places of public accommodation. MCL 37.2302. Under this section, an individual shall not be denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

a place of public accommodation or public service because of . . . sex." MCL37.2302(a).

1491. MSU is a "place of public accommodation" because its "services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." MCL 37.2301(a).

1492. Plaintiffs are "persons" within the meaning of MCL 37.2103(g).

1493. Nassar's actions and conduct were carried out under one of MSU's programs, which provides medical treatment to students, athletes, and the general public, wherein MSU, through MSU Sport Medicine Clinic, solicits and markets to people like Plaintiffs, and places Plaintiffs within the University community.

1494. Nassar's actions and conduct toward Plaintiffs denied them the full and equal enjoyment of MSU's services at a place of public accommodation, in violation of Elliot-Larson.

1495. Nassar's actions and conduct toward Plaintiffs of nonconsensual sexual assault, battery, and molestation, which includes unconsented touching and rubbing of Plaintiffs' genitalia, breasts, and unconsented digital penetration of Plaintiff's vagina, constitute sex discrimination under Elliot-Larsen.

1496. As a direct and/or proximate result of the Defendant's actions and/or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of

earnings and earning capacity.

1497. In the alternative, the actions or inaction of the Defendant was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## VIII.  CLAIMS AGAINST USA GYMNASTICS AND UNITED STATES OLYMPIC COMMITTEE

### A.  COUNT FIFTEEN

### MASHA'S LAW
### 18 U.S.C. § 2255
### ALL PLAINTIFFS AGAINST DEFENDANT USAG, DEFENDANT TWISTARS, DEFENDANT GEDDERT, DEFENDANT USOC, AND DEFENDANT NASSAR

1498. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1499. Defendants USAG, Twistars, Geddert, USOC, and Nassar formed a venture (hereinafter "the Venture") by virtue of their agency, commercial, financial, reputational, or oversight relationships with each other in the area of competitive gymnastics.

1500. Through the Venture, Defendants USAG, Twistars, Geddert, USOC, and Nassar engaged

in sex trafficking of children by fraud in violation of 18 U.S.C. § 1591.

1501.  Masha's Law, 18 U.S.C. § 2255, provides an individual private cause of action for any person who suffers personal injuries while a minor as a result of a violation of 18 U.S.C. § 1591.

1502.  Plaintiffs were among the intended target of the Venture because they were amateur and elite gymnasts seeking to compete at the highest levels of the sport, including but not limited to the national, global, and Olympic levels.

1503.  Due to Plaintiffs' participation and involvement with competitive gymnastics, the Venture knowingly benefited financially and reputationally through its association with Defendant Nassar.

1504.  The Defendants benefited financially and reputationally and also received prestige, fame, and global recognition, including winning numerous Olympic medals at several Olympic games through their participation in the Venture. 18 U.S.C. § 1591(a)(2).

1505.  The purpose of the Venture in part was to create a system by which Defendant Nassar was enabled to engage in commercial sex acts with Plaintiffs and other young gymnasts through a fraudulent representation that he was engaged in legitimate medical treatment.

1506.  The Defendants received these benefits with knowledge or in reckless disregard of the fact that Defendant Nassar was engaging in commercial sex acts with Plaintiffs through use of fraud by intentionally and falsely misrepresenting to Plaintiffs that his actions constituted legitimate and necessary medical treatments, when in fact Nassar's actions constituted sexual abuse for Defendant Nassar's own personal gratification.

1507.  Defendant Nassar's representations to Plaintiffs were false when made, he knew they were false, and he made them with the intention that Plaintiffs would rely on his false

statements to their detriment, and, as a result, Plaintiffs did in fact rely upon and suffer personal injuries in the form of sexual abuse.

1508. Defendant Nassar knowingly obtained a financial benefit in the forms of national and global exposure, fame, and an increase in the number of patients treated, which in turn led to a higher salary, from participation in the Venture.

1509. The Venture engaged in fraud by either knowingly or with reckless disregard of the truth, affirmatively representing to Plaintiffs, other gymnasts, and the public at large that Defendant Nassar was a competent and ethical physician.

1510. The Venture's fraudulent representations were used to cause Plaintiffs and others to engage in commercial sex acts.

1511. The commercial sex acts involved Defendant Nassar's digital vaginal and anal penetration and touching of breasts of gymnasts in exchange for the gymnasts receiving some amount of medical treatment, as well as support through the Venture including but not limited to financial support, expenses being paid, and the prestige associated with being a part of those Venture organizations.

1512. Defendant Nassar received value from the commercial sex acts in the form of sexual gratification.

1513. The commercial sex acts also conferred value to the Venture as described above.

1514. Through the Venture, Defendant Nassar was able to engage in commercial sex acts with gymnasts throughout the United States and around the world, including at every Olympic game from approximately 1996 to 2012.

1515. As a result, the Venture's activities affected interstate and foreign commerce.

1516. As a direct and proximate cause of Defendants USAG, Twistars, Geddert, USOC, and

Nassar's actions in violation of 18 U.S.C. § 1591, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity. Plaintiffs seek to recover actual damages sustained or liquidated damages in the amount of $150,000, punitive damages, and the costs of bringing this action, including reasonable attorney's fees and other litigation costs reasonably incurred. 18 U.S.C. § 2255(a).

## B.  **COUNT SIXTEEN**

**GROSS NEGLIGENCE**
**PLAINTIFFS BOYCE, GUERRERO, CASTLE, THELEN, JANE B8 DOE, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, JANE B25 DOE, GAMET, ALVARADO, JANE B34 DOE, JANE B35 DOE, LIVINGSTON, HALL, JANE B42 DOE, JANE B43 DOE, JANE B44 DOE, JANE B45 DOE, JANE B46 DOE, JANE B50 DOE, JANE B51 DOE, MEINKE, JANE B55 DOE, JANE B60 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B67 DOE, JANE B68 DOE, JANE B71 DOE, GASSAWAY, EBERT, JANE B77 DOE, JANE B79 DOE, JANE B83 DOE, ANDERSON, GREEN, JANE B89 DOE, JANE B94 DOE, JANE B95 DOE, JANE B96 DOE, JANE B97 DOE, BOURQUE, JANE B101 DOE, JANE B102 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, AND JANE B110 AGAINST DEFENDANT USAG, DEFENDANT USOC, AND DEFENDANT NASSAR**

1517.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1518.  Defendant USAG and Defendant USOC owed the public and Plaintiffs Boyce, Guerrero,

Castle, Thelen, Jane B8 Doe, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B42 Doe, Jane B43 Doe, Jane B44 Doe, Jane B45 Doe, Jane B46 Doe, Jane B50 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B95 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

1519. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe are or were members of USAG, participated in USAG sanctioned events, and/or were knowledgeable of USAG and considered it to be a prestigious organization. In some cases, Plaintiffs were referred to Defendant Nassar through USAG or USOC affiliations.

1520. Defendant Nassar owed Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado,

Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe a duty to use due care in his capacity as an employee, representative, and/or agent of Defendant USAG and Defendant USOC.

1521. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG and Defendant USOC, a special, confidential, and fiduciary relationship between Plaintiffs and Defendants USAG, USOC, and Nassar was created, resulting in Defendant Nassar owing Plaintiffs a duty to use due care.

1522. Defendant USAG and Defendant USOC's failure to adequately supervise Defendant Nassar was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe.

1523. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant USAG and Defendant USOC was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe

1524. Defendant USAG and Defendant USOC's conduct demonstrated a willful disregard for necessary precautions to reasonably protect Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane

B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe's safety.

1525. Defendant USAG and Defendant USOC's conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe.

1526. Defendants USAG and USOC breached duties owed to Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe,

and Jane B110 Doe and was grossly negligent when it conducted itself by actions described above, including but not limited to its failure to notify MSU about the reasons for Nassar's separation from USAG and USOC and more broadly the issues surrounding sexual abuse in gymnastics and warning signs and reporting requirements. Said acts were committed with reckless disregard for Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe's health, safety, Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

1527. As a direct and/or proximate result of Defendants USAG and USOC's actions and/or inactions, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe have suffered and continue to suffer

pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

C. **COUNT SEVENTEEN**

**NEGLIGENCE**
**PLAINTIFFS BOYCE, GUERRERO, CASTLE, THELEN, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, JANE B25 DOE, GAMET, ALVARADO, JANE B34 DOE, JANE B35 DOE, LIVINGSTON, HALL, JANE B43 DOE, JANE B45 DOE, JANE B46 DOE, JANE B51 DOE, MEINKE, JANE B60 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B67 DOE, JANE B68 DOE, JANE B71 DOE, GASSAWAY, EBERT, JANE B77 DOE, JANE B79 DOE, JANE B83 DOE, ANDERSON, GREEN, JANE B89 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, BOURQUE, JANE B101 DOE, JANE B102 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, AND JANE B110 AGAINST DEFENDANT USAG, DEFENDANT USOC, AND DEFENDANT NASSAR**

1528. Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs.

1529.   Defendants USAG and USOC owed the public and Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while being treated by their employees, representatives, and agents.

1530.   Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe had a reasonable expectation that the USAG and USOC was recommending, employing, and holding out competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation.

1531. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant USAG and Defendant USOC, a special, confidential, and fiduciary relationship between Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and Defendants USAG and USOC formed between them requiring Defendants USAG and USOC to owe Plaintiffs a duty to use ordinary care.

1532. Defendant Nassar owed Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe a duty of ordinary care in carrying out medical treatment.

1533. Defendant USAG and Defendant USOC's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

1534.   Defendant USAG and Defendant USOC's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of ordinary care.

1535.   Defendant USAG and Defendant USOC's failure to inform Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and the public of the allegations and concerns leading to Defendant Nassar's separation from USAG and USOC was a breach of ordinary care.

1536.   Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs Jane Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe was a breach of the duty to use ordinary care.

1537.   As a direct and/or proximate result of Defendants' conduct, actions and/or inactions,

Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

D.      **COUNT EIGHTEEN**

**VICARIOUS LIABILITY**
**PLAINTIFFS BOYCE, GUERRERO, CASTLE, THELEN, JANE B12 DOE, TARRANT,**
**MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, JANE B25 DOE, GAMET,**
**ALVARADO, JANE B34 DOE, JANE B35 DOE, LIVINGSTON, HALL, JANE B43 DOE,**
**JANE B45 DOE, JANE B46 DOE, JANE B51 DOE, MEINKE, JANE B60 DOE,**
**CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B67 DOE,**
**JANE B68 DOE, JANE B71 DOE, GASSAWAY, EBERT, JANE B77 DOE, JANE B79**
**DOE, JANE B83 DOE, ANDERSON, GREEN, JANE B89 DOE, JANE B94 DOE, JANE**
**B96 DOE, JANE B97 DOE, BOURQUE, JANE B101 DOE, JANE B102 DOE, JANE B104**
**DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, AND JANE**
**B110 AGAINST DEFENDANT USAG AND DEFENDANT USOC**

1538.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs

1539.   Vicarious liability is indirect responsibility imposed by operation of law where an

employer is bound to keep its employees within their proper bounds and is responsible if

it fails to do so.

1540.   Vicarious liability essentially creates agency between the principal and its agent, so that

the principal is held to have done what the agent has done.

1541.   Defendant USAG's website contains sites portraying Defendant Nassar as the recipient of

distinguished awards and boasts him as having been "instrumental" to the success of

USA gymnastics.

1542.   Defendant USAG employed and/or held Defendant Nassar out to be its agent and/or

representative from approximately 1986 to 2015.

1543.   Defendant USOC employed and/or held Defendant Nassar out to be its agent and/or

representative from approximately 1996 to 2015.

1544.   Defendant USAG and Defendant USOC are vicariously liable for the actions of

Defendant Nassar as described above that were performed during the course of his

employment, representation, or agency with Defendant USAG and Defendant USOC and while he had unfettered access to young female athletes.

1545. As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendant USAG and Defendant USOC, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane

B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

E.       **COUNT NINETEEN**

**EXPRESS/IMPLIED AGENCY**
**PLAINTIFFS BOYCE, GUERRERO, CASTLE, THELEN, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, JANE B25 DOE, GAMET, ALVARADO, JANE B34 DOE, JANE B35 DOE, LIVINGSTON, HALL, JANE B43 DOE, JANE B45 DOE, JANE B46 DOE, JANE B51 DOE, MEINKE, JANE B60 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B67 DOE, JANE B68 DOE, JANE B71 DOE, GASSAWAY, EBERT, JANE B77 DOE, JANE B79 DOE, JANE B83 DOE, ANDERSON, GREEN, JANE B89 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, BOURQUE, JANE B101 DOE, JANE B102 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, AND JANE B110 AGAINST DEFENDANT USAG AND DEFENDANT USOC**

1546.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1547.   An agent is a person who is authorized by another to act on its behalf.

1548.   Defendants USAG and USOC intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

1549.   On the basis of those representations, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe,

Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe reasonably believed Defendant Nassar was acting as an employee, agent, and/or representation of Defendants USAG and USOC.

1550. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above carried out through his employment, agency, and/or representation with Defendants USAG and USOC.

1551. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were injured because they relied on Defendants USAG and USOC to provide employees or agents who would exercise reasonable skill and care.

1552. As a direct and/or proximate cause of Defendant Nassar's negligence carried out in the course of his employment, agency, and/or representation with Defendants USAG and USOC, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were prevented and will continue to be prevented from performing

their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

F.  **COUNT TWENTY**

**NEGLIGENT SUPERVISION**
**PLAINTIFFS BOYCE, GUERRERO, CASTLE, THELEN, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, JANE B25 DOE, GAMET, ALVARADO, JANE B34 DOE, JANE B35 DOE, LIVINGSTON, HALL, JANE B43 DOE, JANE B45 DOE, JANE B46 DOE, JANE B51 DOE, MEINKE, JANE B60 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B67 DOE, JANE B68 DOE, JANE B71 DOE, GASSAWAY, EBERT, JANE B77 DOE, JANE B79 DOE, JANE B83 DOE, ANDERSON, GREEN, JANE B89 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, BOURQUE, JANE B101 DOE, JANE B102 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, AND JANE B110 AGAINST DEFENDANT USAG AND DEFENDANT USOC**

1553.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs

1554.  Defendants USAG and USOC had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency and/or representation of Defendants USAG and USOC and while he interacted with young female athletes including Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe.

1555. It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children, including Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe, unless properly supervised.

1556. Defendants USAG and USOC by and through their employees, agents, managers and/or assigns such as Mr. Penny or Mr. Colarossi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

1557. Defendants USAG and USOC breached their duty to provide reasonable supervision of Defendant Nassar, and its failure permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe,

Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe.

1558.  The aforementioned sexual abuse occurred while Defendant Nassar was acting in the course of his employment, agency and/or representation of Defendants USAG and USOC.

1559.  Defendants USAG and USOC tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe with impunity.

1560.  As a direct and/or proximate result of Defendants USAG and USOC's negligent supervision, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane

B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### G.     COUNT TWENTY-ONE

**NEGLIGENT FAILURE TO WARN OR PROTECT**
**PLAINTIFFS BOYCE, GUERRERO, CASTLE, THELEN, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, JANE B25 DOE, GAMET, ALVARADO, JANE B34 DOE, JANE B35 DOE, LIVINGSTON, HALL, JANE B43 DOE, JANE B45 DOE, JANE B46 DOE, JANE B51 DOE, MEINKE, JANE B60 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B67 DOE, JANE B68 DOE, JANE B71 DOE, GASSAWAY, EBERT, JANE B77 DOE, JANE B79 DOE, JANE B83 DOE, ANDERSON, GREEN, JANE B89 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, BOURQUE, JANE B101 DOE, JANE B102 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, AND JANE B110 AGAINST DEFENDANT USAG AND DEFENDANT USOC**

1561.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1562.   Given the direct or indirect knowledge of sexual abuse in youth sports and in particular gymnastics, it was reasonably foreseeable that sexual abuse of minors may occur if proper procedures were not taken by Defendants USAG and USOC.

1563.   Defendants USAG and USOC knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe or those in their situations.

1564.   Defendants USAG and USOC had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in

response.

1565.   Defendants USAG and USOC knew or should have known that Defendant Nassar previously committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

1566.   Defendants USAG and USOC had a duty to warn or protect the public, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe, and others in their situations against the risk of injury by Defendant Nassar.

1567.   The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar in his capacity as employee, agent, and/or representative of Defendants USAG and USOC and Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane

B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and Defendants USAG, USOC, and Nassar was created, resulting in Defendants USAG, USOC, and Nassar owing Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe a duty to use ordinary care.

1568. Defendants USAG and USOC breached said duty by failing to warn the public and Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and/or by failing to take reasonable steps to protect the public and Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe,

Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe from Defendant Nassar.

1569. Defendants USAG and USOC breached their duties to protect Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe by failing to detect and/or uncover evidence of sexual abuse and sexual assault, investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from USAG and USOC affiliation and USAG and USOC sanctioned events.

1570. Defendants USAG and USOC failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendants USAG and USOC, resulting in violations of Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane

B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe's rights.

1571. Defendants USAG and USOC willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe from Defendant Nassar's conduct.

1572. As a direct and/or proximate result of Defendants USAG and USOC's negligent failure to warn or protect, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe have suffered and continue to

suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## H.   COUNT TWENTY-TWO

**NEGLIGENT FAILURE TO TRAIN OR EDUCATE**
**PLAINTIFFS BOYCE, GUERRERO, CASTLE, THELEN, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, JANE B25 DOE, GAMET, ALVARADO, JANE B34 DOE, JANE B35 DOE, LIVINGSTON, HALL, JANE B43 DOE, JANE B45 DOE, JANE B46 DOE, JANE B51 DOE, MEINKE, JANE B60 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B67 DOE, JANE B68 DOE, JANE B71 DOE, GASSAWAY, EBERT, JANE B77 DOE, JANE B79 DOE, JANE B83 DOE, ANDERSON, GREEN, JANE B89 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, BOURQUE, JANE B101 DOE, JANE B102 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, AND JANE B110 AGAINST DEFENDANT USAG AND DEFENDANT USOC**

1573.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous

paragraphs

1574. Defendants USAG and USOC breached their duty to take reasonable protective measures to protect the public and Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe from the risk of sexual abuse and/or sexual assault by Defendant Nassar, such as the failure to properly train or educate Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and other individuals (including minors) about how to avoid such a risk.

1575. Defendants USAG and USOC failed to implement reasonable safeguards to:

   a. Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar;

   b. Avoid placing Defendant Nassar in positions where he would be in unsupervised contact and interaction with Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12

255

Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and other young athletes.

1576. As a direct and/or proximate result of Defendants USAG and USOC's negligent failure to train or educate, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane

B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

I. **COUNT TWENTY-THREE**

**NEGLIGENT RETENTION**
**PLAINTIFFS BOYCE, GUERRERO, CASTLE, THELEN, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, JANE B25 DOE, GAMET, ALVARADO, JANE B34 DOE, JANE B35 DOE, LIVINGSTON, HALL, JANE B43 DOE, JANE B45 DOE, JANE B46 DOE, JANE B51 DOE, MEINKE, JANE B60 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B67 DOE, JANE B68 DOE, JANE B71 DOE, GASSAWAY, EBERT, JANE B77 DOE, JANE B79 DOE, JANE B83 DOE, ANDERSON, GREEN, JANE B89 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, BOURQUE, JANE B101 DOE, JANE B102 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, AND JANE B110 AGAINST DEFENDANT USAG AND DEFENDANT USOC**

1577. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1578. Defendants USAG and USOC had a duty when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents and/or representatives to exercise due care, but they failed to do so.

1579. Defendants USAG and USOC were negligent in the retention of Defendant Nassar as an employee, agent, and/or representative in their failure to adequately investigate, report, and address complaints about his conduct of which they knew or should have known.

1580. Defendants USAG and USOC were negligent in the retention of Defendant Nassar when after they discovered, or reasonably should have discovered Defendant Nassar's conduct which reflected a propensity for sexual misconduct.

1581. Defendants USAG and USOC's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually abusing and/or sexually assaulting Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe as well as an unknown number of other individuals.

1582. The aforementioned negligence in the credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe as well as other minors and young adults.

1583. As a direct and/or proximate result of Defendants USAG and USOC's negligent

retention, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

### J.     COUNT TWENTY-FOUR

**FRAUD AND MISREPRESENTATION**
**PLAINTIFFS BOYCE, GUERRERO, CASTLE, THELEN, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, JANE B25 DOE, GAMET, ALVARADO, JANE B34 DOE, JANE B35 DOE, LIVINGSTON, HALL, JANE B43 DOE, JANE B45 DOE, JANE B46 DOE, JANE B51 DOE, MEINKE, JANE B60 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B67 DOE, JANE B68 DOE, JANE B71 DOE, GASSAWAY, EBERT, JANE B77 DOE, JANE B79 DOE, JANE B83 DOE, ANDERSON, GREEN, JANE B89 DOE, JANE B94 DOE, JANE B96 DOE, JANE B97 DOE, BOURQUE, JANE B101 DOE, JANE B102 DOE, JANE B104 DOE, JANE B105 DOE, JANE B106 DOE, COOMER, JANE B108 DOE, AND JANE B110 AGAINST DEFENDANT USAG AND DEFENDANT USOC**

1584.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1585.  From approximately 1996 to summer 2015, Defendants USAG and Defendant USOC represented to Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and the public that Defendant Nassar was a competent, ethical, and safe physician.

1586.  By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, and an Olympic physician with Defendant USOC, Defendants USAG and USOC represented to Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley,

Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe  and the public need not worry about being harmed by Defendant Nassar.

1587. The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway,

Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and an unknown number of other individuals.

1588. Additionally, complaints were made to Defendants USAG and USOC, yet Defendants USAG and USOC did not contact Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe, the MSU Defendants, or any other clubs, or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe and others.

1589. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe relied on the assertions of Defendants USAG and USOC and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

1590. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were subjected to sexual assault, abuse, and molestation as a result of Defendants USAG and USOC's fraudulent misrepresentations regarding Defendant Nassar.

1591. As a direct and/or proximate result of Defendants USAG and USOC's fraud and misrepresentation, Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34

Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Boyce, Guerrero, Castle, Thelen, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Jane B25 Doe, Gamet, Alvarado, Jane B34 Doe, Jane B35 Doe, Livingston, Hall, Jane B43 Doe, Jane B45 Doe, Jane B46 Doe, Jane B51 Doe, Meinke, Jane B60 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B67 Doe, Jane B68 Doe, Jane B71 Doe, Gassaway, Ebert, Jane B77 Doe, Jane B79 Doe, Jane B83 Doe, Anderson, Green, Jane B89 Doe, Jane B94 Doe, Jane B96 Doe, Jane B97 Doe, Bourque, Jane B101 Doe, Jane B102 Doe, Jane B104 Doe, Jane B105 Doe, Jane B106 Doe, Coomer, Jane B108 Doe, and Jane B110 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## IX. CLAIMS AGAINST TWISTARS

### A. COUNT TWENTY-FIVE

**GROSS NEGLIGENCE**
**PLAINTIFFS GUERRERO, CASTLE, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, GAMET, JANE B35 DOE, LIVINGSTON, JANE B42 DOE, JANE B43 DOE, JANE B48 DOE, MEINKE, MORGAN MARGRAVES, JANE B57 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B65 DOE, JANE B67 DOE, JANE B69 DOE, GASSAWAY, JANE B82 DOE, JANE B83 DOE, ANDERSON, JANE B92 DOE, JANE B96 DOE, JANE B97 DOE, JANE B101 DOE, JANE B102 DOE, AND JANE B104 DOE AGAINST DEFENDANTS TWISTARS, NASSAR, AND GEDDERT**

1592. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1593. Defendant Twistars and Defendant Geddert owed the public and Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents.

1594. Defendant Nassar owed Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe a duty to use due care as an employee,

representative, and/or agent of Defendant Twistars.

1595. By seeking medical treatment from Defendant Nassar in his capacity as an employee, agent, and/or representative of Defendant Twistars, a special, confidential, and fiduciary relationship between Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and Defendants Twistars and Nassar was created, resulting in Defendants Twistars and Nassar owing Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe a duty to use due care.

1596. Given known sexual abuse which has taken place in youth sports including gymnastics and the reasonable foreseeability that harm may occur to athletes, Defendant Twistars and Defendant Geddert not only referred athletes to Defendant Nassar but also failed to adequately supervise Defendant Nassar. Defendants' actions were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke,

266

Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe.

1597. Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe in the course of his employment, agency, and/or representation of Defendant Twistars and under the guise of rendering medical "treatment" as an employee, representative, and/or agent of Defendant Twistars was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe.

1598. Defendant Twistars' conduct and the conduct of Defendant Geddert demonstrated a willful disregard for precautions to ensure Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe,

Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe's safety.

1599.  Defendant Twistars' conduct and the conduct of Defendant Geddert as described above, demonstrated a willful disregard for substantial risks to Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe.

1600.  Defendant Twistars and Defendant Geddert breached duties owed to Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and were grossly negligent when they conducted themselves by actions described above, said acts having been committed with reckless disregard for Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe's health, safety,

268

Constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

1601. As a direct and/or proximate result of Defendants' gross negligence, Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## B.     COUNT TWENTY-SIX

### NEGLIGENCE
### PLAINTIFFS GUERRERO, CASTLE, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, GAMET, JANE B35 DOE, LIVINGSTON, JANE B42 DOE, JANE B43 DOE, JANE B48 DOE, MEINKE, MORGAN MARGRAVES, JANE B57 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B65 DOE, JANE B67 DOE, JANE B69 DOE, GASSAWAY, JANE B82 DOE, JANE B83 DOE, ANDERSON, JANE B92 DOE, JANE B96 DOE, JANE B97 DOE, JANE B101 DOE, JANE B102 DOE, AND JANE B104 DOE AGAINST DEFENDANTS TWISTARS, NASSAR, AND GEDDERT

1602.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1603.   In or around 1998, a parent of a gymnast at Defendant Twistars' facility complained to Defendant Geddert, the owner and operator of Defendant Twistars, regarding Dr. Nassar's conduct alleging sexual abuse, assault, and molestation.

1604.   Despite being informed of Defendant Nassar's conduct, Defendant Geddert recommended Defendant Nassar as a physician to members and guests of Defendant Twistars.

1605.   Defendant Geddert owed Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe a duty of ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation.

1606.   In recommending Defendant Nassar with knowledge of Defendant Nassar's conduct, Defendant Geddert breached the duty of ordinary care to Plaintiffs Guerrero, Castle, Jane

B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and the public.

1607.  Defendant Twistars breached the duty of ordinary care to Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and the public in failing to investigate the 1998 allegations which were made to Defendant Geddert.

1608.  Defendant Twistars and Defendant Geddert breached the duty of ordinary care to Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and the public by failing to report the 1998 allegations, which were made to Defendant Geddert, to law enforcement.

1609.  Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison

Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe, as members the public, in taking the recommendation of Defendant Geddert to seek medical treatment from Defendant Nassar had reasonable expectations that Defendant Nassar would carry out medical treatment without subjecting them to sexual assault, abuse, or molestation.

1610. By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe a duty to use ordinary care.

1611. Defendant Nassar owed Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82

Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe a duty of ordinary care in carrying out medical treatment at Defendant Twistars' facilities.

1612.   Defendant Twistars' failure to adequately train and supervise Defendant Nassar while he was at their facility breached the duty of ordinary care.

1613.   Defendant Nassar's conduct at Defendant Twistars' facility, in sexually assaulting, abusing, and molesting Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe in the course of and under the guise of rendering medical "treatment" was a breach of the duty to use ordinary care.

1614.   As a direct and/or proximate result of Defendants' negligence, Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions,

273

sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

C.    **COUNT TWENTY-SEVEN**

**EXPRESS/IMPLIED AGENCY**
**PLAINTIFFS GUERRERO, CASTLE, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, GAMET, JANE B35 DOE, LIVINGSTON, JANE B42 DOE, JANE B43 DOE, JANE B48 DOE, MEINKE, MORGAN MARGRAVES, JANE B57 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B65 DOE, JANE B67 DOE, JANE B69 DOE, GASSAWAY, JANE B82 DOE, JANE B83 DOE, ANDERSON, JANE B92 DOE, JANE B96 DOE, JANE B97 DOE, JANE B101 DOE, JANE B102 DOE, AND JANE B104 DOE AGAINST DEFENDANTS TWISTARS AND GEDDERT**

1615.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1616.   An agent is a person who is authorized by another to act on its behalf.

1617.   Defendant Twistars intentionally or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

1618.   On the basis of those representations, Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo,

Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant Twistars.

1619.   Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe were injured as a result of Defendant Nassar's sexual assault, abuse, and molestation as described above.

1620.   Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe were injured because they relied on Defendant Twistars to provide employees, agents, and/or representatives who would exercise reasonable skill or care.

1621.   As a direct and/or proximate result of Defendant Twistars' negligent failure to train or educate, Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe,

Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

D.   **COUNT TWENTY-EIGHT**

**NEGLIGENT SUPERVISION**
**PLAINTIFFS GUERRERO, CASTLE, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, GAMET, JANE B35 DOE, LIVINGSTON, JANE B42 DOE, JANE B43 DOE, JANE B48 DOE, MEINKE, MORGAN MARGRAVES, JANE B57 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B65 DOE, JANE B67 DOE, JANE B69 DOE, GASSAWAY, JANE B82 DOE, JANE B83 DOE, ANDERSON, JANE B92 DOE, JANE B96 DOE, JANE B97 DOE, JANE B101 DOE, JANE B102 DOE, AND JANE B104 DOE AGAINST DEFENDANTS TWISTARS AND GEDDERT**

1622.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs

1623.  Defendant Twistars and Defendant Geddert each had a duty to provide reasonable

supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, or representation of Defendant Twistars when he interacted with young female athletes including Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe.

1624. It was reasonably foreseeable given the known sexual abuse in youth sports and gymnastics in particular that Defendant Nassar who had prior allegations against him had or would sexually abuse children and young women, including Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe, unless properly supervised.

1625. Defendant Twistars by and through their employees, agents, managers, and/or assigns, and in particular by Defendant Geddert, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults and due to the 1998 complaint made to Defendant Geddert of the nonconsensual sexual touching during "treatment."

1626. Defendant Twistars and Defendant Geddert breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit the acts against Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe.

1627. The aforementioned sexual abuse occurred while Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and Defendant Nassar were on the premises of Defendant Twistars, and while Defendant Nassar was acting in the course of his employment, agency, or representation of Defendant Twistars.

1628. Defendant Twistars and Defendant Geddert tolerated, authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, with the result that Defendant Nassar was allowed to violate the rights of persons such as Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe,

Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe with impunity.

1629. As a direct and/or proximate result of Defendants' negligent failure to supervise, Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe  were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

E.      **COUNT TWENTY-NINE**

**PLAINTIFFS GUERRERO, CASTLE, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, GAMET, JANE B35 DOE, LIVINGSTON, JANE B42 DOE, JANE B43 DOE, JANE B48 DOE, MEINKE, MORGAN MARGRAVES, JANE B57 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B65 DOE, JANE B67 DOE, JANE B69 DOE, GASSAWAY, JANE B82 DOE, JANE B83 DOE, ANDERSON, JANE B92 DOE, JANE B96 DOE, JANE B97 DOE, JANE B101 DOE, JANE B102 DOE, AND JANE B104 DOE AGAINST DEFENDANTS TWISTARS AND GEDDERT**

1630.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1631.   Defendant Twistars and Defendant Geddert knew or should have known that Defendant Nassar posed a risk of harm to Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe or those in their situations.

1632.   As early as 1998, Defendant Twistars, by a complaint made to its owner/employee/agent/representative Defendant John Geddert, had direct and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

1633.   Defendant Twistars and Defendant Geddert knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

1634.   Defendant Twistars and Defendant Geddert had a duty to warn or protect Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas,

Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and others in their situations against the risk of injury by Defendant Nassar.

1635.  The duty to disclose this information arose by the special, trusting, confidential, and fiduciary relationship between Defendant Nassar, an agent/representative/employee of Defendant Twistars and Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe.

1636.  Defendant Twistars and Defendant Geddert breached said duty by failing to warn Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and/or by failing to take reasonable steps to protect Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves,

Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe from Defendant Nassar.

1637. Defendant Twistars and Defendant Geddert breached its duties to protect Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe by failing to detect and/or uncover evidence of sexual abuse and sexual assault, which was taking place on its premises and at its facility.

1638. Defendant Twistars and Defendant Geddert breached its duties to protect Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson, Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe by failing to investigate Defendant Nassar, adjudicate and suspend and/or ban Defendant Nassar from Twistars sanctioned events.

1639. Defendant Twistars and Defendant Geddert failed to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician with their organization, resulting in violations of Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant,

McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe.

1640.   Defendant Twistars and Defendant Geddert willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe from Defendant Nassar's conduct.

1641.   As a direct and/or proximate result of Defendants' negligent failure to warn or protect, Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including

anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**F.     COUNT THIRTY**

**FRAUD AND MISREPRESENTATION**
**PLAINTIFFS GUERRERO, CASTLE, JANE B12 DOE, TARRANT, MCDOWELL, DANIELS, VALLEY, SMITH, ZERFAS, GAMET, JANE B35 DOE, LIVINGSTON, JANE B42 DOE, JANE B43 DOE, JANE B48 DOE, MEINKE, MORGAN MARGRAVES, JANE B57 DOE, CASTILLO, LAUREN MARGRAVES, MADISON MARGRAVES, JANE B65 DOE, JANE B67 DOE, JANE B69 DOE, GASSAWAY, JANE B82 DOE, JANE B83 DOE, ANDERSON, JANE B92 DOE, JANE B96 DOE, JANE B97 DOE, JANE B101 DOE, JANE B102 DOE, AND JANE B104 DOE AGAINST DEFENDANTS TWISTARS AND GEDDERT**

1642.  Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1643.  From approximately 1996 to September 2016, Defendant Twistars and Defendant Geddert represented to Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101

Doe, Jane B102 Doe, and Jane B104 Doe and the public that Defendant Nassar was a competent, ethical, and safe physician.

1644.  By representing that Defendant Nassar was a team physician and athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant Twistars and Defendant Geddert represented to Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and the public that Defendant Nassar was safe, trustworthy, of high moral and ethical repute, and that Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and the public need not worry about being harmed by Defendant Nassar.

1645.  The representations were false when they were made as Defendant Nassar had and was continuing to sexually assault, abuse, and molest Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane

B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe and an unknown number of individuals, at times at Defendant Twistars' facility.

1646. As early as 1998, Defendant Twistars and Defendant Geddert knew their representations of Defendant Nassar were false as Defendant Twistars and Defendant Geddert received a complaint of Defendant Nassar's conduct.

1647. Between the time of the 1998 complaint and September 2016, Defendant Twistars and Defendant Geddert continued to hold Defendant Nassar out as a competent and safe physician.

1648. Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe relied on the assertions of Defendants Twistars and Defendant Geddert and several Plaintiffs continued to seek treatment of Defendant Nassar in the wake of known concerns and dangers.

1649. Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe were subjected to sexual assault, abuse, and molestation as a result of

Defendant Twistars' and Defendant Geddert's fraudulent misrepresentations regarding Defendant Nassar.

1650. As a direct and/or proximate result of Defendants' fraud and misrepresentation, Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs Guerrero, Castle, Jane B12 Doe, Tarrant, McDowell, Daniels, Valley, Smith, Zerfas, Gamet, Jane B35 Doe, Livingston, Jane B42 Doe, Jane B43 Doe, Jane B48 Doe, Meinke, Morgan Margraves, Jane B57 Doe, Castillo, Lauren Margraves, Madison Margraves, Jane B65 Doe, Lane B67 Doe, Gassaway, Jane B82 Doe, Jane B83 Doe, Anderson,  Jane B92 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B102 Doe, and Jane B104 Doe were prevented and will continue to be prevented from performing their daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## X.    CLAIMS AGAINST NASSAR

### A.    COUNT THIRTY-ONE

### ASSAULT & BATTERY
### ALL PLAINTIFFS AGAINST DEFENDANT LAWRENCE NASSAR

1651. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs

1652. The acts committed by Defendant Nassar against Plaintiffs described herein constitute assault and battery, actionable under the laws of Michigan.

1653. Defendant Nassar committed nonconsensual sexual acts which resulted in harmful or offensive contact with the bodies of Plaintiffs.

1654. Specifically, Defendant Nassar committed acts which caused injury to Plaintiffs by subjecting them to an imminent battery and/or intentional invasions of their rights to be free from offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability to subject Plaintiffs to an immediate, intentional, offensive and harmful touching.

1655. Defendant Nassar assaulted and battered Plaintiffs by nonconsensual and unwanted digital vaginal penetration, digital anal penetration, and touching some of Plaintiffs' breasts without notice or explanation of the "treatment."

1656. Plaintiffs did not consent to the contact, which caused injury, damage, loss, and/or harm.

1657. As a direct and/or proximate result of the Defendant's actions and/or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions,

sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1658.   In the alternative, the actions or inaction of the Defendant was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**B.   COUNT THIRTY-TWO**

**INVASION OF PRIVACY**
**ALL PLAINTIFFS AGAINST DEFENDANT NASSAR AND THE MSU DEFENDANTS**

1659.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1660.   Defendant Nassar intruded upon Plaintiffs' seclusion or solitude by sexually assaulting, abusing, and molesting Plaintiffs without the consent of Plaintiffs or Plaintiffs' parents.

1661.   Plaintiffs' genital area, breasts, and sexual activity are secret and private subject matters.

1662.   Plaintiffs possessed a right to keep these subject matters private.

289

1663. Some of the Plaintiffs lost their virginity when Defendant Nassar sexually assaulted, abused, and molested them.

1664. Defendant Nassar's method of sexually assaulting, abusing, and molesting Plaintiffs is objectionable to a reasonable person.

1665. As a direct and/or proximate result of the Defendant's actions and/or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1666. In the alternative, the actions or inaction of the Defendant was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages. Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue

to sustain loss of earnings and earning capacity.

## XI.   CLAIMS AGAINST DEFENDANTS KLAGES, STRAMPEL, KOVAN, AND STOLLAK

### A.   COUNT THIRTY-THREE

### FAILURE TO REPORT CHILD ABUSE
### MICHIGAN'S CHILD PROTECTION LAW, MCL 722.633
### ALL PLAINTIFFS AGAINST DEFENDANTS KLAGES, STRAMPEL, KOVAN, AND STOLLAK

1667.   Plaintiff reallege and incorporate by reference the allegations contained in the previous paragraphs.

1668.   Michigan's Child Protection Law, MCL 722.621 *et seq*., establishes mandatory reporting guidelines for suspected child abuse or neglect and provides penalties for failure to report child abuse or neglect.

1669.   Specifically, MCL 722.623 provides in pertinent part:

> A physician, dentist, physician's assistant, registered dental hygienist, medical examiner, nurse, person licensed to provide emergency medical care, audiologist, psychologist, marriage and family therapist, licensed professional counselor, social worker, licensed master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of the friend of the court, school administrator, school counselor or teacher, law enforcement officer, member of the clergy, or regulated child care provider who has reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect.

1670.   Child abuse is defined as "harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy."

MCL 722.622(g).

1671. Child neglect is defined as "harm or threatened harm to a child's health or welfare by a by a parent, a legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following: (*i*) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care. (*ii*) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or any other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk." MCL 722.622(k).

1672. A person responsible for the child's health or welfare includes a nonparent adult. MCL 722.622(x).

1673. Defendant Nassar was a nonparent adult who was responsible for Plaintiffs' health and welfare, had substantial and regular contact with Plaintiffs, had a close personal relationship with many parents of Plaintiffs, and was not Plaintiffs' parent or a person otherwise related to Plaintiffs. MCL 722.622(v).

1674. Under MCL 722.633(1), "A person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure."

1675. Defendants Klages, Strampel, Kovan, and Stollak were mandatory reporters during the time Defendant Nassar was engaged in child abuse or child neglect.

1676. As established in the allegations above, Defendants Klages, Strampel, Kovan, and Stollak had reasonable cause to suspect child abuse or child neglect.

1677. Defendants Klages, Strampel, Kovan, and Stollak failed to report any instances of

suspected child abuse or neglect to the Department of Health and Human Services or law enforcement.

1678. Defendants Klages, Strampel, Kovan, and Stollak are or were employed by Defendants Michigan State University and Michigan State University Board of Trustees during the time Defendant Nassar was engaged in child abuse or child neglect, and were acting in the scope and course of their employment when they failed to report any instances of suspected child abuse or neglect.

1679. Defendants Klages, Strampel, Kovan, and Stollak are directly civilly liable for the damages proximately caused by their failure to report any instances of suspected child abuse or neglect. Defendants Michigan State University and Michigan State University Board of Trustees are vicariously liable for said damages.

1680. As a direct and/or proximate result of the Defendants' actions and/or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1681. In the alternative, the actions or inaction of the Defendants were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiffs and constitutes gross negligence that is the proximate cause of Plaintiffs' damages.

Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life and have sustained and continue to sustain loss of earnings and earning capacity.

## XII.   LOSS OF CONSORTIUM CLAIMS

### A.   COUNT THIRTY-FOUR

**PLAINTIFFS ADAM BOYCE, ANDREW GAMET, JACOB PARKER, JOHN B67 DOE, JOHN B68 DOE, JOHN GASSAWAY, JOHN B79 DOE, JONATHAN COLLINS, JOHN B92 DOE, JOHN B93 DOE, JOHN B96 DOE, JOHN B97 DOE, JOHN B101 DOE, JOHN B105 DOE, AND JOHN B109 DOE AGAINST ALL DEFENDANTS**

1682.   Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs.

1683.   Plaintiffs Adam Boyce, Andrew Gamet, Jacob Parker, John B67 Doe, John B68 Doe, John Gassaway, John B79 Doe, Jonathan Collins, John B92 Doe, John B93 Doe, John B96 Doe, John B97 Doe, John B101 Doe, John B105 Doe, and John B109 Doe are married to Plaintiffs Boyce, Gamet, Meinke, Jane B67 Doe, Jane B68 Doe, Gassaway, Jane B79 Doe, Green, Jane B92 Doe, Jane B93 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B105 Doe, and Jane B109 Doe, respectively.

1684.   Plaintiffs Adam Boyce, Andrew Gamet, Jacob Parker, John B67 Doe, John B68 Doe, John Gassaway, John B79 Doe, Jonathan Collins John B92 Doe, John B93 Doe, John B96 Doe, John B97 Doe, John B101 Doe, John B105 Doe, and John B109 Doe are

married to Plaintiffs Boyce, Gamet, Meinke, Jane B67 Doe, Jane B68 Doe, Gassaway, Jane B79 Doe, Green  Jane B92 Doe, Jane B93 Doe, Jane B96 Doe, Jane B97 Doe, Jane B101 Doe, Jane B105 Doe, and Jane B109 Doe, and have suffered the following damages:

    a. An interference with the marital relationship, including marital conjugal fellowship;

    b. An interference with love, affection, and society;

    c. An interference with the enjoyment of their spouses' company and companionship in and about the household, including the loss of pleasurable enjoyment of recreational activities outside the household;

    d. An interference with services and financial support, and Plaintiffs are fearful that these losses have and will affect the household and standard of living.

    e. Severe emotional distress, mental anguish and anxiety in the past, present and into the unknown future and permanently.

## XIII.  DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

1685. Plaintiffs reallege and incorporate by reference the allegations contained in the previous paragraphs

1686. As a or the direct and/or proximate result of Defendants' conduct, actions, or inactions, Plaintiffs have suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiffs were prevented and will continue to be prevented from performing Plaintiffs' daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

1687.  The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiffs' Constitutional and Federal rights as well as the common and/or statutory laws of the State of Michigan, and the United States District Court has jurisdiction to hear and adjudicate said claims.

1688.  In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiffs have and continue to suffer irreparable harm as a result of the violations.

1689.  The amount in controversy for each Plaintiff exceeds the jurisdictional minimum of $75,000.00.

WHEREFORE, Plaintiffs request this Court and the finder of fact to enter a Judgment in Plaintiffs' favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seeks against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact, be it judge or jury, award Plaintiffs all applicable damages, including but not limited to compensatory, special, exemplary and/or punitive damages, in whatever amount the Plaintiffs are entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

a)  Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiffs' Constitutional, Federal, and State rights, loss of social pleasure and enjoyment, and other damages to be proved;

b)      Punitive and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

c)      Reasonable attorney fees, interest, and costs; and,

d)      Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

**Respectfully Submitted,**

Dated: September 8, 2018                          /s/ Manvir S. Grewal_____

**Manvir S. Grewal (P48082)**
**David S. Mittleman (P37490)**
**Nolan L. Erickson (P72661)**
**John W. Fraser (P79908)**
**Jonathan D. Brown (P81891)**
Grewal Law PLLC
Attorneys for Plaintiffs
2290 Science Parkway
Okemos, Michigan 48864
Ph.: (517) 393-3000
Fax: (517) 393-3003
E: mgrewal@4grewal.com
E: dmittleman@churchwyble.com
E: nerickson@churchwyble.com
E: jfraser@4grewal.com
E: jbrown@churchwyble.com

## JURY DEMAND

Plaintiffs, by and through their attorneys, Grewal Law PLLC, hereby demand a trial by jury on all claims set forth above.

**Respectfully Submitted,**

Dated: September 8, 2018                    /s/ Manvir S. Grewal_____
**Manvir S. Grewal (P48082)**
**David S. Mittleman (P37490)**
**Nolan L. Erickson (P72661)**
**John W. Fraser (P79908)**
**Jonathan D. Brown (P81891)**
Grewal Law PLLC
Attorneys for Plaintiffs
2290 Science Parkway
Okemos, Michigan 48864
Ph.: (517) 393-3000
Fax: (517) 393-3003
E: mgrewal@4grewal.com
E: dmittleman@churchwyble.com
E: nerickson@churchwyble.com
E: jfraser@4grewal.com
E: jbrown@churchwyble.com